# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Honorable R. Brooke Jackson

Civil Action No.: 12-cv-00869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

      Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INOVATIS ASSENT MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

      Defendants.

---

## PLAINTIFFS' REPLY TO THE LASSHOFER DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY OR FOR *IN CAMERA REVIEW* OF DOCUMENTS

---

**INTRODUCTION**

For over four months now, the Lasshofer Defendants have refused to comply with this Court's duly issued Orders. Specifically, they persist in refusing to escrow funds in the District of Colorado and have violated the asset freeze.

One would expect Mr. Lasshofer to substantively respond to Plaintiffs' extensive fraud allegations. He did not. Additionally, Mr. Lasshofer chose not to substantively respond to Plaintiffs' allegations regarding his contempt. Instead, faced with Plaintiffs' extensive fraud allegations, and now with allegations of his contempt, Mr. Lasshofer chose to sign a declaration (submitted twice) (Dkts. 110-1 and 117-1)—the first one that he has filed in this case—that does not deny any of Plaintiffs' fraud or contempt allegations but provides a short, vague statement of his alleged lack of funds. Nowhere in their papers do the Lasshofer Defendants deny what Plaintiffs have argued: that the Lasshofer Defendants are resisting compliance with the Court's Orders and have filed documents "in this Court for the impermissible purpose of rendering this Court's rulings unenforceable abroad." (Plaintiffs' Motion to Compel Discovery or for *In Camera* Review (Dkt. 82) at 12.) Instead, the Lasshofer Defendants argue for an interpretation of the crime-fraud exception which contravenes settled law and, if adopted, would unreasonably exclude any inquiry into their misconduct.

This Court is entitled to examine whether Mr. Lasshofer has used the attorney-client privilege to further his contemptuous conduct. Communications underlying the Lasshofer

Defendants' contempt are not privileged because actions taken to frustrate enforcement of Court Orders trigger the crime-fraud exception.[1]

This Court should conduct an *in camera* review of Lasshofer's communications to determine whether the crime-fraud exception applies, given, *inter alia*, the Lasshofer Defendants' noncompliance with Court Orders.

ARGUMENT

I.   **In seeking to exclude their efforts to defy the Court's Orders from the scope of the crime-fraud exception, the Lasshofer Defendants argue for an interpretation of the crime-fraud exception that defies both law and common sense.**

The Lasshofer Defendants' description of the crime-fraud exception contradicts settled law. The attorney-client privilege "is not favored in the federal system" and is to be "strictly and narrowly construed." *United States v. Cooper*, No. 96-cr-484-B, 1997 U.S. Dist. LEXIS 3333, at *3 (D. Colo. Mar. 19, 1997). The privilege "applies only where necessary to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The purpose of the attorney-client privilege is not to enable circumvention of

---

[1]   The Lasshofer Defendants are misusing the litigation process to frustrate other plaintiffs' claims in another Federal District Court, as well. In *Castle Aero Fla. Int'l, Inc. v. Mktg. and Fin. Servs., Inc. et al.*, No. 11-cv-02672-PAM-JJG (D. Minn), the Lasshofer Defendants have delayed in complying with discovery orders, withholding documents until at or just before their scheduled depositions, and refused to produce documents in native format, as plaintiffs specifically requested. *See* Memorandum in Support of Motion to Compel Against Defendants Marketing and Financial Services, Inc., Gerry Jackson, Innovatis Asset Management, S.A., and Erwin Lasshofer, No. 11-cv-02672-PAM-JJG (D. Minn. Aug. 14, 2012), ECF Dkt. No. 40, at 4-5.

Court Orders; advice or communications which further this end are not entitled to protection.

Contrary to the Lasshofer Defendants' suggestions, the crime-fraud exception may be invoked even if the Lasshofer Defendants and their counsel are not involved in a "criminal or fraudulent scheme." (Response Brief at 2.) It is axiomatic that "[t]he crime or fraud exception applies even where the attorney is completely unaware that his advice is sought in furtherance of such an improper purpose." *United States v. Harnage*, 662 F. Supp. 766, 774 (D. Colo. 1987) (quotation marks omitted). The crime-fraud exception applies whether or not the Lasshofer Defendants' counsel is aware that their advice and litigation efforts are being used by the Lasshofer Defendants to further noncompliance.

