## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

    Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

    Defendants,

CREDIT SUISSE A.G.,

    Nominal Defendant.

---

### DECLARATION OF JONATHAN TROUNCE

---

I, JONATHAN TROUNCE, declare the following:

1.     I am a Vice President and Relationship Manager in the Private Banking division of Credit Suisse AG's Dubai Office. I have been employed by Credit Suisse AG, Dubai Branch ("CS AG-Dubai") for 4 years. I am generally familiar with the activities of CS-AG Dubai. Each of the statements made herein is based upon my personal knowledge, or upon knowledge I have derived from a review of the records and files maintained by CS AG-Dubai in the ordinary course of business, or upon information supplied to me by other employees or agents of CS AG-Dubai in the normal course of their and my duties and responsibilities.

**Exhibit 1**

2. I have reviewed the Declaration of Mr. John Niemi, dated July 25, 2012 (the "Niemi Declaration" or "Niemi Decl.") and Plaintiffs' Motion for Preliminary Injunction, filed on August 9, 2012 ("PI") in the above-referenced matter and have been authorized to submit this declaration on behalf of CS AG-Dubai in connection with Credit Suisse AG's Opposition to Plaintiffs' Motion for Preliminary Injunction in the above-referenced action.

Corporate Structure

3. CS AG-Dubai is a branch of Credit Suisse AG, located at The Gate, Dubai International Financial Centre, Dubai.

CS AG-Dubai Does Not Do Business in Colorado

4. CS AG-Dubai does not maintain any employees, offices, agents or postal addresses in Colorado.

5. CS AG-Dubai does not maintain any cash correspondence or custody bank accounts in Colorado.

6. CS AG-Dubai does not maintain a telephone or fax listing within Colorado.

The Mechanics of Portfolios and Safekeeping Accounts.

7. Portfolios are primarily used to separate a client's assets, generally, for bookkeeping and investment purposes. A client can have multiple portfolios under their main account relationship. Every portfolio has its own "safekeeping account." A safekeeping account holds marketable securities, such as stocks, bonds and mutual funds. Titling a portfolio safekeeping account re: a certain name does not give a person or entity with the same name as the reference any ownership rights in, or access to, the funds in the portfolio safekeeping account. Indeed, a person who has the same name as the reference to an account would only

have access to the funds in a portfolio safekeeping account if they were a signatory to the portfolio safekeeping account.

CS AG-Dubai Did Not Have Any Purposeful Contact with Plaintiffs in Colorado or Elsewhere

8. I was the relationship manager for Innovatis Asset Management, SA ("Innovatis") at all times relevant to the allegations of the above-captioned proceeding.[1]

9. I understand that Plaintiffs allege that in November of 2009, Credit Suisse AG employees set up Account No. 1128069-15-3, a subaccount of Innovatis's Account No. 0835-1128069-12, "which was held in the name, and for the benefit of [Mr.] Niemi's Colorado business" (the "Safekeeping Account") (Proposed Amended Complaint, filed July 24, 2012 ¶¶ 17, 85, 87; PI 2-3, 5-6, 14.)  I also understand that Plaintiffs allege that this account was opened to protect Plaintiffs in the event that Defendants defaulted on their loan obligations and that Credit Suisse understood and appreciated that fact.  (PI 2-3, 5-6, 14).  Plaintiffs are mistaken.

10. In fact, account number 0835-1128069-12 was an account opened in the name of and held on behalf of Innovatis.  Upon the request of Innovatis as account holder, a portfolio safekeeping account in the name of Innovatis re: Mesa Homes was set up—the "Safekeeping Account."  Innovatis advised me that the account was being opened for accounting purposes.

---

[1] As explained in the declaration of Drs. Peter Reichart and Andrea Meier, Swiss laws, including Swiss banking secrecy laws, which carry criminal penalties, prohibit Swiss banks from revealing any information about their customers or their customers' accounts. (*See* Expert Opinion of Dr. Peter Reichart and Dr. Andrea Meier ¶¶ 34-44.)  Consequently, my ability to respond to the allegations of Plaintiffs' Motion for Preliminary Injunction and supporting papers in a United States forum is substantially limited absent consent of the account holder (which was not provided here other than as described below).

11. Mesa Homes did not have ownership of or access to the Safekeeping Account, and there was no client relationship between Mesa Homes and Credit Suisse AG. Thus, given the structure of the account, I had no reason to believe that the purpose of the account was to protect Plaintiffs in the event of a default by Defendants, and I did not advise Mr. Niemi or any of the other Plaintiffs otherwise.

12. Contrary to what Mr. Niemi suggests in his declaration, I did not contact Plaintiffs or send Plaintiffs account documentation regarding the Safekeeping Account (or for any other reason). (Niemi Decl. ¶ 12.)

13. As indicated in Mr. Niemi's declaration, I did participate in one conference call with Mr. Niemi, his counsel (Mr. Duval) and Mr. Burgess on or about November 24, 2009. (Niemi Decl. ¶¶ 6-10, 12, 14.)

14. I did not initiate or arrange the November 24, 2009 conference call. I participated in the conference call, which was arranged by Mr. Burgess, at the instruction of Innovatis. Mr. Burgess provided the dial-in number; the dial in-number was to Dubai.

15. Innovatis instructed that the conversation with Mr. Niemi, his counsel and Mr. Burgess was to be limited to the two topics that Innovatis had authorized me to discuss—namely, that the Safekeeping Account had been opened and that the account held securities valued at €4 million.

16. Being authorized by Innovatis to disclose the existence of the Safekeeping Account, I made certain that my disclosure on the subject of the account designation was not misleading. Accordingly, I mentioned the full name and ownership of the Safekeeping Account,

namely Innovatis Asset Management SA re: Mesa Homes, with ownership and access being exclusively Innovatis's. Contrary to what Mr. Niemi states in his declaration, I did not assure Mr. Niemi that the Safekeeping Account could be relied on in the event of a default. (Niemi Decl. ¶ 10.)

17. I have never had a discussion with Mr. Niemi, or any of the other Plaintiffs or Defendants in this action, about the Fairmont Breckenridge Loan or its funding structure.

18. As indicated above, the November 24, 2009 call is the only conversation with Mr. Niemi and his counsel in which I participated.

19. The Safekeeping Account was closed on or about December 16, 2009.

20. I have no knowledge of the substance of and did not participate in drafting the loan agreement referenced in paragraph 13 of the Niemi Declaration.

21. I did not send any account information to Mr. Niemi or his counsel or anyone else at Mesa Homes, nor did I send documentation to Mr. Niemi or his counsel or anyone at Mesa Homes confirming that the Safekeeping Account was closed.

22. CS-AG, Dubai was not involved in any discussions regarding financing Phase II of the Fairmont Breckenridge development project.

23. I did not know of Robert Naegle, III's or Jesper Parnevik's association with Mr. Niemi and did not have any communications whatsoever with either Mr. Naegle or Mr. Parnevik in connection with the Safekeeping Account or any other matter.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September \_\_\_\_, 2012

*s/ Jonathan Trounce*

**JONATHAN TROUNCE**