09/17/2012  16:55    17048200216              THE UPS STORE                         PAGE  02/05

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-00869-RBJ

JOHN NIEMI
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

        Plaintiffs,

v.

MICHAEL FRANK BURGESS
ERWIN LASSHOFER
INNOVATIS GMBH
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY
INVESTMENTS, LLC, and
BARRY FUNT,

        Defendants.

## DECLARATION OF MICHAEL FRANK BURGESS

    Pursuant to 28 U.S.C. § 1746, I, Michael Frank Burgess, declare under penalty of perjury that the statements below are true and correct:

    1. During the course of my relationship with Lasshofer and the Innovatis group of companies over the period of some 15 years, I was introduced to Mr. Jonathan Trounce of Credit Suisse in 2008, who was located in their offices in Dubai, UAE. I was encouraged to open a personal and business account with the bank and travelled to Dubai to meet with Mr. Trounce in early 2009 and signed the necessary documents to



open an account in my personal name as well as a company by the name of Fosforarillo International SA. The accounts were to be maintained in Dubai although during the course of the same year we were notified that the bank was closing the account operating sector of this branch and moving it to either Zurich or Singapore. I elected the Zurich location.

2. During the same year, 2009, we encouraged our client Greta, Inc from Toronto, Canada to open an account at the bank and I became a joint signatory on the account together with one of the directors of the company. The amount of Euro 2,000,000,00 was deposited into this account and held until the client was satisfied that I had provided them with the assurances as to the safety of their funds by signing a personal undertaking, whereupon the funds were then transferred to the account of Innovatis directly in Credit Suisse, Dubai. Greta, Inc had direct dealings with Jonathan Trounce during all aspects of opening and operating the account and at no time was I involved other than to sign the release document once Greta, Inc had signed the release to Innovatis.

3. During the negotiations with John Niemi and my company Prosperity International LLC, it was agreed upon that a security would be provided by Lasshofer and his group to safeguard the deposit that was to be made by John Niemi and Lasshofer. Thus, it was agreed to arrange to open an account for Mesa Homes at Credit Suisse AG. In order to facilitate this arrangement it was agreed that Lasshofer would arrange to open a sub-account of the main Innovatis operating account at Credit Suisse and this was opened in the name of Mesa Homes and an account name and account number was assigned to this account.

4. It was furthermore agreed that a bond in the amount of Euro 4,000,000,00 would be placed in this account and this was accomplished in November 2009. The name of the bond was Top Hedge. After Credit Suisse opened the Mesa Homes sub-account, I had a discussion with Jonathan Trounce to address certain questions John

2



Niemi had about the bond in the sub-account and particularly the valuation and liquidity of the bond. The project for Mesa Homes was located in Colorado, and this was known to Jonathon Trounce. After the conversation, Trounce sent me a bank statement showing this bond deposited in the account, and the statement was to be sent to John Niemi and I did send it.

5. I recall a telephonic discussion on 24th November 2009, wherein John Niemi together with his legal counsel, and Jonathan Trounce of Credit Suisse and I were on the call and we discussed the fact that the security was or would be placed on the account that day and furthermore that John Niemi would have joint signatory control of his account together with Erwin Lasshofer of Innovatis so that Niemi could access the account in case of default. Upon satisfactory evidence of this fact, John Niemi would agree to release the required funds of $2,000,000.00 as described in the Loan Agreement dated December 7, 2009.

6. I am not aware of all of the direct discussions that may have taken place between Niemi and his banker, however I am aware that Lasshofer made the arrangements to ensure that the necessary documents were sent by Trounce to Niemi as to the signatory on the account and these formalities were carried out directly between the banker and Niemi.

7. The Loan Agreement dated December 7, 2009 provided that John Niemi was to release upfront funds to Credit Suisse but when Niemi was ready to wire the upfront funds, ~~Lasshofer~~ *John Niemi* told ~~me~~ to have the funds first wired to the Prosperity account at Chase bank. Late in the month Niemi told me he did not want the sub-account open if he was going to have to pay a 9% fee because the bond was not liquid enough and his funds had been wired to Chase, despite the Loan Agreement.



09/17/2012 16:55    17048200216              THE UPS STORE                        PAGE  05/05

8. I have had numerous discussions with Trounce over the two year period I knew him and I also met him in person during a ski trip organized by Lasshofer in early 2010 which was held at a resort in Austria and he spent several days with the group during this trip. I was able to discuss all of our projects, including the Colorado project, with Trounce and he was very aware of the relationship between Innovatis and Prosperity and he liked the structure between companies. He was therefore completely aware of the Niemi projects and he was also aware of the extensive agreements that existed between Prosperity and our clients. Nothing was ever hidden from Trounce and he was provided with copies of some of the agreements and he at one time told me he was impressed with the detail and thoroughness of our agreements.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 17th day of September, 2012 at Butner Correctional Facility in Butner, North Carolina.

*Michael Frank Burgess*

83349746.1