**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson**

Civil Action No. 12-cv-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

       Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY
INVESTMENTS, LLC, and
BARRY FUNT,

       Defendants,

CREDIT SUISSE A.G.,

       Nominal Defendant.

---

**PLAINTIFFS' NOTICE REGARDING OCTOBER 16, 2012 DISCOVERY STATUS CONFERENCE**

---

      In anticipation of the teleconference between the parties and the Court scheduled for October 16, 2012 at 8:00 a.m. MDT, Plaintiffs hereby submit this Notice Regarding October 16, 2012 Discovery Status Conference, setting forth Credit Suisse's Responses

to Plaintiffs' interrogatories and document requests, served upon Plaintiffs on September 26, 2012, and Plaintiffs' objections thereto. In essence, Credit Suisse provided no substantive response to any of Plaintiffs' interrogatories; in response to Plaintiffs' document requests, it provided a single (publicly available) document.

Despite the Court's Order that the parties not make general objections to interrogatories and document requests, an Order with which Plaintiffs carefully complied, Credit Suisse interposed general objections to Plaintiffs' Interrogatories 4, 7(a), 7(b), and 9; and Plaintiffs' Document Requests 1, 2, 3, 4, and 5.

Plaintiffs narrowly drafted their interrogatories and document requests to obtain relevant information and documents from Credit Suisse. Moreover, Plaintiffs fully answered Credit Suisse's nine interrogatories, not only with substantive answers, but also with myriad references to documents pursuant to Fed. R. Civ. P. 33(d). Additionally, and unlike the single, publicly available document that Credit Suisse produced, Plaintiffs produced 37 documents to Credit Suisse, including 33 documents that Credit Suisse requested in a subsequent email that were not formally requested.

Credit Suisse's refusals to respond to Plaintiffs' discovery requests are premised largely on Swiss banking secrecy and other Swiss laws, generally set forth in the September 26, 2012 Declaration of Drs. Peter Reichart and Andrea Meier ("Reichart/Meier Declaration"). Even if Credit Suisse's interpretation of Swiss law were correct, Swiss law does not bar this Court from ordering relief or requiring compliance with discovery. *See Coca-Cola Foods v. Empresa Comercial Internacional de Frutas S.A.*, No. 96-358-Civ-T-17C, 1997 U.S. Dist. LEXIS 9295, at *23, 1997 WL 370121, at

*7 (M.D. Fla. June 12, 1997) ("While Swiss case law can assist a U.S. court in understanding how Swiss courts interpret and apply Swiss law, the fact remains that the submitted Swiss case is not controlling on this Court's decision."). Moreover, Credit Suisse did not assert its Swiss law-based objections until after it sent discovery requests to Plaintiffs and received Plaintiffs' responses. *See Coca-Cola Foods*, 1997 U.S. Dist. LEXIS 9295, at *25, *34, 1997 WL 370121, at *8, *11 (conclusively presuming personal jurisdiction over Swiss defendants because, *inter alia*, they "had ample opportunity to raise their concern about certain forms of discovery violating Swiss law but did not do so until" two days before scheduled deposition).

In addition, Credit Suisse has sought to perpetuate the one-sided discovery by asking Plaintiffs to exchange exhibit lists before the October 19 hearing. As Credit Suisse has refused to provide discovery, Plaintiffs would only be further disadvantaged if they were to present Credit Suisse with the exhibits they plan to introduce at the upcoming hearing.

Plaintiffs respectfully request that the Court keep Plaintiffs' good faith and compliance with its Orders in mind when considering Credit Suisse's responses to Plaintiffs' discovery, outlined below.

## Interrogatories

In addition to objecting generally despite the Court's Order not to do so, Credit Suisse completely refused to answer six of Plaintiffs' ten interrogatories.

1. **Interrogatory 2.**

In Interrogatory 2, Plaintiffs requested that Credit Suisse:

> Describe any and all information Credit Suisse AG received from defendants in connection with opening account No. 0835-1128069-12.

Credit Suisse responded:

> As explained in the declaration of Drs. Peter Reichart and Andrea Meier, dated September 26, 2012 (the "9/26/2012 Reichart Declaration") and their declaration submitted in support of Credit Suisse's Opposition to Plaintiffs' Motion for Preliminary Injunction (Doc. 121-3), responding to this Interrogatory would require Credit Suisse's officers and employees to violate numerous Swiss laws, which carry criminal penalties. In the interest of international comity, the Court should decline to order Credit Suisse to violate Swiss laws.

