**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

    Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

    Defendants,

CREDIT SUISSE A.G.,

    Nominal Defendant.

<u>SUPPLEMENTAL DECLARATION
OF DRS. PETER REICHART AND ANDREA MEIER</u>

We, Dr. Peter Reichart and Dr. Andrea Meier, declare the following:

**I.     INTRODUCTION**

1    We submit this Supplemental Declaration in response to the arguments raised by Plaintiffs in their Reply to Credit Suisse AG's ("**CS AG**") Opposition to Plaintiffs' Motion for Preliminary Injunction against CS AG filed on September 18, 2012 (the "**Reply**") with regard to some of the statements made in our Declaration filed on September 21, 2012 (the "**Reichart/Meier Decl. I**"), and the conclusions reached by Mag. Hubertus Weben in his Declaration filed as Exhibit A to the Supplement to

**Exhibit 1**

Plaintiffs' Reply filed on September 19, 2012 (the "**Supplement to Plaintiff's Reply**").

## II. COMPLIANCE WITH THE REQUESTED PRELIMINARY INJUNCTION WITHOUT A SWISS COURT'S DECLARATION OF ENFORCEABILITY VIOLATES SWISS LAW

2   Plaintiffs state that none of the Swiss legal provisions cited in the Reichart/Meier Decl. I support the conclusion that CS AG would violate Swiss law if it were to escrow in Colorado the funds it (allegedly) holds for the Lasshofer Defendants' benefit, as the requested preliminary injunction would require (Reply p. 15).

3   We note that the assertions regarding Swiss law are made by Plaintiffs who are not and do not purport to be experts in Swiss law. For the reasons set forth below, Plaintiffs are mistaken in their interpretation of the pertinent provisions of Swiss law.

### A. Misappropriation (Article 138 of the Swiss Penal Code ["PC"])

4   Plaintiffs argue that if CS AG were to escrow funds in compliance with the requested injunction, it would not be acting with the intention to enrich and would not in fact enrich itself or a third party, and that therefore, complying with the requested injunction would not constitute misappropriation under Swiss law (Reply p. 15). This is unfounded.

5   An order of this Court has no legal effect within Switzerland unless it is granted such effect by a competent Swiss court (Reichart/Meier Decl. I para. 7). As a consequence, without a Swiss court's declaration of enforceability of the requested injunction, CS AG would be transferring the funds without a legitimate title.

6   If CS AG nonetheless were to escrow funds of a customer in compliance with the requested injunction without a declaration of enforceability of a Swiss court, it would act to enrich a third party even if the funds in escrow would formally remain

       the customer's. Article 138 para. 2 PC does not protect the ownership in financial assets, but rather the principal's right that the assets are used according to the principal's designated purpose and instructions (Decision of the Swiss Federal Tribunal [**DFT**] 129 IV 259). This right is frustrated if the assets are brought outside of the customer's area of control for the benefit of securing a third party's claim without the customer's consent.

7       Plaintiffs further argue that we failed to establish that compliance with the requested preliminary injunction would be an unlawful use of the assets because, Plantiffs purport, we could not state with any assurance that the requested injunction would not be enforceable in Switzerland (Reply p. 16).

8       Neither we nor anyone else is able to predict with absolute certainty how a Swiss court would apply the requirements for recognition and enforcement of the Swiss private international law to the case at hand. However, we made it clear that in our professional opinion, the requirements of the law are not fulfilled (see Reichart/Meier Decl. I para. 12), and, therefore, an application for recognition and enforcement of the requested injunction is likely to be denied. We also noted that the majority of Swiss commentators share this view (see Reichart/Meier Decl. I para. 10).

**B.**       **Unlawful activities on behalf of a foreign state (Article 271 PC)**

9       Plaintiffs assert that complying with a foreign freeze order would not violate Article 271 PC (Reply p. 16). Plaintiffs are wrong. Article 271 PC not only proscribes the carrying out of activities that are the responsibility of public authorities, but also prohibits the furtherance of such activities (see Article 271(1) para. 3 PC: "*any person who encourages such activities*"). If CS AG were to comply with the requested injunction, it would be assisting a U.S. court in repatriating assets of a third party located in Switzerland for securing a claim against that party. It would become the

extended arm of the U.S. court and thus would expose its officers and employees to the risk of prosecution under Article 271 PC.

