**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson**


Civil Action No. 12-cv-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

       Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY
INVESTMENTS, LLC, and
BARRY FUNT,

       Defendants,

CREDIT SUISSE A.G.,

       Nominal Defendant.

---

**PLAINTIFFS' RESPONSE TO CREDIT SUISSE AG'S MOTION TO CONTINUE
PRELIMINARY INJUNCTION HEARING**

---

**INTRODUCTION**

On August 31, 2012, Credit Suisse AG ("Credit Suisse") stated that it could not participate in a September 2012 Preliminary Injunction Hearing because its witnesses would not be available. The Court then scheduled the hearing for October 19, 2012 and, over Credit Suisse's objection, ordered that the parties could conduct jurisdictional discovery. Plaintiffs provided complete, fair, and honest responses in good-faith compliance with the Court's directives. Credit Suisse, despite the Court's October 16 order still refuses to provide Plaintiffs with requested information and documents.

As of this time, Credit Suisse has produced five (5) total pages. It has not provided any of the discovery ordered on October 16. Of the five produced pages, one was a publicly available document. And the additional four pages—produced just before noon today—reveal Credit Suisse's noncompliance with its discovery obligations as well as this Court's October 16 Order. That is, on October 16, 2012, this Court held a teleconference regarding Credit Suisse's discovery responses, including Plaintiffs' document request no 1. This document request sought documents between Credit Suisse and any defendant regarding any project in Colorado. Because Credit Suisse produced nothing, Plaintiffs asked this Court to compel it to produce such documents. This Court declined because Credit Suisse's response to document request no. 1 stated that Credit Suisse possessed no responsive documents. During the teleconference, Credit Suisse's counsel did not correct the Court's conclusion in this regard, and last night (October 17), at 11:00 PM CST, Credit Suisse's counsel, in response to Plaintiffs' counsel's question,

emailed a letter that repeated that Credit Suisse possessed no documents responsive to document request no. 1.

Just before noon today (October 18), however, Credit Suisse's counsel provided a four-page email chain containing at least six emails between Defendant Innovatis, Defendant Lasshofer, Defendant Burgess, and Credit Suisse. The email chain is attached as Exhibit 1 to the Declaration of Bruce D. Manning dated October 18, 2012 ("Manning Decl."), filed concurrently. The document mentions how Niemi was in Colorado (contradicting Credit Suisse's Trounce's declaration); repeatedly refers to Niemi's Colorado limited-liability company, Mesa Homes; and that the Credit Suisse "sub account" was "in the name of Mesa Homes," not merely "regarding" Mesa Homes (again contradicting Trounce's declaration). Additionally, this document is not only responsive to document request no. 1, but it (1) was provided to Credit Suisse's counsel at least nine hours before they sent their October 17 letter to Plaintiffs' counsel that they possessed no documents responsive to document request no. 1; (2) contains three improper redactions, including who the email string was forwarded from and to on two occasions, the date of those emails, and the subject of those emails; and therefore, (3) raises a question as to whether Credit Suisse possessed the document when this Court stated, on the basis of Credit Suisse's discovery responses, that it possessed no documents responsive to document request no. 1.

Credit Suisse's proposed delay is now more than ever prejudicial to Plaintiffs. As Lasshofer's counsel indicated during the October 16 teleconference with the Court, the money in Lasshofer's Credit Suisse accounts, which Plaintiffs have long pursued, is now

apparently the subject of a Swiss attachment order and could soon be permanently removed (although Credit Suisse's attorneys claim to have no information regarding this order as of yesterday). For this reason, as well as Credit Suisse's refusal to comply with Court-ordered discovery, Plaintiffs respectfully request that the Motion for Continuance be denied, and that this Court conclusively presume personal jurisdiction over Credit Suisse and award Plaintiffs other relief.

FACTS

**A.     Plaintiffs seek TRO against Credit Suisse that would require Credit Suisse to escrow in Colorado funds held by or for Lasshofer Defendants**

On July 24, 2012, Plaintiffs sought to add Credit Suisse as a Nominal Defendant in the instant litigation because it holds the Lasshofer Defendants' funds, which are subject to the Preliminary Injunction Order and at issue in this litigation. (Dkt. 85.)

