# EXHIBIT 3

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

Bruce D. Manning
BDManning@rkmc.com
612-349-8466

October 17, 2012

*Via Email*

Julie A. North
Cravath Swaine & Moore
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019-7475

    Re:  *John Niemi, Robert Naegele, III, and Jesper Parnevik v. Michael Frank Burgess, Erwin Lasshofer, Innovatis GmbH, Innovatis Immobilien GmbH, Innovatis Asset Management SA, Lexington Capital & Property Investments, LLC, and Barry Funt*
         Court File No. 1:12-cv-00869-RBJ

Dear Ms. North:

    I believe that the following is an accurate summary of our 11:45 AM CST phone call, and trust that you will correct any inaccuracies. On our end, Aaron Thom and I appeared for the Plaintiffs and spoke with you, Kate Craigmile, and Justine Beyda for Credit Suisse. The call was intended to satisfy your obligation to meet-and-confer in good faith in advance of your anticipated motion to suspend Friday's hearing on the motion for a preliminary injunction in favor of a status update to the Court later next week on Credit Suisse's plan for addressing the Court's discovery orders. As I noted at the end of our discussion, I believe you have satisfied that obligation.

## I. Does Credit Suisse have any documents responsive to Plaintiffs' Document Request No. 1?

    In Credit Suisse's responses to Plaintiffs' document request no. 1, Credit Suisse stated that it does not have any documents in its possession, custody, or control relating to any communications between Credit Suisse AG (including its subsidiaries and affiliates) and any defendant in this case relating to any project located in the State of Colorado, with the exception of "the documents attached to the Declaration of Bruce D. Manning in support of Plaintiffs' Motion to Amend . . . and cited to in Credit Suisse's Opposition to Plaintiffs' Motion for Preliminary Injunction."

    Credit Suisse produced no document with respect to this request, including any account statements, account-opening forms, emails, correspondence, etc., and instead referenced only a document produced by Plaintiffs and attached to my affidavit.

October 17, 2012  
Page 2

Via Email and U.S. Mail

---

Plaintiffs notified the Court of this and other deficiencies. (Dkt. 130) During the October 15, 2012 teleconference, the Court did not compel Credit Suisse to make a production in response to this request, concluding that Credit Suisse's response indicated that it had no responsive document within its possession, custody, or control. Credit Suisse's counsel did not correct the Court's conclusion in this regard.

By email dated October 11, 2012, however, Credit Suisse asked Plaintiffs to provide the metadata for the Safekeeping Account Position document (Dkt. 85-6) because, as Credit Suisse's counsel contended, that document was "altered." (Voicemail from J. North to C. Madel, October 10, 2012.) This Safekeeping Account Position document is obviously relevant to the jurisdictional issue, as, and among other things, it specifically mentions Plaintiff Niemi'sColorado limited-liability company, Mesa Homes. (*See* Dkt 85-6). Because Credit Suisse refused to provide any documents to Plaintiffs in response to Document Request No. 1 (and for that matter, all document requests save for one piece of publicly available paper), and because Plaintiffs had already fully replied to Credit Suisse's discovery requests—formal and informal—and discovery was apparently a one-way street, Plaintiffs respectfully refused to provide the requested information.

Additionally, during our call today, you indicated that Credit Suisse does have in its possession, custody, or control "records and files maintained by CS AG-Dubai in the ordinary course of business" and/or "information supplied to [Jonathan Trounce] by other employees or agents of CS AG-Dubai in the normal course of their and [his] duties and responsibilities" underlying statements made by Mr. Trounce in his declaration filed with the Court.(This relates to Plaintiffs' Interrogatory Nos. 4. 5 and 6, in conjunction with Document Request No. 6.) In our call today, Credit Suisse acknowledged that although it does possess at least one document responsive to this request, it will not produce this document to Plaintiffs.

Based on the foregoing, Plaintiffs respectfully request that Credit Suisse answer the following "Question #1" with a simple "yes" or "no":

> **Question #1:** does Credit Suisse have any document within its possession, custody, or control responsive to Plaintiffs' document request no. 1, including, but not limited to, Safekeeping Account Position documents (whether they identify Mesa Homes or not), account statements, account opening forms, email, correspondence, etc.?

If Credit Suisse's answer to this question is "yes," please explain why you did not correct the Court's conclusion that Credit Suisse did not possess such documents during the October 15, 2012 teleconference.

