UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No.: 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

        Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH,
INNOVATIS ASSET MANAGEMENT, S.A.,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

        Defendants.

---

**RESPONSE OF MR. LASSHOFER AND THE INNOVATIS DEFENDANTS,
PURSUANT TO SPECIAL APPEARANCE,
TO PLAINTIFFS' MOTION FOR LIMITED DISCOVERY**

---

Defendant Erwin Lasshofer ("Mr. Lasshofer") and Defendants Innovatis GmbH,

Innovatis Immobilien GmbH, and Innovatis Asset Management, S.A. (collectively the "Innovatis

Defendants"), *via* special appearance,[1] submit this Response in opposition to Plaintiffs' Motion

For Limited Discovery (" Motion For Limited Discovery") [Doc. No. 159; filed 1/28/13].

---

[1]Kevin D. Evans and Phillip L. Douglass of STEESE, EVANS & FRANKEL, P.C. ("SE&F")
specially appeared in this matter to oppose entry of a preliminary injunction and challenge the

# INTRODUCTION

Recognizing as a result of the Tenth Circuit briefing and argument on January 16, 2013, that they have significant problems regarding standing,[2] and that the Tenth Circuit, if it does not outright reverse the preliminary injunction order, very well may vacate the order on at least standing grounds, Plaintiffs seek to jump the gun on their next request for a preliminary injunction by prematurely requesting discovery on standing.  The Court should deny the Motion For Limited Discovery because the issue of standing is currently before the Tenth Circuit; therefore, this Court does not have jurisdiction to address the issue.

Moreover, Plaintiffs' argument in their Motion requesting discovery on the issue of standing, together with the multi-level relief sought,[3] demonstrates the fallacy of their position

---

Court's exercise of jurisdiction over Mr. Lasshofer and the Innovatis Defendants on grounds of ineffective service of process, lack of personal jurisdiction, and improper venue. The Court has entered a Preliminary Injunction Order [Doc. No. 50; filed 6/1/2012], which Mr. Lasshofer and the Innovatis Defendants have appealed.  After the release of funds permitting them to do so, Mr. Lasshofer and the Innovatis Defendants challenged the Court's venue and jurisdiction through their Rule 12(b) Motion To Dismiss [Doc. No. 67; filed 6/15/2012], which has not yet been decided.   This Response is not inconsistent with the special appearance, as it challenges Plaintiffs' request for discovery on the issue of standing: a threshold question to any preliminary injunction inquiry and an issue currently before the Tenth Circuit as part of the appeal by Mr. Lasshofer and the Innovatis Defendants of the Court's entry of the preliminary injunction.

[2] Indeed, we submit that it was readily apparent from the cross and redirect examination of Mr. Niemi during the preliminary injunction hearing that Plaintiffs were acutely aware at least as of that time of their standing dilemma.

[3] First, Plaintiffs ask the Court to order Mr. Lasshofer and the Innovatis Defendants to produce four categories of documents, none of which are relevant to the issue of Plaintiffs' standing. *See* Motion For Limited Discovery at 3.  Alternatively, Plaintiffs ask the Court to "grant them discovery on the issue of standing as the Court deems appropriate." *Id.*  Next, Plaintiffs prognosticate that Mr. Lasshofer and the Innovatis Defendants will not respond to the Motion For Limited Discovery and, therefore, ask the Court to find standing on the basis of the evidence already in the record. *Id.* (Plaintiffs do so even though the evidence already in the record demonstrates that Plaintiffs do not have standing now, and in fact never did have standing, to

2

and the existence of one or more ulterior motives behind it. For example, Plaintiffs imply that they require discovery on the issue of standing in support of their summary judgment motion. *See* Motion For Limited Discovery at 2. If this is the case, Plaintiffs should never have brought that motion in the first instance and should withdraw it, as their professed need for discovery on the fundamental foundational issue of standing clearly demonstrates their motion lacks merit. Equally odd, Plaintiffs appear to be trying to supplement the record by attaching declarations supposedly establishing standing to a motion ostensibly requesting discovery from Mr. Lasshofer and the Innovatis Defendants on the standing issue. These declarations raise the question: why do Plaintiffs, who should possess the evidence of their own standing, seek discovery on this issue at all? More importantly, the truthfulness of the facts averred in these declarations is highly suspect, particularly in light of an undisputed factual finding by the United States District Court for the District of Minnesota in a case involving the very same Breckenridge project (and Plaintiff Naegele as the defendant); that finding contradicts representations made to this Court and testimony Plaintiff Niemi presented at the preliminary injunction hearing, which Plaintiff Naegele left uncorrected despite evidence showing he knew it was false. The opinion by Judge David S. Doty (discussed below) lays bare the deception that has been perpetrated on this Court by Plaintiffs.

