UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No.: 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

        Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH,
INNOVATIS ASSET MANAGEMENT, S.A.,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

        Defendants.

---

**RESPONSE OF MR. LASSHOFER AND THE INNOVATIS DEFENDANTS,
PURSUANT TO SPECIAL APPEARANCE,
TO PLAINTIFFS' MOTION FOR LIMITED DISCOVERY**

**EXHIBIT 2**

Westlaw.

Slip Copy, 2012 WL 2906299 (D.Minn.)
(Cite as: 2012 WL 2906299 (D.Minn.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
Bruce WEINER, Plaintiff,
v.
Robert O. NAEGELE, III, Defendant.

Civil No. 11-855(DSD/AJB).
July 16, 2012.

Melissa M. Weldon, Esq., David M. Wilk, Esq. and Larson King, LLP, St. Paul, MN, for plaintiff.

Norman J. Baer, Esq., Steven C. Kerbaugh, Esq. and Anthony, Ostlund, Baer & Louwagie P.A., Minneapolis, MN, for defendant.

## ORDER

DAVID S. DOTY, District Judge.

*1 This matter is before the court upon the motion for summary judgment by defendant. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion in part.

## BACKGROUND

This business dispute arises out of investments made by plaintiff Bruce Weiner and defendant Robert O. Naegele, III. In 2008, Naegele approached Weiner to invest in luxury real estate being developed by nonparties John Niemi, Loren Gerch and Robert Verratti (the Developers) in Breckenridge, Colorado (the Breckenridge Project). The Breckenridge Project consisted of two high-end housing developments, one located on a private gondola stop and the other near the Blue River.

At some point in 2008, Naegele approached Weiner about the Breckenridge Project. Over the next several months, Weiner and Naegele considered investing in the developments. Weiner met Niemi at the site in December 2008, and discussed the project with Naegele; Niemi; Naegele's attorney, Brian Schoenborn; and Naegele's adviser, Arnold Abens, Jr. Weiner Dep. 56:14–25. Weiner also used a consultant, James Crisanti, to conduct due diligence. *Id.* at 27:7–11. When asked about previous dealings, Naegele told Weiner that he had been "involved with a successful real estate development in Eagle[, Colorado] with John Niemi, [his] longtime friend." Naegele Dep. 89:2–4. Naegele did not tell Weiner that he had ongoing transactions with the Developers.

Naegele initially suggested that Weiner purchase equity in the project. Weiner declined and offered to loan money to Naegele to purchase equity. Weiner Dep. 61:9–15, 19–21. Naegele declined, and discussions continued. Weiner testified that a conversation on February 22, 2009, occurred "after we kind of decided to make the investment." *Id.* at 181:22–182:7. However, on March 11, 2009, Crisanti sent an email to Naegele stating that he and Weiner "can't get comfortable" because "the uncertain state of the mezz[anine] debt gives us pause." Weldon Aff. Ex. 43.[FN1] Ultimately Weiner and Naegele decided to purchase an existing mezzanine loan.[FN2]

> FN1. Counsel for Weiner and Naegele state that they attached true and correct copies of various documents to their respective affidavits. Other than depositions they attended, it appears that counsel have no basis from personal knowledge to make such an affirmation. *See* Fed.R.Civ.P. 56(c)(4). The parties do not challenge the authenticity or admissibility of the exhibits, and the court accepts them for purposes of this motion.

> FN2. Mezzanine refers to the subordinate position of the debt or loan.

To facilitate the investments, Weiner and Naegele used a law firm from Minnesota (Minnesota

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2906299 (D.Minn.)
(Cite as: 2012 WL 2906299 (D.Minn.))

Page 2

counsel) that Naegele said had "been involved from the start here and understand[s] the project, the deal and our security needs." *See* Kerbaugh Aff. Ex. 16, at 120. Naegele's family had used the firm before and kept one of its attorneys, Schoenborn, on a monthly retainer. *Id.* Weiner requested a budget and a not-to-exceed number from Minnesota counsel. Weldon Aff. Ex. 72, at 8159. The parties and Minnesota counsel agreed to a not-to-exceed figure of $50,000. *Id.* at 8158.

