UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No.: 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

    Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH,
INNOVATIS ASSET MANAGEMENT, S.A.,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

    Defendants.

---

**MOTION BY MR. LASSHOFER AND THE INNOVATIS DEFENDANTS PURSUANT TO FED. R. CIV. P. 12(h)(3) REGARDING LACK OF STANDING AND SUBJECT MATTER JURISDICTION, AND REQUEST TO DISMISS CASE**

**EXHIBIT 4**

---

Case No. 12-1233

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH,
INNOVATIS ASSET MANAGEMENT, S.A.,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT

On Appeal from the United States District Court
for the District of Colorado

The Honorable R. Brooke Jackson, District Judge

REPLY BRIEF OF APPELLANTS ERWIN LASSHOFER, INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH, AND INNOVATIS ASSET MANAGEMENT,
S.A. TO REVERSE GRANT OF PRELIMINARY INJUNCTION

Respectfully submitted,
By: Kevin D. Evans
Phillip L. Douglass
STEESE, EVANS & FRANKEL, P.C.
6400 S. Fiddlers Green Circle
Suite 1820
Denver, Colorado 80111
Telephone: 720.200.0676
Facsimile: 720.200.0679

Oral Argument Requested

### III. PLAINTIFFS' ARGUMENTS DEMONSTRATE THAT THEY LACKED STANDING AND THUS THE INJUNCTION WAS ENTERED IN ERROR

Plaintiffs sought and the district court entered the preliminary injunction pursuant to the Colorado Organized Crime Control Act ("COCCA"). The Innovatis Defendants explained on pages 28 – 33 of their Opening Brief that Plaintiffs did not have standing to pursue COCCA claims predicated as they are on the alleged failure to lend to the Azco entities (for which Plaintiffs seek over $450 million in damages), and thus could not pursue injunctive relief under that statute. Plaintiffs' arguments on pages 32 – 34 of the Brief Of Appellees are so particularly

---

(1999) ("*Grupo Mexicano*"), a party may recover damages for an injunction improvidently granted regardless of the outcome on the merits.

While Plaintiffs provide the Tenth Circuit in their Supplemental Appendix with virtually every other document filed in this case since the date of the Opening Brief, two documents that Plaintiffs conspicuously omit are Plaintiffs' Motion To Withdraw As Attorney and the district court's Order with respect to that Motion. (*See* Exhibit 1 hereto). We understand that Ms. Schrero, who was the attorney that moved to withdraw from further representation of Plaintiffs, was the principal author of the *ex parte* motion to permit service in Austria by Federal Express, in which Plaintiffs misrepresented Austrian law to the district court. (Opening Brief at 4 – 5 n.6). Plaintiffs did not confer with counsel for the Innovatis Defendants before filing that Motion To Withdraw Ms. Schrero's general appearance, and that one paragraph Motion provided *no* explanation for why Ms. Schrero sought leave to withdraw. While perhaps a small point, the decision by the district court on that Motion is another interesting indication of what has transpired below. In addition to the fact that the district court ignored Plaintiffs' failure to comply with Local Rule 7.1A, the district court granted that one paragraph Motion even before the Innovatis Defendants could respond, and even though the district court denied the detailed Motion of the undersigned counsel to withdraw their special appearance.

8

unpersuasive that we address them up front, for a determination of lack of standing is dispositive of this appeal such that the Court need not reach the other reasons why reversal is in order. Plaintiffs' effort to pull the wool over this Court's eyes with an after-the-fact assignment only serves to highlight the error committed by the district court in granting the injunctive relief.

This lawsuit is predicated on an alleged failure to loan the Azco entities over $220 million, for which Plaintiffs seek over $150 million dollars trebled (*i.e.*, over $450 million) and for which they sought and obtained a world-wide injunction. Plaintiffs do not limit this case to the $2.18 million they claim they sent Burgess and Prosperity. Moreover, as noted in the Opening Brief and which Plaintiffs do not deny, the $2.18 million loan commitment fee and upfront collateral deposit was owed by the Azco entities under their Loan Agreement with Prosperity (to which Plaintiffs admit they were not parties); the fact that Plaintiffs chose to provide those funds for Azco (if in fact this is true) does not alter the fact that the party allegedly directly injured due to the purported failure to fund was Azco. Indeed, it is ridiculous to suggest that Plaintiffs can seek $150 million trebled and are entitled to a world-wide injunction of an unlimited amount based on their supposedly having sent $2.18 million to Burgess and Prosperity. If Plaintiffs have been injured at all, those injuries are indirect at best. The host of cases cited by the Innovatis Defendants on page 31 of the Opening Brief (not one of which do

9

Plaintiffs attempt to address) demonstrate beyond peradventure that Plaintiffs do not have standing under COCCA.

Plaintiffs next state that Mesatex and the Azco entities "are no longer in business." To begin with, while Mesatex and Azco LLC are delinquent according to the Colorado Secretary of State web site, they are not dissolved; moreover, the Colorado Secretary of State web site states that Azco II LLC is in good standing. (*See* Exhibit 2 hereto). Thus, those entities are in a position to bring the claims that Plaintiffs attempt to assert in this case, and indeed absent a prefiling assignment the Azco entities are the only entities that can bring such claims.

