**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson**

Civil Action No. 12-cv-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

        Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

        Defendants,

CREDIT SUISSE A.G.,

        Nominal Defendant.

---

**PLAINTIFFS' RESPONSE TO THE LASSHOFER DEFENDANTS' SUBMISSION IN CONNECTION WITH SHOW CAUSE HEARING AND IN OPPOSITION TO FINDING OF CONTEMPT**

---

The Lasshofer Defendants' motion to vacate the March 26 hearing is another attempt to delay resolution of the present litigation. Plaintiffs respectfully request that this Court deny their request.

**ARGUMENT**

I.  **This Court has subject-matter jurisdiction.**

Plaintiffs respectfully refer the Court to their response to the Lasshofer Defendants' FED. R. CIV. P. 12(h)(3) motion to dismiss for lack of subject-matter jurisdiction (Dkt. 178), filed on March 22, 2013 ("FED. R. CIV. P. 12(h)(3) Response"). There, Plaintiffs explain that the Lasshofer Defendants' challenge to Plaintiffs' prudential standing, even if the challenge had merit, would not implicate subject-matter jurisdiction. (*See id.* at 16-19.) Federal subject-matter jurisdiction does not depend upon prudential standing, which is "not a jurisdictional limitation," *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 n.1 (10th Cir. 2011), "discretionary," *In re Grand Jury Proceedings*, 616 F.3d 1186, 1192 (10th Cir. 2010), and an objection that is waivable, *Wilderness Soc'y*, 632 F.3d at 1168 n.1, unlike Article III standing (which the Lasshofer Defendants do not challenge). *See Finstuen v. Crutcher*, 496 F.3d 1139, 1147 (10th Cir. 2007) (holding that "[p]rudential standing is not jurisdictional in the same sense as Article III standing").

II.  **The Lasshofer Defendants cannot refuse to comply with this Court's Orders because the Lasshofer Defendants chose not to raise their alleged jurisdictional issue in a timely manner before this Court.**

In their FED. R. CIV. P. 12(h)(3) Response, Plaintiffs noted how the Lasshofer Defendants filed a Rule 12(b) motion previously, but chose not to raise their prudential-standing arguments at that time. (Dkt. 178 at 19, 27 n.7.) Accordingly, the Lasshofer Defendants' second Rule 12 motion should be denied pursuant to FED. R. CIV. P. 12(g). *See also Williamson v. Recovery Ltd. P'ship*, No. C2-06-292, 2009 WL 3172648, at *3

(S.D. Ohio Sept. 30, 2009) (denying Rule 12(b)(6) motion to dismiss because defendants failed to assert grounds for motion in initial Rule 12(b) motion to dismiss).

### III. Plaintiffs have prudential standing.

In their FED. R. CIV. P. 12(h)(3) Response, Plaintiffs provided three independent reasons why Plaintiffs have prudential standing. (Dkt. 178 at 27-31.)

### IV. Even assuming, *arguendo*, that the Lasshofer Defendants had raised an objection to subject-matter jurisdiction, this Court could enter an enforceable criminal-contempt order for the Lasshofer Defendants' contemptuous noncompliance with the June 1, 2012 Preliminary Injunction Order.

It is well-established that a criminal-contempt order is enforceable even if the issuing court is later determined to have lacked jurisdiction. As Judge Posner stated in *Mann v. Calumet City, Illinois*, 588 F.3d 949, 954 (7th Cir. 2009), "If a court has colorable jurisdiction of a case, though later it is determined that actually it didn't have jurisdiction, an order of criminal contempt issued by the court before the absence of jurisdiction is determined is valid." An order of criminal contempt against the Lasshofer Defendants for their willful noncompliance with this Court's Orders, including both the April 17, 2012 TRO (Dkt. 16) and the June 1, 2012 Preliminary Injunction Order (Dkt. 50), is appropriate.

### V. The Lasshofer Defendants' accusation that Plaintiffs took inconsistent positions in this Court and the Tenth Circuit is incorrect.