## A.  The Lasshofer Defendants' view of the crime-fraud exception is contrary to settled law.

The Lasshofer Defendants do not deny that they have, to date, refused to comply with the TRO's directive to transfer to the District of Colorado "all assets appropriated from Plaintiffs that are located outside the District of Colorado and are held by or for the Lasshofer Defendants" (Dkt. 16 at 3) and with the Preliminary Injunction's order to transfer $2,180,000 to the District of Colorado (Dkt. 50 at 21). Nor do they deny having taken steps in the litigation before this Court to excuse and perpetuate their noncompliance, despite their obligation to comply unless and until the duly issued Orders

are overturned on appeal.[2] *See Walker v. Birmingham*, 388 U.S. 307, 314 (1967) (holding

that duly issued injunction "must be obeyed" until "reversed for error by orderly review,

either by itself or by a higher court"); *Schildt v. FBI*, Nos. 96-4114, 96-4149, 1997 U.S.

App. LEXIS 10772, at *6 (10th Cir. May 9, 1997) (same). The Lasshofer Defendants

argue, instead, that the crime-fraud exception is not implicated by calculated defiance of

Court Orders. (Response Brief at 4.)

But the crime-fraud exception in Colorado is broader than the Lasshofer Defendants

contend. Because Plaintiffs have asserted state causes of action under the Colorado

---

[2]      For example, in the Motion to Withdraw Special Appearance, filed with this Court on June 28, 2012, the Lasshofer Defendants asserted "violations of the Innovatis Defendants' due process rights." (Dkt. 77 at 7.) At the time this motion was filed with this Court, the Lasshofer Defendants' Request that Service Not be Made was pending in the Salzburg District Court. The Lasshofer Defendants' primary argument before the court in Salzburg was that enforcement of this Court's Orders would "constitute a material infringement of Applicant's [the Lasshofer Defendants'] subjective and constitutional rights." (Dkt. 115-5 at 3.) The statements made in the Motion to Withdraw filed with this Court appear to have been intended to persuade the Salzburg District Court to refuse to permit the Lasshofer Defendants to be served in Austria.

Additionally, the Lasshofer Defendants have repeatedly made unsupportable arguments which, if accepted, would excuse their continued noncompliance with this Court's Orders. For example, they raise and re-raise the semantic argument that "repatriat[ion]" is impossible if the specific funds that they fraudulently obtained have since been dissipated (*see* Dkts. 39 at 8; 53 at 3; 60 at 4; 66 at 1, 12, 14; 77 at 7; 110 at 8-10 ). And they misstate the holding of *Sangui Biotech Int'l, Inc. v. Kappes*, 179 F. Supp. 2d 1240, 1241 (D. Colo. 2002) by citing it in support of their argument that "everything the Court has done to date in this case has been done without jurisdiction and is void *ab initio*" (Dkt. 70 at 2; *see also* Dkts. 21 at 6; 67 at 5, 8; 76 at 7; 77 at 3; 79 at 2-3; 111 at 8), when, in actuality, and as the Lasshofer Defendants have been made aware, the Court in *Sangui extended* the TRO as against the defendant and ordered a third party in active concert with the defendant to show cause why it was not in violation of the TRO, despite the defendant having "not *yet* been served with process," *Sangui*, 179 F. Supp. 2d at 1241 (emphasis added).

Organized Crime Control Act ("COCCA"), Colorado law applies to resolve issues of privilege. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995) (holding that "[a]s to state causes of action, a federal court should look to state law in deciding privilege questions").[3] Under Colorado law, attorney-client communications made in furtherance of "fraud" are stripped of the privilege. *Caldwell v. Dist. Court of Denver*, 644 P.2d 26, 32 (Colo. 1982).

The court's reasoning in *Caldwell* does not support the narrow construction of fraud urged by the Lasshofer Defendants. *See id.* (reasoning that the crime-fraud exception applies, and communications are unprotected, if "the advice and aid sought refers to future wrongdoing rather than prior misconduct"). The court cites Wigmore, *id.*, who states, in the crime-fraud section cited, that "it is difficult to see how . . . the law can protect a deliberate plan to defy the law and oust another person of his rights, whatever the precise nature of those rights may be." 8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2292 (John T. McNaughton ed., 3d ed. 1961). As explained in Plaintiffs' Motion to Compel, and in n.2, *supra*, the Lasshofer Defendants' noncompliance, and their litigation conduct, support Plaintiffs' belief that the Lasshofer

---

[3]     The Lasshofer Defendants cite *Motley* in support of their argument that the crime-fraud exception should be narrowly construed to exclude their misconduct. (Response Brief at 4.) Their argument is unpersuasive because *Motley* was decided under Oklahoma law, 71 F.3d at 1551, and the court there only held that "we have not extended the privilege [*sic*] to torts generally." *Id.* The particular "tort" at issue in *Motley* was "illegal racial discrimination." *Id.* The facts of *Motley*, the relevant law, and the requested extension of the crime-fraud exception (to "torts generally") all make the case inapplicable to the instant analysis.