Credit Suisse did not answer this question. Although Credit Suisse generally invokes "numerous Swiss laws" in refusing to provide any response to Plaintiffs' specific question, it does not explain why these laws entirely preclude it from answering. Even assuming, *arguendo*, that the Swiss banking secrecy laws generally enumerated on pages 6-7 of the Meier/Reichart Declaration prevent Credit Suisse from revealing certain bank account information, not even Meier and Reichart suggest that "all information Credit Suisse AG received from defendants in connection with opening account No. 0835-1128069-12" is confidential.

2. **Interrogatory 4**

In Interrogatory 4, Plaintiffs requested that Credit Suisse:

> Identify all "records and files maintained by CS AG-Dubai in the ordinary course of business" and state all "information supplied to [Jonathan Trounce] by other employees or agents of CS AG-Dubai in the normal course of their and [his] duties and responsibilities" underlying statements made by Jonathan Trounce in his undated declaration filed on September 4, 2012 per ¶ 1 of Mr. Trounce's declaration.

Credit Suisse responded:

> Credit Suisse objects to this Interrogatory as overly broad, unduly burdensome and because it seeks information irrelevant to the issues of this proceeding.

Credit Suisse did not answer this question. The Declaration Jonathan Trounce submitted in the present case demonstrates why the District of Colorado has jurisdiction over Credit Suisse. In his Declaration, Trounce describes the conference between himself, Burgess, Plaintiff Niemi, and Niemi's attorney regarding the Mesa Homes Safekeeping Account. Trounce further admits in his Declaration that he and Lasshofer discussed the content of this call in advance. Trounce states that his Declaration was based upon, *inter alia*, "knowledge [Trounce has] derived from a review of the records and files maintained by CS AG-Dubai in the ordinary course of business" and "information supplied to [Trounce] by other employees or agents of CS AG-Dubai in the normal course of their and [his] duties and responsibilities" (Dkt. 124-1 at ¶ 1). Trounce's Declaration could not be more relevant to the issue of personal jurisdiction. The records, files, and information supplied to Trounce in preparing his Declaration, by extension, are also relevant.

    3.    **Interrogatory 7**

In Interrogatory 7, Plaintiffs requested that, "For each credit account managed by Credit Suisse or any of its affiliates for the benefit of any person (including a business) located in the State of Colorado since January 1, 2008," Credit Suisse:

    a.    state the maximum amount of money for the credit account (i.e. the maximum amount of money loaned); and
    b.    generally describe the purpose of the credit account.

Credit Suisse responded:

> Credit Suisse objects to this Interrogatory as overly broad, unduly burdensome and because it seeks information not in

5

> Credit Suisse's possession, custody or control, which is not relevant to the issues of this proceeding. Credit Suisse's unnamed subsidiaries and affiliates operate in over fifty countries. Credit Suisse does not have the ability to search or require that those entities search their records for information responsive to this Interrogatory, which seeks information spanning over four years. To the extent that Plaintiffs seek this information from Credit Suisse, as explained in the 9/26/2012 Reichart Declaration, responding to this Interrogatory would require Credit Suisse's officers and employees to violate numerous Swiss laws, which carry criminal penalties. In the interest of international comity, the Court should decline to order Credit Suisse to violate Swiss laws.

Credit Suisse did not answer this question. Moreover, Credit Suisse's reasons for refusing to answer the question are contradictory. On the one hand, it states that the requested information is not in its "possession, custody or control." On the other hand, however, it argues that "responding to this Interrogatory would require Credit Suisse's officers and employees to violate numerous Swiss laws." This is an inherently inconsistent, and groundless, attempt by Credit Suisse to avoid answering Plaintiffs' question.

  4.  **Interrogatory 8**

In Interrogatory 8, Plaintiffs requested that Credit Suisse:

> Describe the control that Credit Suisse AG has exercised over Credit Suisse Securities (USA), LLC over the last five years.