**C.  Banking secrecy (Article 47 of the Banking Act ["BA"] *et al.*) and Industrial Espionage (Article 273 PC)**

10   Plaintiffs argue that all other purported violations of Swiss law occasioned by compliance with the requested preliminary injunction relate to disclosure of confidential information and are therefore largely mooted by Lasshofer's statement in his August 25, 2012 Declaration, disclosing the amount held on the account and sub-accounts of Innovatis Asset Management, S.A. ("**Innovatis**"), with CS AG (Reply p. 17). Plaintiffs overlook the following:

11   *Firstly*, the requested injunction seeks the transfer into Colorado of all money belonging to any of the Lasshofer Defendants, purportedly held anywhere in the world by CS AG or any of its subsidiaries. Lasshofer's statement has no bearing on secrecy obligations outside of the Innovatis account and allegedly "associated sub-accounts" publicly referenced by Lasshofer.

12   *Secondly*, even if the customer himself has disclosed certain protected information, this does not allow the bank to confirm that information. We understand that the Defendants, including Lasshofer, did not authorize CS AG to disclose the amount held on their accounts, if any. Without the customer's consent, however, a bank may not disclose information protected by banking secrecy (Article 47 BA *et al.*) and business secrecy (Article 273 PC). According to case law and the majority view in legal commentary, this rule also applies where a third party has full or certain knowledge of facts protected by banking secrecy. The bank is prohibited from confirming such facts.

13   *Thirdly*, with the requested injunction, Plaintiffs also seek an immediate accounting of all assets CS AG holds for any Defendant. Article 47 BA and Article 273 PC

prohibit CS AG from providing any accounting of the Defendants' assets allegedly held with CS AG (Reichart/Meier Decl. I paras. 44, 51).

### III. COMMENCING CRIMINAL PROCEEDINGS IN AUSTRIA DOES NOT INCREASE THE PROBABILITY OF ENFORCEMENT OF A U.S. REPATRIATION ORDER IN SWITZERLAND

14  Plaintiffs filed a Declaration of Mag. Hubertus Weben as Exhibit A to the Supplement to Plaintiff's Reply (the "**Weben Decl.**"). Mag. Weben therein expresses his "strong belief" that criminal proceedings are going to be commenced in Austria against Lasshofer upon his filing of a criminal complaint (including the request of civil law claims against Lasshofer and others) and that therefore, "the probability is increased that Swiss Courts will enforce an order issued by United States Court freezing or directing transfer of the Defendants' Swiss assets" (see Weben Decl. para. 8).

15  We were unable to evaluate Mag. Weben's qualification to provide his opinion on these matters. Especially, we have no indication that Mag. Weben has any knowledge of Swiss law and the way Swiss law is applied in Switzerland by Swiss authorities. Plaintiffs did not attach Mag. Weben's credentials to his declaration, and the homepage of his law firm "Kanzlei Mag. Hubertus P. Weben" is still under construction (see Exhibit 1, printout dated October 2, 2012). Apparently, Mag. Weben works as a sole practitioner in Innsbruck. From the internet address used by Mag. Weben (www.entertainment-law.at), it seems as if his practice focuses mainly on entertainment law.

16  We do not comment on the reasonability of Mag. Webens' "strong belief", but even if it is justified, his conclusion is unfounded. Should the Austrian authorities in fact open a criminal investigation against Lasshofer, they could request the Swiss criminal authorities to freeze the proceeds from the alleged criminal offense under the provisions of the European Convention on Mutual Assistance in Criminal Matters of 20 April 1959 (see http://conventions.coe.int/Treaty/en/Treaties/Html/030.htm).

   However, such judicial assistance in criminal matters between Austria and Switzerland would have no connection whatsoever with the enforcement of a repatriation order in Switzerland issued by a U.S. court in civil matters. There is simply no basis in fact or in law for the conclusion reached by Mag. Weben that, once a criminal investigation has been opened against Defendants in Austria, the probability is increased that Swiss courts will enforce such an order (Weben Decl. para. 8).

Pursuant to 28 U.S. C. §1746, we declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 5th day of October, 2012.

        *s/ Peter Reichart*

        Dr. Peter Reichart, Attorney-at-law

        *s/ Andrea Meier*

        Dr. Andrea Meier, Attorney-at-law