Plaintiffs moved for a Temporary Restraining Order that would require Credit Suisse to, *inter alia*, escrow in the District of Colorado all funds held by or for the benefit of any Lasshofer Defendant. (Dkt. 86.) At the conclusion of a July 30, 2012 Temporary Restraining Order Hearing, this Court restrained Credit Suisse "from permitting the Innovatis Groups and Mr. Lasshofer from removing any money from the Credit Suisse accounts of any number that contain any of the $6.8 million fund in question until an evidentiary hearing is held" to ascertain if the Court had personal jurisdiction over Credit Suisse. (Dkt. 97 at 2.) This evidentiary hearing was originally scheduled for August 13, 2012. (Dkt. 99.) On August 9, Plaintiffs filed a Motion for a Preliminary Injunction and

4

set forth several bases for this Court's exercise of jurisdiction over Credit Suisse. (Dkt. 106.)

On August 10, Credit Suisse informed Plaintiffs that it could not respond to Plaintiffs' Motion before the August 13 hearing. Plaintiffs accommodated Credit Suisse by agreeing to file a joint Motion to continue the hearing date. (Dkt. 107.) The Court granted this Motion on August 12, 2012. (Dkt. 109.)

### B. The Court orders jurisdictional discovery at August 31, 2012 status conference

On August 31, 2012, a status teleconference was held between the Court and all parties. (Dkt. 120.) During the conference, Plaintiffs requested an early September Preliminary Injunction Hearing date. Credit Suisse said its witnesses would be unavailable during the proposed September dates, so, at Credit Suisse's request, the Court scheduled the hearing for October 19, 2012. (*Id.* at 2.)

Due to Credit Suisse's proposed delay, Plaintiffs requested jurisdictional discovery during the August 31 status conference. Credit Suisse opposed this request, contending that a discovery order would create a conflict with Swiss law. (*Id.*) This Court nonetheless granted Plaintiffs' request. (*Id.*) Credit Suisse then asked for similar, "limited discovery" from Plaintiffs. (*Id.*) The Court permitted the parties to serve upon each other ten interrogatories and ten requests for production. (*Id.*) The Court's instructions were to "ask questions in plain English, and the opposing party will answer them in the spirit in which they were clearly intended." The Court directed the parties not to make general objections.

## C.    Credit Suisse participates in discovery

Without any objection, or any suggestion that it would not participate in discovery, Credit Suisse served its discovery requests on Plaintiffs at 5:46 PM CST on September 5, 2012. Credit Suisse propounded its requests about two hours after Plaintiffs served theirs on Credit Suisse.

## D.    Credit Suisse refuses to respond to Plaintiffs' discovery requests

Credit Suisse did not object to Plaintiffs' questions or requests, or indicate that it would refuse to respond, until approximately four hours after Credit Suisse received Plaintiffs' responses to its interrogatories and document requests at 4:27 PM CST on September 26, 2012, the day discovery was due. Specifically, Credit Suisse served its responses to Plaintiffs' discovery requests at 8:26 PM CST. Credit Suisse served what amounted to a series of general objections and refusals to respond to Plaintiffs' interrogatories and requests. (*See* Dkt. 130.)

Discovery has accordingly been one-sided thus far. Plaintiffs provided Credit Suisse with 95 pages of documents pursuant to its requests; Credit Suisse produced a single publicly available document. Plaintiffs answered all of Credit Suisse's interrogatories, and even responded to Credit Suisse's late-made request for communications between Plaintiffs and Michael Burgess; Credit Suisse refused to respond to nine of Plaintiffs' interrogatories or requests, continually contending that Swiss law inhibited its production of documents or information. Plaintiffs did not make a single general objection to Credit Suisse's interrogatories or requests; Credit Suisse objected generally nine times. Some of these general objections were contradictory; for example, Credit Suisse objected that

responding to a document request would be unduly burdensome and, in the same response and without stating that anything was subject to that objection, said it was not in possession of any documents that were responsive to the request. (Credit Suisse Resp. to Pl.'s Doc. Request 3.)