October 17, 2012
Page 3

Via Email and U.S. Mail

---

II. **Will Credit Suisse continue to assert objections to Court-ordered discovery based on assertions of Swiss law?**

You stated during today's call that Credit Suisse takes the position that "Credit Suisse has Swiss laws that it must comply with" as it addresses the Court's discovery orders. Specifically, you said that Credit Suisse is "trying to juggle between what the Court has directed we do and what we could be permitted to do under Swiss law." You further stated that Credit Suisse has not yet decided whether it will assert Swiss law as an objection to responding to Plaintiffs' requests or "by way of explanation" for what will be a less-than-complete response.

You also reported that Credit Suisse has begun the process of collecting documents responsive to Plaintiffs' discovery requests. Once it has collected these documents, Credit Suisse will "consult with" the Swiss law expert to determine what it can and cannot produce or if some alternate method of providing information may be acceptable under Swiss law. Credit Suisse has concluded that it will "see whether we may provide some information" to Plaintiffs in response to their requests, "but not in the form [Plaintiffs] have requested." For example, Credit Suisse may elect to respond to Plaintiffs' Document Request No. 2 not by providing documents, but by providing "some of the information" requested in the form of an interrogatory response because "Swiss law may not allow" Credit Suisse to produce documents.

III. **When will documents and information be produced?**

You stated that Credit Suisse would not, at least at this time, provide Plaintiffs with any information about what responses or documents Credit Suisse might produce in compliance with the Court's Order or when Plaintiffs may expect Credit Suisse will make production.

We respectfully note that Plaintiffs originally provided you with Plaintiffs' discovery requests on September 5, 2012 (42 days ago), that you responded on September 26 (21 days ago), and that we notified you of our problems with Credit Suisse's responses on October 11 (6 days ago). Furthermore, it was Credit Suisse—and not Plaintiffs—that made the request to postpone the September 2012 preliminary-injunction hearing that led to the Court's decision to order jurisdictional discovery. Your lack of time, therefore, represents a problem of your own creation.

IV. **What is Credit Suisse's view of the scope and meaning of the current TRO?**

You offered—by way of comfort for a further delay—that Credit Suisse would agree to extend the TRO until a preliminary injunction hearing could be held. I explained why I was unable to grasp the complete meaning of that statement; after all, if Swiss law can continue to trump the Court's clear orders to the contrary on

October 17, 2012  
Page 4                                                                                   *Via Email and U.S. Mail*

---

discovery, what assurance do I have that Credit Suisse may not take the same view when it comes to keeping frozen the $6.8M+ that is the subject of the TRO.

I would also have welcomed any additional information you may have had on Mr. Douglass's statement yesterday that alleged "beneficial owners" of some or all of these accounts have sought the assistance of Swiss authorities to remove these funds. Thus, I asked Credit Suisse to provide assurance that, in the event the Preliminary Injunction Hearing is continued for a second time at Credit Suisse's request, Credit Suisse will prevent from being removed from the Credit Suisse accounts (howsoever denoted) any of the $6.8+ million that is at the heart of the present dispute, and which Credit Suisse referenced during today's call. You proposed that it would be helpful for us to draft a question for you to share with your client so that we might provide clarity to our clients and to the Court on this issue.

Therefore, and per your request, Plaintiffs respectfully request that Credit Suisse answer the following "Question #2" with a simple "yes" or "no"::

> **Question #2.** During the pendency of your responses to discovery requests for which the U.S. District Court for the District of Colorado has overruled your Swiss law-based objections and up to the Court's eventual ruling on our motion for a preliminary injunction, do you agree to affirmatively prevent any person or entity, including, but not limited to, any arm of the Swiss or any other government, from removing or transferring any funds from any Credit Suisse accounts (howsoever identified) held by or for Innovatis Asset Management SA, Erwin Lasshofer, Innovatis Immobilien GmbH, or Innovatis GmbH?

## V.    Opposition to proposed motion

As noted during our call, based on the information we have to date, we will oppose the motion you have proposed. As I said, we will ask the Court to deny it and, if appropriate, ask the Court to order relief for Credit Suisse's failure to comply with its orders. We will not allow further harm to our clients' interests by countenancing further delay.

Sincerely,

*Bruce Manning*

Bruce D. Manning

October 17, 2012
Page 5

Via Email and U.S. Mail

---

cc: Justine Beyda
    Kathleen E. Craigmile
    Phillip L. Douglass and Kevin D. Evans
    Robert N. Miller and Stephanie Dunn

83447764.1