---

pursue the claims alleged in the Complaint.) Finally, Plaintiffs request that *if* the Court grants the Motion For Limited Discovery and *if* Mr. Lasshofer and the Innovatis Defendants do not produce the requested discovery, the Court find standing as a discovery sanction (even though such a finding is belied by the record). *Id.* at 3-4. Plaintiffs earn high marks for creativity, but their Motion smacks both of desperation and recognition that the standing issue may very well be decided against them by the Tenth Circuit.

In the final analysis, it is clear that Plaintiffs fear the preliminary injunction they obtained will be reversed or vacated because these Plaintiffs lack standing. It is also clear that Plaintiffs are anxious to concoct standing, even if necessary (and from Plaintiffs' perspective preferably) as a discovery sanction and even though such a finding would be belied by the record. The Court should, therefore, deny the Motion For Limited Discovery and proceed no further in this action until the Tenth Circuit rules on the pending appeal; we anticipate that ruling in May or June.

## ARGUMENT

### I.   THE COURT SHOULD NOT ADDRESS THE ISSUE OF STANDING UNTIL THE TENTH CIRCUIT RULES ON THE APPEAL

Plaintiffs acknowledge that the issue of their standing is before the Tenth Circuit. *See* Motion For Limited Discovery at 2. It was briefed and it was argued. In fact, at the oral argument, the Panel addressed many questions to the topic, including questions about the proper course to take if standing has not been established in this Court. There is little doubt that the Tenth Circuit's ruling will address standing. For this reason alone, the Court should deny the Motion For Limited Discovery.

"[A] district court cannot generally accept new evidence or arguments on the injunction while the validity of the injunction is on appeal." *Coastal Corp. v. Texas Eastern Corp.,* 869 F.2d 817, 820 (5th Cir. 1989).

> "Once the appeal is taken, . . . jurisdiction passes to the appellate court. Thereafter [a party] is not usually entitled as of right to present new evidence or argument to the trial court, which in the exercise of a sound discretion will exercise jurisdiction only to preserve the status quo as of the time of appeal."

*United States v. Power Eng'g Co.*, 10 F. Supp. 2d 1165, 1170 (D. Colo. 1998) (quoting *Ideal Toy Corp. v. Sayco Doll Corp.,* 302 F.2d 623, 625 (2nd Cir. 1962)); *see also Coastal Corp. v. Texas Eastern Corp.,* 869 F.2d 817, 820 (5th Cir. 1989) ("the powers of the district court over an injunction pending appeal should be limited to maintaining the status quo and ought not to extend to the point that the district court can divest the court of appeals from jurisdiction while the issue is . . . on appeal").

The *status quo* in this case remains unchanged. Therefore, this Court does not have jurisdiction to address standing until the Tenth Circuit rules. Moreover, it should not permit Plaintiffs to begin discovery in anticipation of that ruling. If the Tenth Circuit finds that standing did exist, Plaintiffs will have wasted time and resources. If the Tenth Circuit rules that standing did not exist, the need and nature of discovery, if any, will be informed by the Tenth Circuit's ruling. The Court should not sanction Plaintiffs' present maneuver, particularly because Plaintiffs already should possess evidence of their own standing and do not need discovery from Mr. Lasshofer or the Innovatis Defendants in an effort eventually to try and meet their burden.

## II.   PLAINTIFFS' DECLARATIONS ON STANDING ARE OF SUSPECT TRUTHFULNESS AND ILLUSTRATE THE LACK OF CANDOR WITH WHICH PLAINTIFFS ARE PROCEEDING

For whatever reason, attached to the Motion For Limited Discovery are declarations by each of Plaintiffs asserting that the claims raised in this lawsuit were orally assigned to Plaintiffs by Mesatex LLC, AZCO LLC, and AZCO II LLC (collectively the "AZCO entities") on August 2, 2010. *See* Declaration Of John Niemi ("Niemi Declaration") [Doc. No. 159-1; filed 1/28/2013]; Declaration Of Robert Naegele, III ("Naegele Declaration") [Doc. No. 159-2; filed 1/28/2013]; Declaration Of Jesper Parnevik ("Parnevik Declaration") [Doc. No. 159-3; filed 1/28/2013]. These declarations are of no value in addressing whether the Court should allow

discovery now on the issue of standing;[4] however, they do establish that Plaintiffs' story of standing is unbelievable.