On March 23, 2009, Minnesota counsel organized Breckenridge Investors LLC (Breckenridge Investors) as a Minnesota limited liability company. *Id.* Ex. 44. Weiner and Naegele are the only members, and each has a fifty-percent governance right and voting interest. *Id.* Ex. 45, at 618, 622–23, 628. Weiner has a two thirds share and Naegele has a one-third share of the membership interests and financial rights. *Id.* at 628.

*2 A board of governors composed of Weiner and Naegele governs Breckenridge Investors. *Id.* at 622–23. All major decisions must be made by a majority of the voting interest. A single member does not "have authority to act on behalf of the Company or bind the Company with respect to any matter within the scope of" a major decision. *Id.* at 623 (§ 5.3). "Making any expenditure in an aggregate amount of more than $1,000" is a major decision. *Id.*

Naegele is the chief manager, chief executive officer and chief financial officer/treasurer, president and secretary. *Id.* The member-control agreement states: "Neither the Company nor any Member shall have any claim against any Manager based upon or arising out of any act or omission made by such Manager in good faith, provided such Manager was not grossly negligent or guilty of willful misconduct." *Id.* at 624 (§ 6.6).

On March 30, 2009, Breckenridge Investors formed Summit SH Holdings, LLC (Summit Holdings). Summit Holdings is a Delaware limited-liability company whose sole member is Breckenridge Investors. On April 2, 2009, Summit Holdings purchased a $6.2 million mezzanine loan to the Breckenridge Project for $3 million from Merchants Mortgage & Trust Corporation (Merchants). *Id.* Ex. 50. Weiner contributed $2 million and Naegele contributed $1 million. The Merchants loan was subordinate to senior lender JP Morgan and was secured by personal guarantees by Niemi, Verratti, Gerch and Mesatex LLC (Mesatex).[FN3] *Id.* Ex. 47, at 557 (§ 1.1(h)). As further security, Weiner and Niemi agreed that Weiner and Naegele could take over the project if the Developers failed. *Id.* Ex. 48, at 94.

> FN3. Mesatex is the entity that owned AZCO and AZCO II, entities that owned the Breckenridge Project real estate. Mesatex was owned by Veretti, Gerch and Niemi, along with other unidentified investors. Niemi Dep. 7:8–8:19.

Weiner and Naegele also agreed to provide direct capital to Mesatex through Breckenridge Investors. On March 30, 2009, Breckenridge loaned $500,000 to Mesatex, with the loan personally guaranteed by Niemi and his wife. *Id.* Exs. 52, 53. Niemi and his wife agreed to provide personal financial statements at the end of each calendar year. *Id.* Ex. 53, at 673 (§ 5.01(b)(iii)). Mesatex agreed to pay all reasonable legal fees associated with the transaction. *Id.* at 677 (§ 7.02). As with the Summit Holdings investment, Weiner contributed two-thirds of the loan and Naegele contributed one-third of the loan. In June 2009, Mesatex and Breckenridge Investors agreed to increase the loan to $1 million.

The Breckenridge Project failed. Indeed, as early as April 2, 2009, Minnesota counsel told Weiner and Naegele that the Breckenridge project "is in significant trouble" and that "Niemi is scrambling to keep the creditors back." Kerbaugh Aff. Ex. 20, at 5438. Breckenridge Investors and Summit Holdings entered into forbearance agreements in July and December 2009. Weiner encouraged Breckenridge Investors to remove the Developers and take over the project. Naegele refused. Instead,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2906299 (D.Minn.)
(Cite as: 2012 WL 2906299 (D.Minn.))

Page 3

he worked with the Developers to pursue additional capital (the Prosperity Option). Weiner did not support the Prosperity Option. Weiner Dep. 101:20–25. The Prosperity Option also failed.

*3 In September 2010, Breckenridge Investors and Summit Holdings issued notices of default. Weiner wanted to enforce the guarantees, but Naegele refused, saying that the guarantors had no money and that if Breckenridge Investors and Summit Holdings enforced the guarantees, the guarantors would declare bankruptcy and file counterclaims against Weiner and Naegele. Breckenridge Investors and Summit Holdings then hired independent counsel in Colorado (Colorado counsel). Colorado counsel advised Breckenridge Investors and Summit Holdings to file a complaint against the guarantors. Weldon Aff. Ex. 65, at 198. Colorado counsel also advised that Weiner and Naegele would prevail against potential counterclaims by the guarantors. *Id.* Ex. 71, at 201. Naegele did not agree to enforce the guarantees and did not file suit.