That brings us to Plaintiffs' after-the-fact supposed assignment. There is no mention in the Complaint of any assignment, and there was no mention during the preliminary injunction hearing of an assignment of claims by Mesatex or the Azco entities to Plaintiffs. Plaintiffs now say that "the AZCO LLCs and Mesatex expressly assigned all claims to Plaintiffs before April 16, 2012, the date Plaintiffs filed suit in the present case" (Brief Of Appellees at 34), although there is *no* evidence of this incredible assertion and none was presented during the hearing. In an attempt to support their contrived position, Plaintiffs cite to a purported July 2, 2012, Assignment Agreement signed by Plaintiff Niemi on behalf of the Mesatex and Azco entities and presented for the first time in the Supplemental Appendix (Supp. App. 446). By Plaintiffs' own concession, this is the first

10

purported written assignment of any claims, and it came nearly three months after this case was filed, over five weeks after the preliminary injunction hearing, and over one month after the entry of the preliminary injunction. The law in this and other Circuits is that standing must be determined as of the time of the filing of the action. *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1225 (10th Cir. 2011); *Utah Ass'n of Counties v. Bush*, 455 F.3d 1094, 1099 (10th Cir. 2006); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309-10 (Fed. Cir. 2003) (retroactive agreement insufficient to confer standing). Plaintiffs did not have standing under COCCA at the time this case was filed, or at the time the preliminary injunction was entered.

In an unsuccessful attempt to fix this problem, the after-the-fact assignment says in Paragraph 2 that "[t]his Assignment Agreement serves to memorialize the assignment that already exists by oral agreement among the Parties." The document, however, does not state that the purported assignment occurred prior to the filing of the Complaint (thus the document does not support what Plaintiffs in their brief tell this Court), and again there was no testimony presented by any Plaintiff during the preliminary injunction hearing (where all three testified) of any oral assignment of claims.[7]

---

[7] Since Mr. Niemi is the managing member who admittedly acts on behalf of the Mesatex and Azco entities, was he talking to or musing with himself when the oral assignment supposedly took place?

11

Plaintiffs also claim that they are on the hook personally for guaranties of the obligations of the Mesatex and Azco entities, and that this provides them standing to assert COCCA claims. Plaintiffs are wrong. Plaintiffs do not cite to a single case supporting their proposition.[8] If they have been injured at all, their injury is indirect and derivative to that of the companies, and the cases are many which hold that a person whose alleged injuries result "merely from the misfortunes visited upon a third person by the defendant's acts" lacks standing to pursue a claim under RICO. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267 (1992); *see also* the other cases cited on page 31 of the Opening Brief. Indeed, the court in *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640-41 (9th Cir. 1988), specifically rejected a RICO claim by a bond guarantor, holding that the alleged harm was "derivative of the harm to the corporation." *See also Nicholson v. Ash*, 800 P.2d 1352, 1356 (Colo. App. 1990) (rejecting standing by guarantor of corporate debt).

---

[8] Plaintiffs cite to two cases in this section of the Brief Of Appellees – both in footnotes on page 33. *Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*, 735 F. Supp. 2d 503 (N.D. Tex. 2010), is neither a RICO nor a "little RICO" case, and in fact has nothing to do with the issues on this appeal. *The Arc of the Pikes Peak Region v. Nat'l Mentor Holdings, Inc.*, Civil Case No. 10-cv-01144-REB-BNB, 2011 WL 1047081 (D. Colo. Mar. 18, 2011), involved standing of severely disabled wards of the State to assert RICO claims against a company for assault, forgery and theft; it had nothing to do with whether a guarantor's injuries are indirect or derivative to those of a company.

Because the evidence in this case is that Plaintiffs did not have standing at the time the Complaint was filed or the preliminary injunction was entered, the Tenth Circuit should reverse the decision of the district court.

## IV. THE DISTRICT COURT ALSO ERRED AS A MATTER OF LAW FOR OTHER REASONS IN GRANTING INJUNCTIVE RELIEF

### A. The District Court Applied The Incorrect Standard

Plaintiffs either miss or ignore the meat of this argument. The issue is whether the factors to be considered under Rule 65 or Colorado state law factors should apply when a federal court is asked to grant injunctive relief. The answer is that federal courts should apply federal procedure even if, as the court recently held in *Big O Tires, LLC v. Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 1118 (D. Colo. 2010), "application of federal standards were to lead to a different result than Colorado law."

Plaintiffs attempt to dismiss *Big O Tires, LLC* by stating that it involved an injunction sought under FED. R. CIV. P. 65 as opposed to state law, and that it is "neither controlling nor persuasive." (Brief Of Appellees at 23). In addition to the fact that *Big O Tires, LLC* was a case decided by a court in this District, the court in *Big O Tires, LLC* specifically recognized that the federal standard applies even in cases where injunctive relief is based on a state law cause of action. *Id.* ("[S]ee *Viad Corp. v. Cordial*, 299 F.Supp.2d 466 (W.D. Pa. 2003) ('Although Viad's request for injunctive relief is based on a state law cause of action, . . . federal law

13