The Lasshofer Defendants are incorrect in their accusation that Plaintiffs have "not apprised the Court" about their argument that the Lasshofer Defendants' contemptuous noncompliance has mooted the June 1 preliminary injunction. (*See* Submission at 5.) Before they moved to dismiss the Lasshofer Defendants' appeal as moot, Plaintiffs

explained to this Court what they were doing. Specifically, in Plaintiffs' Motion to Compel the Lasshofer Defendants to Respond to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents (Dkt. 152), filed in this Court on December 20, 2012 (and granted on March 8, 2013 (Dkt. 169)), Plaintiffs stated:

> Plaintiffs will soon be filing a motion with the 10th Circuit, requesting that it dismiss the Lasshofer Defendants' appeal of the June 1, 2012 Preliminary Injunction Order as moot. The appeal is moot because the October 19, 2012 Preliminary Injunction Order (Dkt. 139), which Plaintiffs were forced to obtain as a result of the Lasshofer Defendants' noncompliance, supersedes and renders superfluous the June 1 Order for all practical purposes. The October 19 Order is no longer appealable, as the 30-day deadline for noticing an appeal has passed. *See* Fed. R. App. P. 4(a).

(Dkt. 152 n.1.)

### VI. The Lasshofer Defendants are incorrect as a matter of law in arguing that a mooted injunction cannot be the basis for a civil contempt order.

Plaintiffs respectfully answer the following question that the Lasshofer Defendants asked in their instant motion: "How can Mr. Lasshofer and the Innovatis entities be in contempt of a preliminary injunction that Plaintiffs themselves contend is moot?" The answer: contempt is not excused by the subsequent mooting of a violated order.

An adjudication of mootness is not tantamount to vacatur. *See Rio Grande Silvery Minnow v. Keys*, 355 F.3d 1215, 1219-20 (10th Cir. 2004) (noting that even though, "for all practical purposes, none of the provisions of the injunction remain," making it appropriate to dismiss the appeal of the injunction as moot, the issue of vacatur remained to be decided; holding that "[w]hether any opinion should be vacated on the basis of mootness is an equitable question"). In order to expedite the appeal (and ultimately this litigation), Plaintiffs sought to establish that the June 1 preliminary injunction had been

rendered moot by the subsequently issued October 19 preliminary injunction coupled with the Lasshofer's contemptuous noncompliance with the June 1 Order. In arguing that the June 1 preliminary injunction was moot, Plaintiffs did not concede or even suggest that the reason for this mootness (the Lasshofer Defendants' noncompliance) was not contemptuous. Indeed, Plaintiffs' mootness motion *actually underscored* the Lasshofer Defendants' contempt. (*See, e.g.*, Plaintiffs' Reply to Lasshofer Defendants' Response to Motion to Dismiss Appeal as Moot, Doc. 01018981048, at 10 ("The Lasshofer Defendants' suggestion that they possess assets they could use to comply with the June 1 Order, therefore, is an acknowledgement of their contempt.").) Moreover, even when a plaintiff's claims are voluntarily dismissed such that underlying injunctive orders no longer have practical effect, the plaintiff may *still* recover civil compensatory damages for a defendant's contemptuous violation of the underlying injunctive orders. *See, e.g.*, *Shady Records, Inc. v. Source Enters., Inc.*, 371 F. Supp. 2d 394, 399 (S.D.N.Y. 2005) (holding that "[s]ince this Court's contempt award was explicitly intended to compensate plaintiff for the costs incurred in enforcing the modified TRO in light of defendants' reckless violation of the order, that award survives the dismissal with prejudice of plaintiff's underlying claims").

In the Tenth Circuit, Plaintiffs argued that the Lasshofer Defendants' contemptuous noncompliance with the June 1 Order deprived that Order of practical effect. Conspicuously absent from the Lasshofer Defendants' selection of pages from Tenth Circuit briefs is the page of Plaintiffs' reply where Plaintiffs state, "The 'strictures' that the Lasshofer Defendants attempt to invoke to defeat mootness have had, and will

have, no practical effect, as the Lasshofer Defendants have contemptuously disregarded them." (Doc. 01018981048 at 11.)