6

Defendants have undertaken a "deliberate plan to defy" the Court's Orders and thwart Plaintiffs' relief.

The Lasshofer Defendants' argument that their defiance is beyond the scope of the crime-fraud exception fails because Colorado law comports with the majority view that "fraud" is appropriately defined to include litigation conduct inimical to the integrity of the judicial process. *See, e.g., Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 281, 283 (E.D. Va. 2004) (noting that "[t]he term 'crime/fraud exception' . . . is a bit of a misnomer"; concluding, "it is self-evident . . . that any communication between lawyer and client respecting spoliation is fundamentally inconsistent with the asserted principles behind the recognition of the attorney-client privilege, namely, 'observance of the law' or the 'administration of justice'" (quoting *Blanchard v. Edgemark Fin. Corp.*, 192 F.R.D. 233, 241 (N.D. Ill. 2000); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985))); *Cleveland Hair Clinic, Inc. v. Puig*, 968 F. Supp. 1227, 1241 (N.D. Ill. 1996) (holding that because defendants engaged in "bad faith litigation conduct[,] . . . "the crime-fraud exception to the attorney-client privilege is applicable"); *In re Sealed Case*, 754 F.2d 395, 398 (D.C. Cir. 1985) (affirming ruling of district court that crime-fraud exception applied to communications regarding destruction of records which "necessarily involved the attorneys" and "was designed to further an ongoing conspiracy to manipulate the process of the courts for [party's] own ends"). If the Lasshofer Defendants have sought to enable noncompliance with the Court's Orders, as their

conduct suggests, attorney-client communications underlying these efforts fall within the crime-fraud exception. The Lasshofer Defendants' apparent tactical decision to defy this Court's Orders not only threatens Plaintiffs' ability to collect a judgment, but it also impugns the authority of the judiciary. Attorney-client conversations made in furtherance of this end are not entitled to protection.

Moreover, contempt of court is a crime. This Court has already indicated that "[t]he Innovatis group thinks they just have no need to comply at all with the order." (7/30/2012 TRO H'ring Tr. at 13:23-25.) The Court has discussed the possibility of deciding that Lasshofer is "going to spend some time in prison as a sanction for contempt" and the possibility of ordering "that [Lasshofer] be incarcerated until he complies with the Court's order." (*Id*. at 48:3-6.) Withholding protection from attorney advice used by the client to persist in and avoid punishment for contemptuous conduct requires no "expan[sion]" of the crime-fraud exception. (Response Br. at 9.)

### C. The Lasshofer Defendants cite the wrong standard for obtaining *in camera* review.

The Lasshofer Defendants' argument that Plaintiffs urge an "expan[sion]" of the crime-fraud exception is further undermined by the Lasshofer Defendants' misunderstanding regarding what must be shown before a court may appropriately undertake *in camera* review. Plaintiffs have requested that this Court review attorney-client communications *in camera* to determine applicability of the crime-fraud exception. The Lasshofer Defendants' statement that "the party opposing the privilege must present

prima facie evidence that the allegation of attorney participation in the crime or fraud has some foundation in fact" (Response Brief at 3 (quoting *Kovacs v. Hershey Co.*, No. 04-cv-01881-WYD-BNB, 2006 WL 2781591, at *9 (D. Colo. Sept. 26, 2006))), expresses only half the standard. The Lasshofer Defendants fail to acknowledge that "[a] *prima facie* showing is not required *before* the judge can order a document produced for his *in camera* inspection to determine whether the privilege applies." *A v. Dist. Court of Second Judicial Dist.*, 550 P.2d 315, 326 (Colo. 1976) (emphasis original). Plaintiffs have more than satisfied the light evidentiary threshold necessary to establish the appropriateness of *in camera* review. *See Caldwell*, 644 P.2d at 33 (explaining that the threshold of evidence required to trigger *in camera* review "need not be a stringent one").

The Lasshofer Defendants' misunderstanding of the standard necessary to permit *in camera* review is evidenced further by their citation of *In re Vargas*, 723 F.2d 1461, 1467 (10th Cir. 1983). (Response Br. at 4.) *Vargas*, like *Kovacs*, discusses the standard for vitiating the attorney-client privilege—not for obtaining *in camera* review. *Vargas*, 723 F.2d at 1467. Incidentally, the court in *Vargas* held that the crime-fraud exception applied, and further suggested that even the *prima facie* showing a party must make to vitiate the privilege is light: "[T]he prima facie foundation may be made by documentary evidence or good faith statements by the prosecutor as to testimony already received by the grand jury." *Id*. In the instant case, Plaintiffs have met and exceeded this burden.