Credit Suisse responded:

> As set forth in the Declaration of Pierre Schreiber, dated September 3, 2012 (Doc. 121-2, hereinafter the "Schreiber Declaration") and in Credit Suisse's Opposition to Plaintiffs' Motion for Preliminary Injunction, Credit Suisse Securities (USA), LLC ("CS Securities") operates separately from and independent of Credit Suisse. CS Securities is a third-tier

> subsidiary of Credit Suisse. CS Securities is a regulated broker-dealer, which is not licensed to and does not perform any banking activities. Credit Suisse operates as a bank, which is not licensed to and does not perform any broker-dealer activities.

Credit Suisse did not answer this question. Without offering any explanation, Credit Suisse incongruously asserts both that Credit Suisse Securities (USA), LLC is "independent of Credit Suisse" and that Credit Suisse Securities (USA), LLC is "a third-tier subsidiary of Credit Suisse."

    5.    **Interrogatory 9**

In Interrogatory 9, Plaintiffs requested that Credit Suisse:

> Describe all litigation in which Credit Suisse AG or any of its subsidiaries or affiliates has been involved in the State of Colorado in the last ten years.

Credit Suisse responded:

> Credit Suisse objects to this Interrogatory as overly broad, unduly burdensome and because it seeks information not relevant to the issues of this proceeding. Credit Suisse has no additional information in response to this Interrogatory other than what is publicly available. A review of that information shows that Credit Suisse has not initiated litigation in Colorado in the last ten years.

Credit Suisse did not answer this question. Instead, it generally asserted that Plaintiffs' request is not relevant. Especially in light of Credit Suisse's claim to be burdened by the present litigation, the information sought by this interrogatory is relevant to establishing personal jurisdiction. *See Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996) (reversing district court's dismissal of plaintiff's suit for lack of

personal jurisdiction; finding personal jurisdiction in part because defendants "have initiated a suit seeking to enforce the same patent that is the subject of this suit against other parties, unrelated to this action, in the same district court in the Central District of California").

## Document Requests

1. **Document Request 1**

Credit Suisse also refused to provide a single document to Plaintiffs in response to Plaintiffs' seven document requests, with the exception of one publicly available organizational chart.

In Document Request 1, Plaintiffs requested:

> All documents relating to each communication between Credit Suisse AG (including its subsidiaries and affiliates) and any defendant in this case relating to any project located in the State of Colorado, including email, memoranda, and correspondence.

Credit Suisse responded:

> Credit Suisse objects to this Request as overly broad, unduly burdensome and because it seeks information not relevant to the issues of this proceeding. Except for the documents attached to the Declaration of Bruce D. Manning in support of Plaintiffs' Motion to Amend (Doc. 85, hereinafter the "Manning Declaration") and cited to in Credit Suisse's Opposition to Plaintiffs' Motion for Preliminary Injunction, Credit Suisse does not possess or control any documents responsive to this Request.

Credit Suisse provided nothing in response to this document request. Given that Jonathan Trounce, by his own admission, relied upon, *inter alia*, "knowledge [he has] derived from a review of the records and files maintained by CS AG-Dubai in the ordinary course of

business" and "information supplied to [Trounce] by other employees or agents of CS AG-Dubai in the normal course of their and [his] duties and responsibilities" (Dkt. 124-1 at ¶ 1), it is unlikely that Credit Suisse has no emails, no file-opening forms, no account information, no memoranda, no note, etc. relating to any defendant in this case concerning any project located in the State of Colorado. Further, Credit Suisse's statement that it lacks "control" over documents responsive to Plaintiffs' request does not obviate its obligation to produce the document if the document is in its possession.

    2.    **Document Request 2**

In Document Request 2, Plaintiffs requested:

> After redacting any confidential information, documents sufficient to show each credit account managed by Credit Suisse AG or any of its affiliates for the benefit of any person (including a business) located in the State of Colorado since January 1, 2008.

Credit Suisse responded:

> Credit Suisse objects to this Request as overly broad, unduly burdensome and because it seeks information not relevant to the issues of this proceeding. To the extent that Plaintiffs seek documents from Credit Suisse, as explained in the 9/26/2012 Reichart Declaration, responding to this Request would require Credit Suisse's officers and employees to violate Swiss law, which carries criminal penalties. In the interest of international comity, the Court should decline to order Credit Suisse to violate Swiss law.