### E. Plaintiffs immediately inform Credit Suisse that Credit Suisse's discovery responses are inadequate

On September 28, 2012, after Credit Suisse asked why Plaintiffs desired a status conference to discuss discovery, Plaintiffs informed Credit Suisse that "in a nutshell, [Credit Suisse] didn't answer anything." (Manning Decl. Ex. 2.) Plaintiffs asked Credit Suisse to participate in a conference call that day, but Credit Suisse's counsel was unable to do so. Plaintiffs made clear that they did not believe Credit Suisse had complied with the Court-ordered discovery, yet Credit Suisse took no additional action.

### F. The Court orders Credit Suisse to respond to Plaintiffs' requests by October 18 at noon

During an October 16, 2012 teleconference regarding discovery, the Court ordered Credit Suisse to make "complete, fair, and proper response[s]" to Plaintiffs' Interrogatories 4, 7, 8, and 9, and Plaintiffs' Document Requests 2, 3, 4, and 5. (Dkt. 136 at 2.) The Court ordered this discovery to be made by Thursday, October 18, at noon. But notably, this Court refused to compel Credit Suisse to answer document request no. 1, which asked for:

> All documents relating to each communication between Credit Suisse AG (including its subsidiaries and affiliates) and any defendant in this case relating to any project located in the State of Colorado, including email, memoranda, and correspondence.

(*See* Dkt. 130 at 8.) Specifically, this Court stated that it appeared that Credit Suisse answered document request no. 1 by stating it possessed no documents. Credit Suisse's counsel was silent when the Court stated this conclusion. *But see infra* (noting that Credit Suisse contends an altered document exists, and that Credit Suisse could only make that claim by comparing the allegedly altered document to a document it refuses to produce).

**G.   October 17, 2012 call between counsel for Plaintiffs and counsel for Credit Suisse**

On October 17, 2012, counsel for Credit Suisse asked counsel for Plaintiffs to participate in a conference call that day. Counsel for Plaintiffs rearranged other commitments and agreed. Credit Suisse did not mention this teleconference in its Motion for Continuance (Dkt. 137) or the accompanying Declaration of Julie Ann North (Dkt. 137-1). Plaintiffs' counsel summarized the teleconference in a letter Plaintiffs submitted to Ms. North following the call. (Manning Decl. Ex. 3.) Ms. North responded in a letter later that day. (Manning Decl. Ex. 4.)

**1.   Credit Suisse states that it does not know if and when it will comply with the Court's Order**

Plaintiffs' letter recounts that Credit Suisse told Plaintiffs during the call that it did not know how, when, or in what manner it would comply with the Court's discovery Order. Credit Suisse informed Plaintiffs that it was in the process of collecting documents responsive to Plaintiffs' requests and, once it had done so, it would consult with its Swiss law experts to "see whether we may provide some information" to Plaintiffs, albeit "not in the form [Plaintiffs] have requested." (Manning Decl. Ex. 3 at 3.)

### 2. Credit Suisse informs Plaintiffs that it possesses documents responsive to Plaintiffs' requests, but which it will not produce

Credit Suisse also informed Plaintiffs that it possesses documents responsive to Plaintiffs' requests, but it will not produce them. It stated that it has a document responsive to Plaintiffs' interrogatory no. 4, but which it neither identified in responding to this interrogatory nor is willing to produce to Plaintiffs.[1] (*Id.* at 3.) Additionally, during the call, Plaintiffs pointed out that Credit Suisse allowed the Court to believe that Credit Suisse possesses no documents responsive to Plaintiffs' document request no. 1.

It is now clear that Credit Suisse possesses documents responsive to document request no. 1. Specifically, on October 10, 2012, Credit Suisse told Plaintiffs it believed the Safekeeping Account Position document (Manning Decl. Ex. 5) had been altered. In fact, Credit Suisse not only stated that the document was altered, but it made this conclusion without looking at the underlying metadata for the document *because Credit Suisse asked Plaintiffs to provide the metadata to Credit Suisse* in a voicemail message on October 10, 2012. (Manning Decl. Ex. 6.) Plaintiffs informed Credit Suisse that they would not respond to any more of Credit Suisse's additional demands because Credit Suisse had not responded to Plaintiffs' initial requests.