### A.    The Timing Of Plaintiffs' Declarations Makes Them Incredulous

The timing of Plaintiffs' declarations casts serious doubt on their veracity. *Nowhere* in their Complaint do Plaintiffs mention any assignment of any claims by any of the corporate entities.   Plaintiffs' voluminous preliminary injunction papers equally *are silent* on this fundamental issue.   Then, on July 25, 2012, after the preliminary injunction hearing and order, and attached to their Motion To Amend Verified Complaint To Add Nominal Defendant, Plaintiffs filed a declaration of their counsel Bruce D. Manning, stating:

> Attached as Exhibit 2 is a true and correct copy of the Assignment Agreement between Mesatex, LLC, AZCO LLC, and AZCO II LLC, and John Niemi, Robert Naegele, III, and Jesper Parnevik.  The Assignment Agreement was signed by Mesatex LLC [by John Niemi], AZCO LLC [by John Niemi], AZCO II LLC [by John Niemi], and John Niemi on July 2, 2012, by Jesper Parnevik on July 7, 2012, and by Robert Naegele, III, on July 8, 2012, *and it memorializes the preexisting oral assignment in existence among the parties.*

Declaration Of Bruce D. Manning ("Manning Declaration") [Doc. No. 85-2; filed 7/25/2012] (emphasis added).    Significantly, the Manning Declaration does not reference when the "preexisting oral assignment" allegedly was made, and neither does the so-called written "Assignment Agreement":

> This Assignment Agreement serves to memorialize the assignment that already exists by oral agreement among the Parties.  That is, each of the LLCs assigned each and every claim and cause of action to the Fairmont Breckenridge Partners, jointly, including, but not limited to, each claim and cause of action made in *Niemi, et.* [sic] *al. v. Burgess, et.* [sic] *al* [sic], Civ. Action 12-CV-869-RBJ, currently pending in the U.S. District Court for the District of Colorado.

---

[4] If anything, the declarations show that Plaintiffs do not need discovery on the topic.

*Id.,* Exhibit 2. The significance of this omission is self-evident: the "Assignment Agreement" was entered *after* this lawsuit was filed and *after* the Court issued the preliminary injunction. One would expect that such a writing – presumably authored by Plaintiffs' litigation counsel – purporting to memorialize such a significant event, and made in an effort to try and demonstrate standing, would be detailed and specific about when the alleged oral assignment occurred. Instead, the "Assignment Agreement" leaves unaddressed when this alleged oral assignment occurred – if it occurred at all – and whether it occurred before Plaintiffs filed suit. This fact renders Plaintiffs' declarations suspicious and unbelievable. If the supposed oral assignment took place prior to the filing of suit – as opposed to the fabrication of a date by Plaintiffs after the fact in another effort to deceive this Court – Plaintiffs surely would have presented this information to the Court on July 25, 2012.

Moreover, the content of the declarations themselves raises more questions than it answers about the alleged oral assignment – questions that further establish that Plaintiffs' declarations are unbelievable. According to Plaintiffs, this oral assignment conveyed to Plaintiffs the speculative claims of the corporate entities allegedly worth more than $450,000,000 (*i.e.*, nearly one half billion dollars and the principal asset of the corporate entities). Yet there is no reference or hint in the declarations to any type of corporate formality being followed in the alleged assignment. Nor do Plaintiffs' declarations explain why the alleged oral assignment was not reduced to writing for another two years after it purportedly occurred.

Indeed, the only explanation offered is Plaintiff Niemi's assertion that "[t]hese three entities have lapsed into a delinquent status." Niemi Declaration at ¶ 2. Plaintiff Niemi's statement is ambiguous as to whether it refers to statuses now or at the time the alleged oral

7

assignment was made, but it is *false* in either case.  All three entities were in good standing in August 2010, and AZCO II LLC is in good standing today.  *See* Exhibit 1, Declaration Of Phillip L. Douglass ("Douglass Declaration"), Attachments A.1-A.3 hereto.  In August 2010, there was no need to " 'reactivate' " the AZCO entities – they were in good standing.  Niemi Declaration at ¶ 2.