Meanwhile, in October 2009, when the legal fees reached $147,678, Schoenborn demanded that Weiner and Naegele pay the full amount and seek reimbursement from the Developers. *Id.* Ex. 73, at 244. On October 29, 2009, Weiner agreed to pay $55,000 and Naegele paid $65,000 to Minnesota counsel, with the remainder, including future services, to be paid by the Developers. *Id.* Ex. 77, at 291. Naegele then confirmed that he would "not pursue Bruce [Weiner] and Longboat [FN4] in the event that [Schoenborn] pursues me for outstanding legal fees owed related to the Breckenridge transactions ." *Id.* Ex. 78, at 299.

> FN4. Longboat is an investment company controlled by Weiner. Weiner Dep. 10:24–11:2.

After filing the present action, Weiner learned that Naegele misrepresented—and failed to disclose—the extent of his financial connections to the Developers. Naegele in fact had several ongoing projects. One, named Aidan's Meadow,[FN5] was funded by Niemi, Gerch and an entity called Vail Valley Ventures, which included as members Naegele, Abens and Schoenborn. Naegele Dep. 90:3–6. Naegele contributed $100,000 in capital and gave a $500,000 guarantee, which remained active at the time of the events that led to the present action. *See id.* at 91:20–92:10; Weldon Aff. Ex. 58, at 13 (as of 2009, "very little debt" remained outstanding). Niemi, Abens and Schoenborn also executed personal guarantees related to the Aidan's Meadow project. *See* Weldon Aff. Ex. 59, at 11,260.

> FN5. The Aidan's Meadow project appears also to be called Aidan's Ranch.

The Aidan's Meadow guarantors had a duty to notify their lender of "any material adverse change in the business, property, assets, operations or condition, financial or otherwise ... of any Guarantor" and a declaration of bankruptcy or insolvency by any guarantor operated as an event of default on the loan. *Id.* Ex. 59, at 11,275, 11,281. Naegele and Schoenborn each had a 12.5% interest in Aidan's Meadow, and it appears each made $83,750 in profits from their investments. *Id.* Ex. 68, at 9934. Abens and Schoenborn both advised Naegele throughout the Breckenridge Project.

Naegele was also working with Niemi, Gerch and Verratti on a project in Silt, Colorado through an entity called 8 Angels. Naegele made a personal investment of approximately $75,000, and gave a personal guarantee of $320,000 for a loan to 8 Angels. *Id.* Ex. 60, at 9427. Naegele's guarantee remained active at the time of the events that led to the present action. Niemi invested $225,000 with an unlimited personal guarantee; Gerch also gave an unlimited personal guarantee. The insolvency or bankruptcy of any party to the 8 Angels loan acted as an event of default. *Id.* Ex. 61, at 10,318. Naegele did not disclose the Aidan's Meadow or 8 Angels guarantees or transactions to Weiner because he thought it was not "any of his business." Naegele Dep. 112:5–25.

*4 On April 7, 2011, Weiner filed the present

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2906299 (D.Minn.)
(Cite as: 2012 WL 2906299 (D.Minn.))

action, claiming breach of contract and breach of fiduciary duty. Weiner also seeks a declaration of his rights under the Breckenridge Investors member-control agreement. Naegele filed a counterclaim of breach of contract and a request for equitable relief under Minnesota Statutes § 322B.833. Naegele further seeks a declaration that Weiner is liable for his share of Breckenridge Investors's outstanding legal bills. Naegele moves for summary judgment on all claims and counterclaims.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252.

The court views all evidence and inferences in a light most favorable to the nonmoving party. *See id.* at 255. The nonmoving party must set forth specific facts sufficient to raise a genuine issue for trial; that is, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *see Anderson,* 477 U.S. at 249–50; *Celotex v. Catrett,* 477 U.S. 317, 324 (1986). Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23.

### I. Weiner's Claims

#### A. Summit Holdings

Although Weiner's opposition brief suggests claims arising out of Summit Holdings, the complaint contains no such claims. *See* Compl. ¶¶ 34–53. A plaintiff may not amend a complaint through briefs. *See Morgan Distrib. Co., Inc. v. Unidynamic Corp.,* 868 F.2d 992, 995–96 (8th Cir.1989). Therefore, to the extent that Weiner now attempts to bring claims as to Summit Holdings, they are not properly before the court.