Indeed, even the case upon which the Lasshofer Defendants rely in arguing that a "claim for civil contempt" must "fall" if the underlying order is reversed, *Reliance Insurance Company v. Mast Construction Company*, 84 F.3d 372, 376 (10th Cir. 1996), supports Plaintiffs on this point. There, the court stated:

> Generally speaking, a person who violates an injunction or temporary restraining order during its pendency is subject to a compensatory civil contempt judgment, even if the injunction or restraining order later terminates due to passage of time or mootness.

*Reliance*, 84 F.3d at 376.

**VII.     The Lasshofer Defendants have conceded that they have the ability to comply with the June 1 preliminary injunction.**

The Lasshofer Defendants have failed to meet their burden of showing inability to comply with the June 1 Order by clear and convincing evidence, as Plaintiffs explained in their Motion for Contempt and Sanctions (Dkt. 83). Plaintiffs' Tenth Circuit motion to dismiss appeal on mootness grounds further exposed the Lasshofer Defendants' already apparent ability to comply with the June 1 Order, and highlighted their contemptuous refusal to do so. As Plaintiffs argued in their motion, either the Lasshofer Defendants had no funds beyond the $6.8 million in Innovatis Asset Management SA's Credit Suisse subaccount, in which case the October 19 preliminary injunction entirely superseded the June 1 Order, or the Lasshofer Defendants had funds in addition to the $6.8 million, but which they contemptuously refused to escrow in Colorado, establishing that the June 1

Order had no practical effect. (*See generally* Motion to Dismiss Appeal as Moot, Doc. 01018972337.)

In opposing Plaintiffs' motion to dismiss, the Lasshofer Defendants essentially conceded their noncompliance by stating that the "strictures" of the June 1 Order extend beyond the October 19 Order, presumably to assets beyond the $6.8 million in the Innovatis Credit Suisse subaccount. (Doc. 01018977897 at 13.) (This admission is omitted from the Lasshofer Defendants' selection of pages from Tenth Circuit filings.) The Lasshofer Defendants also argued (incorrectly) that their failure to comply with the June 1 Order would be excused if the Tenth Circuit reversed the June 1 Order. (*Id.* at 13-14.) (This is also omitted from the Lasshofer Defendants' selection of Tenth Circuit pages.) Finally, the Lasshofer Defendants stated that "Credit Suisse AG" is "the bank depository of *some* of the funds subject to the June 1 PI Order." (*Id.* at 4-5 (emphasis added).)[1] (This is also omitted from their selection of Tenth Circuit pages.)

The Lasshofer Defendants have also acknowledged that funds were available to satisfy this Court's Orders but they chose not to make the same available. For example, in their response to Plaintiffs' status report (Dkt. 168), the Lasshofer Defendants complain that "the Court did not release funds for Mr. Lasshofer and the Innovatis entities to file a responsive pleading until June 1, 2012 . . . . Mr. Lasshofer and the Innovatis entities filed their Motion To Dismiss as soon as practicable after the Court released funds for legal

---

[1] This contradicts the Lasshofer Defendants' assertion, made to this Court in contesting Plaintiffs' motion for contempt, that "[t]he *only* evidence in this case relating to funds in any bank account is the $6.8 million in the Credit Suisse account." (Dkt. 110 at 6 (emphasis original).)

fees." (Dkt. 168 at 3.) Here, the Lasshofer Defendants concede that funds existed which could have been used to satisfy the April 17 TRO (Dkt. 16 at 3-4 (requiring Lasshofer Defendants, within thirty days of the Order, to repatriate to Colorado all assets appropriated from Plaintiffs, and all assets necessary to satisfy a judgment, located outside of Colorado and held or controlled by any Lasshofer Defendant)) or the June 1 Preliminary Injunction Order (Dkt. 50 at 21 (ordering Lasshofer Defendants to place in escrow within Colorado $2,180,000)). *See Bayview Loan Servicing, LLC v. Boland*, No. 08-cv-00566-WDM-KLM, 2010 WL 4237796, at *4 (D. Colo. Aug. 26, 2010) (noting that a defendant ordered to make payment establishes financial inability to comply only by showing "*complete* financial inability to comply with [the] Order"; rejecting "self-serving and conclusory statements" purporting to establish inability to comply) (emphasis added), *accepted by Bayview Loan Servicing, LLC v. Boland*, No. 08-cv-566-WDM-KLM, 2010 WL 4226441 (D. Colo. Oct. 18, 2010).