**D.    The Lasshofer Defendants do not deny having committed misconduct.**

The Lasshofer Defendants' argument for narrowing the scope of the crime-fraud exception is not only wrong as a matter of law; it demonstrates why application of the exception is particularly appropriate under the present circumstances. The Lasshofer Defendants do not deny that their litigation efforts in the District of Colorado are aimed at rendering "an order or judgment" issued by this Court unenforceable abroad. (*See* Dkt. 77 at 7.) Rather than contesting Plaintiffs' allegations that they have abused the litigation process to enable their noncompliance, the Lasshofer Defendants argue that the particular misconduct in which they have engaged is outside the scope of the crime-fraud exception as delimited by "Tenth Circuit jurisprudence." (Response Br. at 9.) This argument must be seen for what it is: an admission of misconduct and a demand that this Court ignore law and common sense and refuse to "expand" the crime-fraud exception to conduct intended to further noncompliance with Court Orders.

**II.    By explicitly putting attorney-client communications at issue, the Lasshofer Defendants waived the attorney-client privilege with respect to certain communications central to their deliberate noncompliance with this Court's Orders.**

In their Motion to Compel, Plaintiffs provided an additional reason why they were entitled to the communications underlying the Lasshofer Defendants' "request[] that Messrs. Evans and Douglass withdraw their special appearance in the district court case" (Dkt. 77 at 7): at-issue waiver. The Supreme Court of Colorado recognizes "that by placing in issue a confidential communication going directly to the claim or defense, a

party impliedly waives the attorney-client privilege with respect to that communication." *Mountain States Tel. and Tel. Co. v. Di Fede*, 780 P.2d 533, 543 (Colo. 1989). As this Court stated, the Motion to Withdraw filed by the Lasshofer Defendants' counsel did "not provide good cause for counsel to withdraw." (Dkt. 93.) Indeed, the only basis asserted in the Motion was the Lasshofer Defendants' "request[]," referenced but not entirely disclosed, that their counsel withdraw from the representation before this Court. (Dkt. 77 at 7.) Because this request was apparently central to the withdrawal request, the Lasshofer Defendants placed it, and contextualizing conversations, at issue. *See Silverstein v. Fed. Bureau of Prisons*, No. 07-cv-02471-PAB-KMT, 2009 U.S. Dist. LEXIS 121753, at *33, 2009 WL 4949959, at *12 (D. Colo. Dec. 14, 2009). The communications underlying the Lasshofer Defendants' "request[]" were and are subject to disclosure for this reason, as well.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant its Motion to Compel Discovery or for *In Camera* Review and order the relief requested in the accompanying proposed Order.

Dated this 28th day of August, 2012.

Respectfully submitted,

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

 *s/ Christopher W. Madel*
Christopher W. Madel
Bruce D. Manning
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com

and

Stephanie E. Dunn
Robert N. Miller
**PERKINS COIE LLP**
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303-291-2300
Facsimile: 303-291-2400
rmiller@perkinscoie.com
sdunn@perkinscoie.com

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2012, I electronically filed the foregoing PLAINTIFFS' REPLY IN RESPONSE TO THE LASSHOFER DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY OR FOR *IN CAMERA* REVIEW OF DOCUMENTS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Justine Victoria Beyda**
  jbeyda@cravath.com,mao@cravath.com
- **Kathleen E. Craigmile**
  kec@benningtonjohnson.com,dtb@benningtonjohnson.com,
  man@benningtonjohnson.com,tlp@benningtonjohnson.com,
  afa@benningtonjohnson.com
- **Stephanie Erin Dunn**
  sdunn@perkinscoie.com,sdunn-efile@perkinscoie.com
- **Kevin D. Evans**
  kdevans@s-elaw.com,pdouglass@s-elaw.com,sjoshi@s-elaw.com,
  tbaksay@s-elaw.com
- **Christopher William Madel**
  cwmadel@rkmc.com,dclandis@rkmc.com,dmvanalstine@rkmc.com,
  ELBecker@rkmc.com,arthom@rkmc.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com
- **Julie Anne North**
  jnorth@cravath.com,mao@cravath.com

 *s/Christopher W. Madel*
Christopher W. Madel
Bruce D. Manning
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com

ATTORNEYS FOR PLAINTIFFS

13