Credit Suisse provided nothing in response to this document request. Far from being irrelevant, as Credit Suisse contends, the requested information would prove general jurisdiction over Credit Suisse. Further, Credit Suisse's overbroad invocation of Article 271 PC as its justification for refusing to produce documents pursuant to Court-ordered

9

discovery (*see* Reichart/Meier Declaration at ¶¶ 4-6) should be rejected. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 539-40 (1987) (holding that "the Hague Convention did not deprive the District Court of the jurisdiction it otherwise possessed to order a foreign national party before it to produce evidence physically located within a signatory nation"). In *Societe Nationale*, a case in which the Swiss Government submitted an amicus brief, the U.S. Supreme Court stated that the enactment of a "blocking statute," such as Article 271 PC, does not "require American courts to engraft a rule of first resort onto the Hague Convention, or otherwise to provide the nationals of such a country with a preferred status in our courts. It is clear that American courts are not required to adhere blindly to the directives of such a statute." *Id.* at 544 n.29. Following the holding in *Societe Nationale*, myriad federal courts have embraced the general rule that "American courts should not be subject to the internal laws of foreign states." *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV-ZLOCH, 2008 U.S. Dist. LEXIS 112372, at *10-12, 2007 WL 3046124, at *4 (S.D. Fla. Sept. 29, 2008) (granting plaintiff's motion to compel defendant's managing agent, located in Switzerland, to comply with Fed. R. Civ. P. 30(b)(1) notice to take deposition).[1]

---

[1] *See also In re Sealed Case*, 832 F.2d 1268, 1283 (D.C. Cir. 1987) (holding that Article 271 PC did not bar a Swiss company from producing subpoenaed documents because "it is not evident, and the Witness has not provided authority to suggest, that this provision would apply to a custodian responding to a grand jury subpoena"); *In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732-LDD, 2008 U.S. Dist. LEXIS 109670, at *13-14, 2008 WL 2275531, at *4 (E.D. Pa. May 13, 2008) (granting plaintiffs' motion to compel Swiss defendant to comply with plaintiffs' discovery requests; holding that Article 271 is "not dispositive of whether the Hague Convention should be utilized");

3. **Document Request 3**

In Document Request 3, Plaintiffs requested:

> After redacting any confidential information, all documents sent by Credit Suisse AG to any person located in the State of Colorado within the last five years.

Credit Suisse responded:

> Credit Suisse objects to this Request as overly broad and unduly burdensome. In any event, with the exception of marketing materials, which are addressed in Credit Suisse's Response to Document Request No. 4, as explained in the 9/26/2012 Reichart Declaration, responding to this Request would require Credit Suisse's officers and employees to violate Swiss law, which carries criminal penalties. In the interest of international comity, the Court should decline to order Credit Suisse to violate Swiss law.

For the same reasons it refused to respond to Document Request 2, Credit Suisse provided nothing in response to this document request.

4. **Document Request 4**

In Document Request 4, Plaintiffs requested:

> All documents related to marketing that Credit Suisse AG or any of its affiliates or subsidiaries has done in the State of Colorado within the last five years.

Credit Suisse responded:

> Credit Suisse objects to this Request as overly broad, unduly burdensome and because it seeks information not relevant to the issues of this proceeding. Credit Suisse has not conducted marketing activities directed at Colorado in the last five years.

---

*Coca-Cola Foods*, 1997 U.S. Dist. LEXIS 9295, at *23, 1997 WL 370121, at *7 (holding that Article 271 PC does not prevent Court from ordering Swiss defendants to comply with jurisdictional discovery order).

11

Credit Suisse provided nothing in response to this document request. Moreover, its general objection that the request is "unduly burdensome" conflicts with its subsequent statement that "Credit Suisse has not conducted marketing activities directed at Colorado in the last five years," again demonstrating that Credit Suisse's grounds for refusing to answer Plaintiffs' discovery requests lack merit.

    5.    **Document Request 5**

In Document Request 5, Plaintiffs requested:

> All documents that relate to the organization or structure of Credit Suisse AG and related entities.

Credit Suisse responded:

> Credit Suisse objects to this Request as overly broad, unduly burdensome and because it seeks information not relevant to the issues of this proceeding. In response to this Request, Credit Suisse produces the organizational chart titled "Principal Legal Entities Overview."

Credit Suisse provided nothing in response to this request, save for the referenced organizational chart, which is a publicly available document. Credit Suisse's argument that the organization or structure of Credit Suisse AG and related entities is "not relevant to the issues of this proceeding" evinces a fundamental misunderstanding as to how general jurisdiction is established.