---

[1]    Although Credit Suisse now states, in the letter they sent to Plaintiffs on the evening of October 17, 2012 (Manning Decl. Ex. 4), that the email string which it refuses to produce is responsive to Plaintiffs' document request no. 7, i.e. not interrogatory no. 4, Credit Suisse stated during the call that the email string was responsive to interrogatory no. 4, which the Court ordered Credit Suisse to answer completely, fairly, and honestly. At any rate, documents responsive to document request no. 7 would constitute information responsive to interrogatory no. 4, as both requests ask about material Jonathan Trounce reviewed in preparing his declaration.

This document has not only not been produced, but Credit Suisse's counsel refuses to provide Plaintiffs' counsel with any facts as to why Credit Suisse believes it was altered. That is, during the October 17 teleconference with Ms. North, Plaintiffs' counsel asked Credit Suisse how they could contend that the Safekeeping Account Position document was altered unless Credit Suisse possessed a non-produced second version of the same document. Plaintiffs asked this question twice: once in their October 17 teleconference with Ms. North and again via correspondence of the same date. (Manning Decl. Ex. 3.) During the call, Plaintiffs' counsel stated that any and all documents constituting Credit Suisse's basis for claiming alteration were responsive to Plaintiffs' document request no. 1; Ms. North did not quarrel with this position.[2] In their letter, Plaintiffs' counsel asked:

> Does Credit Suisse have any document within its possession, custody, or control responsive to Plaintiffs' document request no. 1, including, but not limited to, Safekeeping Account Position documents (whether they identify Mesa Homes or not), account statements, account opening forms, email, correspondence, etc.?

(Manning Decl. Ex. 3.)

However, in her October 17 "responsive" letter to Plaintiffs' counsel, Ms. North did not answer as to how Credit Suisse concluded that the Safekeeping Account Position

---

[2]     The first paragraph of Ms. North's October 17, 2012, letter states that "Credit Suisse does not have any documents responsive to Plaintiffs' Document Request No. 1." Not only is this statement belied by Credit Suisse's assertion that is has reason to believe the Safekeeping Position document was altered, but Ms. North's statement conflicts with Credit Suisse's response to Plaintiffs' document request no. 1. In its response, Credit Suisse indicated that "documents attached to the Declaration of Bruce D. Manning in support of Plaintiffs' Motion to Amend . . . and cited to in Credit Suisse's Opposition to Plaintiffs' Motion for Preliminary Injunction," are documents Credit Suisse has that are responsive to the request.

document was allegedly altered. (Manning Decl. Ex. 4.) Nor did Ms. North respond as to whether Credit Suisse had another Safekeeping Account Position document that was/is different from the one filed with the Court. (*Id.*)

### 3. Credit Suisse refuses to assure Plaintiffs that the $6.8 million in Lasshofer's accounts will not be removed

During the October 16 teleconference, counsel for Defendant Lasshofer imparted to the Court and all parties that he believed a Swiss authority had issued an attachment order with respect to funds in the Innovatis Asset Management SA Credit Suisse account. Because Credit Suisse was unable to unequivocally assure Plaintiffs that the $6.8 million in Lasshofer's Credit Suisse accounts would not be removed pending Credit Suisse's compliance with the Court's discovery Order, Plaintiffs asked Credit Suisse to answer the following question:

> During the pendency of your responses to discovery requests for which the U.S. District Court for the District of Colorado has overruled your Swiss law-based objections and up to the Court's eventual ruling on our motion for a preliminary injunction, do you agree to affirmatively prevent any person or entity, including, but not limited to, any arm of the Swiss or any other government, from removing or transferring any funds from any Credit Suisse accounts (howsoever identified) held by or for Innovatis Asset Management SA, Erwin Lasshofer, Innovatis Immobilien GbmH, or Innovatis GmbH?

(Manning Decl. Ex. 3 at 4.) Although Credit Suisse has filed a motion, submitted a declaration, and sent Plaintiffs a letter since being asked this question, Credit Suisse has provided no response.