Moreover, alleged delinquent status does not explain why the AZCO entities could not or did not proceed in their own names.  Under Colorado law, allowing corporate status to lapse into delinquency does not dissolve a corporation.  *See* C.R.S. § 7-80-801.  There is no evidence that the AZCO entities have been dissolved; in fact, the evidence is to the contrary.  *See* Douglass Declaration, Attachments A.1-A.3.  Further, even if dissolution had occurred, for it to be effective for this proceeding, the AZCO entities were required to file certificates of dissolution.  *See* C.R.S. § 7-80-802.  More importantly, as part of the winding up process, dissolving entities may prosecute lawsuits.  *See* C.R.S. § 7-80-803.3(3).  Therefore, Plaintiff Niemi's false assertion about the AZCO entities' statuses is no explanation for the alleged oral assignment.

Finally, what about other parties interested in the speculative corporate claims Plaintiffs pursue as their own in this lawsuit – creditors, banks, other partners?  Attachment B to the Douglass Declaration shows that Mesatex, the corporation that owns AZCO and AZCO II, has or had five General and/or Managing Partners – John D. Niemi, Loren Gerch, Robert Verratti, Steve McKeever, and Richard Cross – and four Beneficial Owners: McKeever Cross LLC, VGN LLC, SMJ Breckenridge Consulting LLC, Joseph Scoby JTWROS, and Taunton Ventures, LP.  *See* Douglass Declaration, Attachment B.  Plaintiffs Naegele and Parnevik are not identified among either of these groups, and Plaintiff Niemi does not explain what, if anything, happened

to these other General and/or Managing Partners and Beneficial Owners, or what happened to their interests.

In short, Plaintiffs' assertions that in August 2010 they acquired by oral assignment from the AZCO entities the right to the speculative corporate claims brought in this lawsuit do not ring true. Plaintiffs' credibility is further eroded by Plaintiff Niemi's attempt to substantiate the alleged oral assignment by reference to events that occurred in the Burgess criminal proceeding.

**B.      Representations Plaintiff Niemi Claims To Have Made In The Burgess Criminal Proceeding Further Erode Plaintiffs' Account About An Oral Assignment**

According to Plaintiffs, the fact that Plaintiff Niemi sought and received from the district court for the Middle District of Florida a restitution order for approximately $45,000,000 is proof that the oral assignment occurred in August 2010. *See* Motion For Limited Discovery at 2-3; Niemi Declaration at ¶ 6. However, the restitution order is of dubious relevance to the issue of standing in this case: it does not prove that an oral assignment took place, and there is no suggestion that the court there even considered the issue. If anything, it casts further and serious doubt on Plaintiffs' account of an oral assignment and shows that Plaintiff Niemi was untruthful when he represented to the district court for the Middle District of Florida that *he* was entitled to a restitution order for $45,000,000.

As a starting point, the Court should strike Paragraph 6 from the Niemi Declaration. Paragraph 6 does not contain a declaration of fact; it contains a conclusory statement of argument, and for the reasons discussed below, an unpersuasive argument at that. *See* Niemi Declaration at ¶ 6. Therefore, the Court should strike Paragraph 6 altogether. *See Dalvit v.*

*United Air Lines, Inc.,* Civil Action Nos. 07-cv-00725-WDM-CBS and 07-cv-00726-WDM-CBS, 2008 WL 3468703, at *8 (D. Colo. Aug. 11, 2008).

If Plaintiffs are to be believed, in August 2010, the AZCO entities orally assigned to Plaintiffs a *joint interest* in any causes of action belonging to the AZCO entities. The purported oral assignment was not joint and several, and in fact, the written "Assignment Agreement" – entered two years later – expressly states that the AZCO entities assigned "each and every claim and cause of action to the Fairmont Breckenridge Partners, *jointly* . . . ." Manning Declaration, Exhibit 2 (emphasis added).

However, information about the restitution order in the Burgess criminal proceeding that Plaintiffs have submitted in this case shows that Plaintiff Niemi falsely represented to the district court for the Middle District of Florida that he *alone* was Burgess' victim and that he *alone* was entitled to a restitution order. *See* Niemi Declaration at ¶ 2; *see also* Douglass Declaration, Attachment C. Plaintiffs Naegele and Parnevik are not mentioned in anything Plaintiffs have submitted to this Court relating to the Burgess criminal proceeding, and upon information and belief, they are not mentioned in anything Plaintiff Niemi submitted in the Middle District of Florida. Presumably, Plaintiffs have access to the materials Plaintiff Niemi submitted to the probation department and district court for the Middle District of Florida – such as Plaintiff Niemi's victim declaration – that would establish exactly what Plaintiff Niemi represented, but Plaintiffs have failed to come forward with this information.