Even if Weiner had pleaded claims related to Summit Holdings, a cause of action belonging to a limited-liability company may only be brought by the company or as a derivative action [FN6] by a member. *See Popp Telecom, Inc. v. Am. Sharecom, Inc.,* 361 F.3d 482, 492 (8th Cir.2004). In the present action, Naegele's acts allegedly injured Summit Holdings and indirectly injured Breckenridge Investors. Weiner is not a member of Summit Holdings; Breckenridge Investors is its only member. Breckenridge Investors did not bring a derivative action. Therefore, Weiner lacks standing to assert claims on behalf of Summit Holdings, and for this additional reason, these claims are not properly before the court.

> FN6. The claim is derivative where the injury is to the limitedliability company and indirectly to a member. *Wessin v. Archives Corp.,* 592 N.W.2d 460, 464 (Minn.1999) (addressing direct and derivative claims in corporation context). The result is the same under Delaware law. To bring a direct action, the "claimed direct injury must be independent of any alleged injury to the corporation." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1039 (Del.Super.Ct.2004). That is, the individual "must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* The present action is derivative. The injuries claimed by Weiner are also injuries to Summit Holdings.

#### B. Breckenridge Investors

##### 1. Breach of Fiduciary Duty

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Slip Copy, 2012 WL 2906299 (D.Minn.)
(Cite as: 2012 WL 2906299 (D.Minn.))

*5 To prevail on a claim for breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary duty, breach of that duty, damages and proximate causation. *See State Farm Fire & Cas. v. Aquila Inc.,* 718 N.W.2d 879, 887 (Minn.2006) (elements of negligence claim); *Padco, Inc. v. Kinney & Lange,* 444 N.W.2d 889, 891 (Minn.Ct.App.1989) (negligence and breach of fiduciary duty claims use same elements). Members of a closely held company are analogous to partners. *See Pedro v. Pedro,* 489 N.W.2d 798, 801 (Minn.Ct.App.1992) (citing *Westland Capital Corp. v. Lucht Eng'g Inc.,* 308 N.W.2d 709, 712 (Minn.1981) (describing closely held corporation as "partnership in corporate guise")).[FN7] As a result, the managers and members of a closely held company "have a fiduciary relationship that imposes the highest standard of integrity and good faith." *Wenzel v. Mathies,* 542 N.W.2d 634, 641 (Minn.Ct.App.1996) (analyzing closely held corporation); *see* Minn.Stat. § 322B.833, subdiv. 4 ("[T]he court shall take into consideration the duty that all members in a closely held limited liability company owe one another to act in an honest, fair, and reasonable manner in the operation of the limited liability company ....").

> FN7. Chapter 322B of Minnesota Statutes codifies limited-liability companies. The Reporter's Notes to Chapter 322B state that "the case law and Reporter's Notes of chapter 302A [Minnesota Business Corporation Act] should be used to interpret and apply" Chapter 322B.

Whether a member has breached a fiduciary duty to another member is generally a question of fact. *See Berreman v. W. Publ'g Co.,* 615, N.W.2d 362, 367 (Minn.Ct.App.2000). In the present action, Weiner claims that Naegele breached the duty of full disclosure by failing to disclose conflicting financial ties with the Developers and breached the duty of loyalty by failing to enforce the Breckenridge Investors loan guarantees.

a. Duty to Disclose

In Minnesota "[t]he general rule is that one party to a transaction has no duty to disclose material facts to the other" unless a fiduciary relationship exists between the parties. *Children's Broad. Corp. v. Walt Disney Co.,* 245 F.3d 1008, 1021 (8th Cir.2001) (quoting *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 380 (Minn.1989)). Parties dealing at arm's length do not have a fiduciary relationship. *Shema v. Thorpe Bros.,* 62 N.W.2d 86, 91 (1954). In contrast, members of a closely held limited-liability company have a duty to disclose material information about the company. *See Berreman,* 615 N.W.2d at 371 ("[T]he fiduciary duties of shareholders in a close corporation include the duty to disclose material information about the corporation.").