**VIII.   This Court should not exercise "judicial restraint" to avoid holding the Lasshofer Defendants in contempt.**

The Seventh Circuit addressed a similar situation to the instant case in *Lake Shore Asset Management Limited v. Commodity Futures Trading Commission*, 511 F.3d 762 (7th Cir. 2007). There, the district court had entered a freeze-order injunction, and the Seventh Circuit denied the defendant's requested stay pending appeal, yet the defendant refused to comply with the injunction. 511 F.3d at 764-65. Notwithstanding the pending appeal, the district court, after concluding that "this contumacious behavior is intolerable," "appointed a receiver to take over [defendant's] operations and bring it into

compliance with the injunction." *Id.* at 765. The Seventh Circuit, in condoning the measures taken by the district court, concluded, "Injunctions must be obeyed; there is no other alternative. [Defendant] is in contempt of court, and no district judge is obliged to look the other way." *Id.*; *see also Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911) ("If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.").

Finally, to the extent the Lasshofer Defendants argue that a contempt order should not issue during the pendency of their appeal, the argument should be rejected. The Lasshofer Defendants are not only in contempt of the Order on appeal (Dkt. 50), but also of the April 17 TRO (Dkt. 16), and now the Court's March 8, 2013 Order compelling the Lasshofer Defendants to answer discovery. (*See* Dkt. 169; *see also* Declaration of Christopher W. Madel dated March 24, 2013 Ex. 1 (Lasshofer Defendants' Response and Objections dated March 22, 2013).) Indeed, in their "responses" to the Court-ordered discovery, the Lasshofer Defendants not only failed to provide a single substantive response or piece of paper, but they even interposed objections to an interrogatory directed at communications between the Lasshofer Defendants *and Plaintiffs* on attorney-client and work-product privilege grounds. (*See id.* Ex. 1 at 6 (Interrogatory No. 3 and Objection).)

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Lasshofer Defendants' motion to vacate the show cause hearing set for March 26, 2013.

DATED this 24th day of March, 2013.

Respectfully submitted,

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

*/s/Christopher W. Madel*
Christopher W. Madel
Bruce D. Manning
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com

And

Robert N. Miller
**PERKINS COIE LLP**
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303-291-2300
Facsimile: 303-291-2400
rmiller@perkinscoie.com

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2013, I electronically filed the foregoing PLAINTIFFS' RESPONSE TO THE LASSHOFER DEFENDANTS' SUBMISSION IN CONNECTION WITH SHOW CAUSE HEARING AND IN OPPOSITION TO FINDING OF CONTEMPT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Justine Victoria Beyda**
  jbeyda@cravath.com,mao@cravath.com
- **Kathleen E. Craigmile**
  kec@benningtonjohnson.com,dtb@benningtonjohnson.com, man@benningtonjohnson.com,tlp@benningtonjohnson.com, afa@benningtonjohnson.com
- **Kevin D. Evans**
  kdevans@s-elaw.com,pdouglass@s-elaw.com,sjoshi@s-elaw.com, tbaksay@s-elaw.com
- **Christopher William Madel**
  cwmadel@rkmc.com,dclandis@rkmc.com,dmvanalstine@rkmc.com, ELBecker@rkmc.com,arthom@rkmc.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com
- **Julie Anne North**
  jnorth@cravath.com,mao@cravath.com

> */s/Christopher W. Madel*
> Christopher W. Madel
> Bruce D. Manning
> **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
> 2800 LaSalle Plaza
> 800 LaSalle Avenue
> Minneapolis, MN 55402
> Telephone: 612-349-8500
> Facsimile: 612-339-4181
> cwmadel@rkmc.com
> bdmanning@rkmc.com
>
> ATTORNEYS FOR PLAINTIFFS

83787346.1