    6.    **Document Request 7**

In Document Request 7, Plaintiffs requested:

> All documents reviewed by Jonathan Trounce or anyone assisting Jonathan Trounce in the drafting or preparation of his undated declaration filed September 4, 2012.

Credit Suisse responded:

> Mr. Trounce reviewed e-mails sent to or from his Credit Suisse e-mail account for communications relevant to this proceeding. No relevant e-mails were located, with the exception of the document attached as Exhibit 3 to the Manning Declaration and cited to in Credit Suisse's Opposition to Plaintiffs' Motion for Preliminary Injunction and one e-mail chain, which none of the Plaintiffs sent or received (including any single e-mail therein), the production of which would violate numerous Swiss laws, including those referenced in the 9/26/2012 Reichart Declaration.

Credit Suisse provided nothing in response to this request. Given Credit Suisse's other statements about what is or is not relevant to the issue of personal jurisdiction, *see supra*, its contention that e-mails reviewed by Jonathan Trounce, but not produced by Credit Suisse, are irrelevant is suspect.

## **Conclusion**

Credit Suisse's position is indefensible. On the one hand, Credit Suisse submitted a sworn declaration from one of its agents that identified factual disputes with one of the Plaintiffs. (*Compare* Dkt. 124-1, *with* Dkt. 88-1). But when Plaintiffs propounded Court-ordered discovery to Credit Suisse to, *inter alia*, prove the invalidity of these alleged factual disputes, Credit Suisse determined to hide behind baseless confidentiality allegations to avoid the Court-ordered discovery.

If Credit Suisse does not provide complete answers, and documents, in response to Plaintiffs' interrogatories and document requests, Plaintiffs will seek (1) appropriate fees and costs; and (2) an inference that this Court possesses jurisdiction over Credit Suisse. *See Coca-Cola Foods*, 1997 U.S. Dist. LEXIS 9295, at *34, 1997 WL 370121, at *11

(conclusively presuming personal jurisdiction over Swiss defendants because of their failure to comply with discovery order, and requiring defendants to pay reasonable costs and attorney's fees); *see also Chi. Architecture Found. v. Domain Magic, LLC*, No. 07 C 764, 2007 U.S. Dist. LEXIS 76226, at *19-20, 2007 WL 3046124, at *7 (N.D. Ill. Oct. 12, 2007) (denying motion to dismiss for lack of personal jurisdiction due to, *inter alia*, negative inference court drew from defendant's failure to answer discovery).

Dated this 11th day of October, 2012.

Respectfully submitted,

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

*/s/Christopher W. Madel*
Christopher W. Madel
Bruce D. Manning
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com

and

Stephanie E. Dunn
Robert N. Miller
**PERKINS COIE LLP**
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303-291-2300
Facsimile: 303-291-2400
rmiller@perkinscoie.com
sdunn@perkinscoie.com

ATTORNEYS FOR PLAINTIFFS

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2012, I electronically filed the foregoing PLAINTIFFS' NOTICE REGARDING OCTOBER 16, 2012 DISCOVERY STATUS CONFERENCE with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Justine Victoria Beyda**
  jbeyda@cravath.com,mao@cravath.com
- **Kathleen E. Craigmile**
  kec@benningtonjohnson.com,dtb@benningtonjohnson.com, man@benningtonjohnson.com,tlp@benningtonjohnson.com, afa@benningtonjohnson.com
- **Stephanie Erin Dunn**
  sdunn@perkinscoie.com,sdunn-efile@perkinscoie.com
- **Kevin D. Evans**
  kdevans@s-elaw.com,pdouglass@s-elaw.com,sjoshi@s-elaw.com, tbaksay@s-elaw.com
- **Christopher William Madel**
  cwmadel@rkmc.com,dclandis@rkmc.com,dmvanalstine@rkmc.com, ELBecker@rkmc.com,arthom@rkmc.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com
- **Julie Anne North**
  jnorth@cravath.com,mao@cravath.com

> */s/Christopher W. Madel*
> Christopher W. Madel
> Bruce D. Manning
> **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
> 2800 LaSalle Plaza
> 800 LaSalle Avenue
> Minneapolis, MN 55402
> Telephone: 612-349-8500
> Facsimile: 612-339-4181
> cwmadel@rkmc.com
> bdmanning@rkmc.com
>
> ATTORNEYS FOR PLAINTIFFS

83409183.1