**H.    Credit Suisse produces a document responsive to Plaintiffs' document request no. 1 on October 18, 2012**

At around noon on October 18, 2012, Credit Suisse produced a document that is responsive to Plaintiffs' document request no. 1. (Manning Decl. Ex. 1.) The document is an email chain that includes emails to and from the Lasshofer Defendants, Michael Burgess, and Jonathan Trounce of Credit Suisse. The entire email chain was sent to Trounce by Innovatis on November 24, 2009 as authorization for Trounce to conduct the November 24, 2009 call with Niemi. (*Id.* at 2-3.) The communications reference John Niemi's Colorado location. (*Id.* at 2.) The communications also make clear that the sub account at Credit Suisse was "in the name of Mesa Homes," not "in the name of Innovatis re: Mesa Homes," as Trounce stated in his declaration. (Dkt. 124-1 at ¶ 10.) Trounce was specifically instructed to answer the following question for Niemi: "Has a sub account in the name of Mesa Homes been opened at Credit Suisse?" (Manning Decl. Ex. 1 at 2.)

This disclosure prompts several questions. First, why was this document not earlier produced, given that it is directly responsive to Plaintiffs' document request no. 1? Second, why did Credit Suisse allow the Court to proceed on the incorrect belief that it possessed no documents responsive to Plaintiffs' document request no. 1, when it new or should have known that it possessed this document? Third, why did Ms. North, in her letter, written *after* Ms. North's colleague received this document, state, in no uncertain terms, that "Credit Suisse does not have any documents responsive to Plaintiffs' Document Request No. 1"? Fourth, why are two of the more recent communications in

12

the email string entirely redacted? At the very least, Plaintiffs request that the "From,"

"To," and "Sent" lines be filled in, as would be typical in the ordinary course were this

document produced along with a privilege log. Fifth, Lasshofer's November 24, 2009

email, sent at 14:41:35, references a call between Burgess and Trounce. (*See* Manning

Decl. at ¶ 2.) Why was this not described in response to Plaintiffs' interrogatory no. 1?

**ARGUMENT**

**I.     Credit Suisse's Motion for Continuance should be denied.**

A continuance would not be productive and only threatens to harm Plaintiffs.

Moreover, because Credit Suisse has indicated that it "does intend to continue to assert

objections based on Swiss law," (Manning Decl. Ex. 4 at 1), a continuance will only

prolong Credit Suisse's noncompliance. On the other hand, if Plaintiffs cannot quickly

obtain the injunctive relief they seek with respect to Lasshofer's Credit Suisse-held

assets, these assets may soon be rendered unobtainable as others, possibly at Lasshofer's

behest, are seeking to remove the funds.

**II.    This Court should order relief relating to Credit Suisse's failure to respond to
        Plaintiffs' discovery requests.**

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vii) this Court may

"direct[] that the matters embraced in the order or other designated facts be taken as

established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P.

37(b)(2)(A)(i). The Court, on August 31, 2012, ordered discovery "related to

jurisdiction." (Dkt. 120 at 2.) As personal jurisdiction was a matter "embraced in the

order," it is appropriate for the Court to conclusively presume personal jurisdiction over

Credit Suisse.

The Tenth Circuit upheld a district court's presumption of contested facts against a

noncomplying Swiss defendant in a similar case. *See Ohio v. Arthur Andersen & Co.*, 570

F.2d 1372, 1374 (10th Cir. 1978). In *Arthur Andersen*, the Swiss defendant, like Credit

Suisse here, asserted Swiss secrecy laws as its basis for resisting compliance with the

court's discovery order. *Id.* at 1374. Even though Arthur Andersen ultimately produced

the documents at issue, the court ordered that the defendant was "precluded from

opposing [plaintiff's] claims on two specified matters" and awarded plaintiff its costs and

expenses, both for securing production of the disputed material and for defending the

appeal. *Id.* at 1372, 1374, 1376 (10th Cir. 1978). As in *Andersen*, Credit Suisse "refused

willfully to obey for an unreasonable time on the contrived excuse, eventually

abandoned, of the Swiss secrecy laws." *Id.* at 1374. Additionally, if the sheer shift in its

argument, revealing that its "claims with reference to Swiss law were no more than

diversionary tactics," *id.*, is not itself sanctionable,[3] its non-existent discovery responses,