The record before this Court simply is sufficient to deduce only that the district court for the Middle District of Florida's restitution order in favor of Plaintiff Niemi in nowise serves as proof that an oral assignment was made in August 2010.

10

III.   A Recent Decision By Judge Doty In Minnesota Demonstrates That
      Plaintiffs Falsely Testified And Mislead This Court And The Tenth
      Circuit In Connection With The Preliminary Injunction Order

While preparing for oral argument before the Tenth Circuit last month on the appeal of

the preliminary injunction order, counsel for Mr. Lasshofer and the Innovatis Defendants

uncovered information which demonstrates that Plaintiffs deceived this Court in connection with

their request for the preliminary injunction.   Indeed, Plaintiffs' deception and false testimony

started with the Verified Complaint and continued up to and during the Tenth Circuit

proceedings.

Specifically, counsel for Mr. Lasshofer and the Innovatis Defendants learned of the

opinion of Judge David S. Doty in *Weiner v. Naegele*, Civil No. 11-855(DSD/AJB), 2012 WL

2906299 (D. Minn. July 16, 2012) (attached hereto as Exhibit 2).   *Naegele* (the same individual

who is one of the Plaintiffs in this case) involves the very same project (*i.e.*, the Breckenridge

project) at issue in this case.   In *Naegele*, the plaintiff alleged that Mr. Naegele deceived him

when Mr. Naegele persuaded the plaintiff to invest in the Breckenridge project.   In rejecting Mr.

Naegele's motion for summary judgment, Judge Doty noted:

> *[A]s early as April 2, 2009* [over two months before Plaintiffs claim in this case to
> have been introduced to Burgess and his company Prosperity International, LLC],
> *Minnesota counsel told Weiner and Naegele that the Breckenridge project "is
> in significant trouble" and that "Niemi is scrambling to keep the creditors
> back."*

2012 WL 2906299, at * 2 (emphasis added).   This finding by Judge Doty is significant as it

demonstrates Plaintiffs' pattern of deception in this Court and the Tenth Circuit.   For instance:

➢ In Paragraph 27 of the Verified Complaint (verified by Plaintiff John Niemi) [Doc. No. 1;
   filed 04/04/2012], Plaintiffs alleged that the Breckenridge project during the Spring 2009
   was "[i]n outstanding financial condition."   Plaintiffs made this verified representation to
   this Court notwithstanding the fact that Minnesota counsel said as of April 2009 "that the

11

Breckenridge project 'is in significant trouble' and that 'Niemi is scrambling to keep the creditors back.' " 2012 WL 2906299, at *2.

➢ During the preliminary injunction hearing, Mr. Niemi testified as follows: "Q Now, with respect to that, tell the Court a little bit about phase 1 and how it was sold out and when it was sold out. A . . . [W]e were fortunate enough to design a product that, in spite of the economy, was doing extremely well." (Transcript of May 25, 2012 Hearing at 51 – 52). Far from doing "extremely well" as of Spring 2009, as Mr. Niemi testified under oath, Judge Doty noted that Minnesota counsel said that as of April 2009 the project was " 'in significant trouble' " and that " 'Niemi is scrambling to keep the creditors back.' " 2012 WL 2906299, at *2.

➢ Mr. Naegele, the defendant in the Minnesota action, was present during the preliminary injunction hearing, listened to Mr. Niemi's testimony, and testified himself. Mr. Naegele did not apprise the Court about the comment from Minnesota counsel. Rather, Mr. Naegele participated in perpetuating the false picture painted by Plaintiffs.

➢ Relying on the misrepresentations in the Verified Complaint and Plaintiffs' false testimony during the preliminary injunction hearing, the Court said on page 5 of its June 1, 2012, Order Granting Preliminary Injunction [Doc. No. 50] (which since has been published on Westlaw) that "[d]espite the downturn in the economy and the real estate market during those years, the project was very successful." Rather than being "very successful," the Breckenridge project was " 'in significant trouble' " and " 'Niemi [was] scrambling to keep the creditors back' " as of April 2009. 2012 WL 2906299, at *2.