Naegele first argues that he had no duty to disclose his ongoing dealings with the Developers, because Weiner decided to invest before Breckenridge Investors formed. In support, Naegele cites Weiner's testimony that a conversation on February 22, 2009, occurred "after we kind of decided to make the investment." Weiner Dep. 181:22–182:7. Weiner responds that he decided to invest after Breckenridge Investors formed. In support, Weiner cites the March 11, 2009, email from Crisanti to Naegele in which Crisanti states that "the uncertain state of the mezz[anine] debt gives us pause." Weldon Aff. Ex. 43.

*6 A jury could conclude that the March 11, 2009, email represents a decision not to invest or merely shows ongoing discussion about the investment. As a result, a dispute remains over the timing of Weiner's decision.[FN8] A reasonable jury could find in favor of either party as to the timing of the decision,[FN9] and therefore, Naegele's argument fails.

> FN8. Weiner does not argue that a partnership formed—and fiduciary duties attached—before he and Naegele organized Breckenridge Investors. *Cf.* Minn.Stat. § 323A.0202 ("[T]he association of two or more persons to carry on as co-owners a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2906299 (D.Minn.)
(Cite as: 2012 WL 2906299 (D.Minn.))

Page 6

business for profit forms a partnership, whether or not the persons intend to form a partnership.").

FN9. The court notes that once Breckenridge Investors formed, Naegele owed fiduciary duties to Weiner, and Breckenridge Investors did not invest in the Breckenridge Project for several days after it was formed. *See* Weldon Aff. Ex. 52 (guarantee from John and Suzanne Niemi to Breckenridge Investors dated March 31, 2009). During that period, the duties of disclosure, loyalty and good faith attached.

Naegele next argues that even if a fiduciary relationship existed, he did not breach the duty of disclosure because none of the information he withheld was material. Specifically, Naegele argues that his investments in Aidan's Meadow and 8 Angels had no connection to the Breckenridge Project, because the entities set up to borrow and develop those projects were different from the entities involved in the Breckenridge Project. *See* Naegele Aff. ¶¶ 4–8, ECF No 26.

Facts are material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Berreman,* 615 N.W.2d at 371 (adopting probability-magnitude test from *Basic, Inc. v. Levinson,* 485 U.S. 224, 231 (1988)). The record contains evidence that the guarantors of the other projects were intimately involved in the Breckenridge Project as developer, guarantor, investor, attorney and adviser. Guarantees in the other projects contained provisions that could have led to loan defaults if Breckenridge Investors had enforced the Niemi guarantees. A declaration of bankruptcy by Niemi would allow the lender to call the loan and trigger the guarantees of Naegele, Abens and Schoenborn. This information is relevant to the value of the Niemi guarantees. Moreover, the record supports a finding that the nature and extent of Naegele's dealings with Niemi were important to Weiner in making his decision to invest. *See* Abens Aff. 39:3–5 ("[I]t was a big deal to Bruce [Weiner] to know who John Niemi was and what we've done in the past with him, how its [sic] turned out."). The record further supports a finding that Weiner required the Niemi guarantees. *See* Naegele Dep. 138:1–3. As a result, a reasonable jury could find for either party, and therefore the argument fails.

Naegele next argues that even if he breached the duty of disclosure as to material information, the Breckenridge Investors member-control agreement absolves him of liability unless he failed to act in good faith or was grossly negligent or guilty of willful misconduct.[FN10] *See* Weldon Aff. Ex. 45, § 6.6. Good faith in this context means dealing "openly, honestly and fairly" with other members. *See Pedro,* 489 N.W.2d at 801. Silence as to material facts may constitute fraud. *Appletree Square 1 Ltd. P'ship v. Investmark, Inc.,* 494 N.W.2d 889, 892 (Minn.Ct.App.1993).

FN10. The parties do not address whether this provision of the member-control agreement defines the elements of claim or the requisites of a defense. The court need not resolve the question, however, because the outcome is the same based on the present record: neither party is entitled to summary judgment regardless of the burden, because each has introduced sufficient evidence to create a genuine dispute.

The present record contains facts from which a reasonable jury could conclude that Naegele did not act honestly and openly when he failed to disclose his relationships and financial ties to the Developers. As a result, the record supports a finding that Naegele failed to act in good faith, and this argument fails.