---

[3]     The Tenth Circuit denounced the defendant in *Arthur Andersen* for taking
inconsistent positions with respect to Swiss law. Initially, the defendant "represented to
the court that the documents were not producible because of Swiss law and that the
consents were inadequate." 570 F.2d at 1373. It later sent a lawyer to Switzerland "to
determine what documents and information may be available for examination by
[plaintiff] without violating Swiss criminal law." *Id.* The district court held, and the Tenth
Circuit agreed, that this conduct "places in substantial doubt the credibility of both the
written opinion of Swiss counsel and Andersen's own insistence that it had proceeded in
good faith to do the best it can." *Id.* In the present case, Credit Suisse has done the same
by at first asserting that it could provide no information because of Swiss secrecy laws,
and then, long after discovery was due, conducting the item-by-item analysis required to
determine what is producible.

which have now prejudiced Plaintiffs' personal jurisdiction arguments, is. *See Coca-Cola Foods*, 1997 U.S. Dist. LEXIS 9295, at *25, *34, 1997 WL 370121, at *11 (conclusively presuming personal jurisdiction over Swiss defendants because of their failure to comply with discovery order, and requiring defendants to pay reasonable costs and attorney's fees).

This case is also analogous to *Coca-Cola Foods v. Empresa Comercial Internacional de Frutas S.A.*, No. 96-358-Civ-T-17C, 1997 U.S. Dist. LEXIS 9295, at *23, 1997 WL 370121, at *7 (M.D. Fla. June 12, 1997) *S.A.*, No. 96-358-Civ-T-17C, 1997 U.S. Dist. LEXIS 9295, at *23, 1997 WL 370121, at *7 (M.D. Fla. June 12, 1997), which also involved a refusal by defendants, who had challenged personal jurisdiction, to comply with a discovery order. *Coco-Cola Foods*, 1997 U.S. Dist. LEXIS 9295, at *21, 1997 WL 370121, at *4. As in the present case, the defendants in *Coca-Cola* argued that they would face possible sanctions under Swiss law if they participated in discovery. *Id.* Also as in the present case, the magistrate judge in *Coca-Cola* ordered "discovery on [the] limited topic" of personal jurisdiction because of "the ambiguity regarding" defendants' contention "that they [did] not have the requisite minimum contacts with Florida that would be necessary to establish personal jurisdiction over them." 1997 U.S. Dist. LEXIS 9295, at *26, 1997 WL 370121, at *8. The court in *Coco-Cola* sanctioned the noncompliant defendants by conclusively presuming personal jurisdiction, reasoning that "there is no question that plaintiff is entitled to conduct reasonable discovery regarding defendants' challenge to personal jurisdiction." 1997 U.S. Dist. LEXIS 9295, at

*27, 1997 WL 370121, at *8. It would be appropriate for the Court in the present case to conclusively presume personal jurisdiction over Credit Suisse for the same reason.

Moreover, Credit Suisse did not comply with this Court's noon Thursday (October 18, 2012) deadline. Accordingly, Credit Suisse's noncompliance in the present litigation is even more egregious than that of the defendant in *Arthur Andersen*, and Credit Suisse should be sanctioned at least as severely. Whereas the defendant in *Arthur Andersen* ultimately complied with the court's orders, Credit Suisse in the present case has persisted in its defiance. Credit Suisse's noncompliance with discovery orders, especially in light of its opportunistic participation in discovery and receipt of Plaintiffs' responses, places Plaintiffs at an acute disadvantage in establishing personal jurisdiction over Credit Suisse.

### IV.   Credit Suisse Possesses Documents Responsive to document request no. 1.

It is clear that Credit Suisse possessed documents responsive to Plaintiffs' document request no. 1, despite allowing the Court to believe the contrary during the October 16 teleconference when the Court took Credit Suisse at its word that it possessed no such documents. This can be shown in five ways.

*First*, Credit Suisse produced, on October 18, a document that relates to communications between Jonathan Trounce and the Lasshofer Defendants and Burgess regarding Niemi and his Colorado company Mesa Homes, and which discussed security that was intended to protect Plaintiffs' project in the event of default. The document is responsive to document request no. 1.