➢ On page 3 of their Response To Motion Of Erwin Lasshofer, Innovatis GmbH, Innovatis Immobilien GmbH, And Innovatis Asset Management S.A. To Stay Preliminary Injunction [Doc. No. 01018862447; filed 06/15/2012], Plaintiffs told the Tenth Circuit that the Breckenridge "project [was] thriving . . . in the spring of 2009," citing to Paragraphs 26 and 27 of the Verified Complaint. Instead, as Judge Doty noted, the Breckenridge project was " 'in significant trouble' " and " 'Niemi [was] scrambling to keep the creditors back.' " 2012 WL 2906299, at *2.

➢ On page 8 of the Brief Of Appellees John Niemi, Robert Naegele, III, And Jesper Parnevik To Affirm Grant Of Preliminary Injunction [Doc. No. 01018900245; filed 08/20/2012], Plaintiffs told the Tenth Circuit that "the project was on course for successful completion." As evident from the decision in *Naegele*, this simply was not true. This representation by Plaintiffs in that court filing is particularly disturbing, as it was made over one month ***after*** Judge Doty's decision in *Naegele*.

IV.   **PLAINTIFFS SHOULD NOT BE PERMITTED PREMATURELY TO CONDUCT DISCOVERY IN ANTICIPATION OF ANOTHER PRELIMINARY INJUNCTION HEARING WHEN THE RECORD RAISES SERIOUS DOUBT ABOUT THEIR RIGHT TO EQUITY AT ALL**

The above discussion establishes that Plaintiffs have not been candid and truthful in their efforts to obtain a preliminary injunction and other relief in this case. Accordingly, Plaintiffs are not entitled to further equity, and should not be permitted to conduct discovery in aid of their equitable quest:

> The unclean hands doctrine is applied when "some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks." *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245 (1933). "[W]hile equity does not demand that its suitors have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814-15 (1945). The doctrine allows courts to exercise a wide range of discretion as "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation" of the doctrine. *Id.* at 815.

*May v. J.P. Turner & Co.,* No. 08-cv-00641-WDM-BNB, 2008 WL 4533922, at *4 (D. Colo. Oct. 6, 2008). There has been nothing fair, equitable or clean about how Plaintiffs have proceeded to date. They deceived this Court as to the propriety of service pursuant to FED. R. CIV. P. 4(f)(2)(C)(ii). They secured a preliminary injunction based on a Verified Complaint and through testimony that Judge Doty's Order shows to be false and on which this Court clearly relied in issuing the preliminary injunction order. And now they advance an unbelievable and fanciful story about a supposed oral assignment that generates more smoke than light. On this record, Plaintiffs should not be allowed to seek any more equity from this Court, and they certainly should not be permitted to conduct the discovery they are seeking, particularly while the issue of standing is pending before the Tenth Circuit.

## CONCLUSION

For the foregoing reasons, Mr. Lasshofer and the Innovatis Defendants respectfully request that the Court deny Plaintiffs' Motion For Limited Discovery.

Dated: February 19, 2013.

Respectfully submitted,

*s/Kevin D. Evans*

By: _____

Kevin D. Evans
Phillip L. Douglass
STEESE, EVANS & FRANKEL, P.C.
6400 S. Fiddlers Green Circle
Suite 1820
Denver, Colorado 80111
Telephone:    720.200.0676
Facsimile:    720.200.0679
Email: kdevans@s-elaw.com
          pdouglass@s-elaw.com

Attorneys via Special Appearance for Defendants
ERWIN LASSHOFER, INNOVATIS GmbH, INNOVATIS
IMMOBILIEN GmbH, and INNOVATIS ASSET
MANAGEMENT, S.A.

14

CERTIFICATE OF SERVICE

I hereby certify that on this 19 day of February, 2013, I caused the foregoing **RESPONSE OF MR. LASSHOFER AND THE INNOVATIS DEFENDANTS, PURSUANT TO SPECIAL APPEARANCE, TO PLAINTIFFS' MOTION FOR LIMITED DISCOVERY** to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following attorneys of record:

Robert N. Miller
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone:     303.291.2300
Facsimile:     303.291.2400
Email: rmiller@perkinscoie.com
        sdunn@perkinscoie.com

Christopher W. Madel
Bruce D. Manning
Aaron R. Thom
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone:     612.349.8500
Facsimile:     612.339.4181
Email: cwmadel@rkmc.com
        bdmanning@rkmc.com
        leschrero@rkmc.com

s/Theresa Baksay
_____

Theresa Baksay

15