*7 Naegele also argues that Weiner cannot show causation for the loss. In support, Naegele points to Weiner's testimony that Naegele's personal guarantees of other projects "didn't result in the failure of the Breckenridge Project." Weiner Dep.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:12-cv-00869-RBJ Document 162-2 Filed 02/19/13 USDC Colorado Page 8 of 10

Page 7

Slip Copy, 2012 WL 2906299 (D.Minn.)
(Cite as: 2012 WL 2906299 (D.Minn.))

217:12–17. But the question of causation is not whether Naegele's deception caused the Breckenridge Project to fail, it is whether it caused Weiner to invest. A reasonable jury could find that Naegele's breach caused Weiner to invest—or to structure his investment—to a degree or in a manner that he would not have with proper disclosure. Therefore, Naegele is not entitled to summary judgment as to the decision to invest.

**b. Duty of Loyalty**

Naegele argues that the member-control agreement also absolves him of liability for his decision not to enforce the Niemi guarantees. Specifically, Naegele argues that he decided in good faith not to enforce the guarantees, because the Developers were without assets and legal action could cause the Developers to assert counterclaims against Weiner, Naegele, Breckenridge Investors and Summit Holdings. See Naegele Dep. 145:13–14 ("I know that their balance sheets are pretty—pretty pathetic."). Weiner responds that the decision not to act was motivated by self interest created by Naegele's other financial relationships with the Developers. Weiner also argues that the Developers had substantial assets in the Aidan's Meadow and 8 Angels entities, and that Naegele knew about those assets because he too had financial interests in those projects. See Weldon Aff. Exs. 66, 69; Niemi Dep. 44:16–25; Abens Dep. 52:8–10. As a result, a genuine dispute remains as to the Developers's assets.

Moreover, the record contains evidence that Colorado counsel, who had no conflicting financial interest in the other projects, advised Breckenridge Investors to enforce the guarantees, and found the fear of counterclaims to be unfounded. Given the evidence in the record, a genuine dispute remains about whether Naegele acted openly and honestly in good faith. A reasonable jury could find for either party.

Summary judgment is warranted, however, even if Naegele failed to act in good faith. To prove a breach of fiduciary duty that does not involve a transaction with the company, a member "must allege facts which show that the action attacked is so far opposed to the true interests of the corporation as to lead to the clear inference that no officer thus acting could have been influenced by an honest desire to secure such interests." *Westgor v. Grimm*, 318 N.W.2d 56, 59 (Minn.1982). The question of whether to pursue legal action on behalf of a company "is, like other business questions, ordinarily a matter of internal management and is left to the discretion of the directors." *Id.* at 59 (citation omitted). Weiner has not introduced evidence from which a reasonable jury could find that no officer acting honestly would have acted as Naegele did. Therefore, summary judgment is warranted as to breach of the duty of loyalty claim based on failure to enforce the Niemi guarantees.

**2. Breach of Contract**

*8 The court construes a member-control agreement to determine and enforce the intent of the parties. *Cf. Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn.2009); *Senour Mfg. Co. v. Church Paint & Mfg. Co.*, 84 N.W. 109, 110 (Minn.1900) (applying rules of contract construction to articles of incorporation). When parties express their intent in plain, unambiguous terms, the language governs and "there is no opportunity for interpretation or construction." *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 215 N.W.2d 473, 476 (Minn.1974). Weiner claims that Naegele breached section 5.3 of the member-control agreement by incurring legal fees in excess of $250,000. Naegele argues that the parties intended to authorize him to obtain all legal services.

Section 5.3(b) of the member-control agreement requires the approval of both Weiner and Naegele for expenditures over $1,000, and expressly strips the authority of a single member to make "any expenditure in the aggregate amount of more than $1,000." *See* Kerbaugh Aff. Ex. 34, at 4563. This language is plain, unambiguous and expansive. The court need not look beyond the language to discern the intent of the parties, and Naegele's argument fails.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2906299 (D.Minn.)
(Cite as: 2012 WL 2906299 (D.Minn.))

Page 8

Moreover, Naegele's argument fails even if the court were to consider other evidence of intent. Minnesota counsel agreed to place a "not-to-exceed" amount of $50,000 on the Breckenridge Project. Naegele Dep. 18:20–19:5; *see* Weldon Aff. Ex. 72, at 8158; *Id.* Ex. 74, at 81; *Id.* Ex. 79, at 120. As a result, the record supports a finding that Naegele was authorized to spend up to $50,000 for legal fees, and amounts above that were subject to approval under the member-control agreement. In the end, the legal fees approached $250,000. Therefore, Weiner has introduced evidence from which a reasonable jury could find that Naegele breached the member-control agreement, and summary judgment is not warranted.