*Second*, Trounce admitted that Credit Suisse created an account with Niemi's Colorado limited liability company, Mesa Homes, specifically named in the account's title. (Dkt. 124-1 at ¶ 10.) It defies credulity that Credit Suisse does not possess any document (off a computer or otherwise) that identifies what amount of money was in this account, when it was opened, who was responsible for it, etc. Nonetheless, Credit Suisse has produced no such documents here.

*Third*, in communications with Plaintiffs' counsel, Credit Suisse contended that the Safekeeping Account Position statement (which refers to Mesa Homes) that Plaintiffs submitted to the Court has been altered. Credit Suisse further asked Plaintiffs' counsel to provide Credit Suisse with the metadata for the document. To conclude that this document had been altered, Credit Suisse would have to have compared the document to another document in Credit Suisse's possession. Credit Suisse has admitted that the Safekeeping Account Position document is responsive to document request no. 1; it thus possesses no conceivable argument to withhold production based on responsiveness or relevance.[4]

*Fourth*, during the October 17 teleconference with Plaintiffs' counsel, Credit Suisse refused to answer what documents Trounce reviewed in preparation for his declaration—a fact that Trounce himself admitted in the first paragraph of his declaration. (Dkt. 124-1 at ¶ 1 ("Each of the statements made herein is based upon my personal knowledge, or

---

[4]     In its response to Plaintiffs' document request no. 1, Credit Suisse acknowledged that this document was responsive to document request no. 1 by stating that it did not need to produce the document because it was attached to one of Plaintiffs' counsel's declarations. (*See* Dkt. 130 at 8.)

upon knowledge I have derived from a review of the records and files maintained by CS AG-Dubai in the ordinary course of business, or upon information supplied to me by other employees or agents of CS AG-Dubai in the normal course of their and my duties and responsibilities.").)

*And finally*, Credit Suisse has refused to answer Plaintiffs inquiries regarding how Credit Suisse could know that the Safekeeping Account Position document was altered unless it possessed another, non-produced document.

## CONCLUSION

This Court ordered jurisdictional discovery on August 31, 2012, and that Credit Suisse provide specific discovery to Plaintiffs by noon today (October 18, 2012). Credit Suisse has not complied. Pursuant to the above authority, therefore, this Court should conclusively presume jurisdiction over Credit Suisse and compensate Plaintiffs for Credit Suisse's noncompliance.

Dated this 18th day of October, 2012.

Respectfully submitted,

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

*/s/Christopher W. Madel*
Christopher W. Madel
Bruce D. Manning
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com

18

and

Stephanie E. Dunn
Robert N. Miller
**PERKINS COIE LLP**
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303-291-2300
Facsimile: 303-291-2400
rmiller@perkinscoie.com
sdunn@perkinscoie.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2012, I electronically filed the foregoing PLAINTIFFS' RESPONSE TO CREDIT SUISSE AG'S MOTION TO CONTINUE PRELIMINARY INJUNCTION HEARING with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Justine Victoria Beyda**
  jbeyda@cravath.com,mao@cravath.com
- **Kathleen E. Craigmile**
  kec@benningtonjohnson.com,dtb@benningtonjohnson.com,
  man@benningtonjohnson.com,tlp@benningtonjohnson.com,
  afa@benningtonjohnson.com
- **Stephanie Erin Dunn**
  sdunn@perkinscoie.com,sdunn-efile@perkinscoie.com
- **Kevin D. Evans**
  kdevans@s-elaw.com,pdouglass@s-elaw.com,sjoshi@s-elaw.com,
  tbaksay@s-elaw.com
- **Christopher William Madel**
  cwmadel@rkmc.com,dclandis@rkmc.com,dmvanalstine@rkmc.com,
  ELBecker@rkmc.com,arthom@rkmc.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com
- **Julie Anne North**
  jnorth@cravath.com,mao@cravath.com

*/s/Christopher W. Madel*
Christopher W. Madel
Bruce D. Manning
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com

ATTORNEYS FOR PLAINTIFFS

83451235.1