### 3. Declaratory Judgment

Weiner also seeks a declaration of his rights under the member-control agreement regarding payment of the legal fees. Naegele argues that Weiner is liable for his pro rata share of legal fees in excess of amounts already paid. The court disagrees. Naegele agreed that "it was always understood that the project and the [D]evelopers would ultimately be responsible for any fees related to the project work." *See* Naegele Dep. 126:8–14. However, Naegele did not ask the Developers to pay the bills. *Id.* 126:17–127:17.

Further, negotiations between Weiner and Naegele terminated Weiner's liability for legal fees related to the Breckenridge Investors transactions. In October 2009, when the legal fees reached $147,678, Minnesota counsel demanded that Weiner and Naegele pay the full amount and then seek reimbursement from the Developers. Weldon Aff. Ex. 73, at 244. On October 29, 2009, Weiner agreed to pay $55,000 and Naegele paid $65,000 to Minnesota counsel, with the remainder, including future services, to be paid by the Developers. *Id.* Ex. 77, at 291. Naegele then confirmed that he would "not pursue Bruce [Weiner] and Longboat in the event that [Minnesota counsel] pursues me for outstanding legal fees owed related to the Breckenridge transactions." *Id.* Ex. 78, at 299; Naegele Dep. 129:17–22 ("I wouldn't come after him for any past work."). As a result, Naegele's argument fails.

*9 Naegele also argues that Weiner waived objection to continued billing by Minnesota counsel because Crisanti continued to contact Schoenborn. Weiner responds that Crisanti was acting only as a consultant. Weiner testified that Crisanti acted as "our agent" but clarified that Crisanti did not have decision-making authority. Weiner Dep. 237:11–238:1. However, even assuming that Crisanti was Weiner's agent, the parties agreed that the Developers, not Weiner and Naegele, would be responsible for legal fees incurred after October 2009. Moreover, at the time Crisanti contacted Minnesota counsel, he was unaware of the potential conflict of interest caused by the attorney's financial ties to other projects. As a result, even if Crisanti were Weiner's actual or apparent agent, Weiner is not responsible for additional fees incurred. Therefore, summary judgment is not warranted in Naegele's favor.

### II. Naegele's Counterclaims

### A. Breach of Contract

Naegele first claims that Weiner breached section 6.6 of the member-control agreement by bringing the instant action. Section 6.6 absolves Naegele from claims for acts taken in good faith. The court has already determined that a reasonable jury could find that Naegele did not act in good faith by failing to disclose the extent of his financial ties to the Developers and failing to enforce the Niemi guarantees. As a result, Weiner has not breached section 6.6, and this argument fails.

Naegele next argues that Weiner has breached the membercontrol agreement by attempting to force Naegele to vote in a particular manner. Specifically, Naegele appears to argue that by instituting the present action, Weiner is pressuring him to violate subdivision 2 of section 322B.356 and section 322B.663 of Minnesota Statutes. This argument is frivolous, and does not merit discussion.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2906299 (D.Minn.)
(Cite as: 2012 WL 2906299 (D.Minn.))

Page 9

The statutes do not support a cause of action against Weiner under these facts. Therefore, summary judgment in favor of Naegele is not warranted.

### B. Judicial Intervention and Equitable Remedies

A court may grant equitable relief when "the governors or those in control of the limited-liability company have acted fraudulently, illegally, or in a manner unfairly prejudicial toward one or more members in their capacities as members or governors of any limited liability company." Minn.Stat. § 322B.833, subdiv. 1(2)(ii). Naegele argues that Weiner's failure to pay legal fees after October 2009 is "dishonest, unfair and unreasonable" to Naegele. Def.'s Mem. Supp. 27. The court disagrees. It has already determined that Weiner fulfilled his obligations regarding legal fees via the October 2009 agreement. Therefore, summary judgment in favor of Naegele is not warranted.

### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motion for summary judgment [ECF 29] is granted in part, consistent with this order; and

2. The parties shall contact the magistrate judge within 21 days from the date of this order to schedule a settlement conference.

D.Minn.,2012.
Weiner v. Naegele
Slip Copy, 2012 WL 2906299 (D.Minn.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.