**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson**

Civil Action No. 12-cv-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

       Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

       Defendants,

CREDIT SUISSE A.G.,

       Nominal Defendant.

---

**PLAINTIFFS' MOTION TO COMPEL CREDIT SUISSE AG TO RESPOND TO
PLAINTIFFS' SECOND SET OF INTERROGATORIES AND REQUESTS FOR
PRODUCTION OF DOCUMENTS**

---

Credit Suisse continues to withhold information and documents that are essential to

Plaintiffs' case, including, *inter alia*, information about Plaintiffs' funds held by Credit

Suisse that the Lasshofer Defendants fraudulently obtained. Credit Suisse's continuing pattern of requesting Plaintiffs to produce discovery and then simultaneously refusing to respond to Plaintiffs' discovery requests is unfair. Plaintiffs respectfully request that this Court compel Credit Suisse to respond to Plaintiffs' April 4, 2013 Interrogatories No. 2, 3, 4, and 5, and Requests for Production No. 2, 3, 4, and 5. Plaintiffs further request that this Court refrain from requiring Plaintiffs to obtain these responses through Hague Convention procedures.[1]

## FACTS

### A.    Credit Suisse receives the benefits of discovery from Plaintiffs

On August 31, 2012, Credit Suisse requested and received leave to serve discovery on Plaintiffs. (8/31/2012 H'ring Tr. at 8:5-14.)  In requesting discovery and propounding its September 5, 2012 requests, Credit Suisse did not argue, or even suggest, that Hague Convention procedures should govern discovery. After Plaintiffs produced over 100 pages of written interrogatory responses and documents to Credit Suisse, Credit Suisse refused to respond to Plaintiffs' requests on the basis of Swiss law, again without requesting application of the Hague Convention.

On April 4, 2013, Credit Suisse requested additional documents from Plaintiffs. Once again, Credit Suisse requested these documents from Plaintiffs directly, i.e., without

---

[1]    Before filing this motion, counsel for Plaintiffs asked counsel for Credit Suisse whether Credit Suisse will produce complete, fair, and proper responses to Interrogatories No. 2, 3, 4, and 5 and Requests for Production No. 2, 3, 4, and 5, and Credit Suisse restated its position that it "cannot further respond to those requests."

employing Hague Convention procedures.[2] To date, Plaintiffs have produced 520 pages of documents responsive to Credit Suisse's April 4 requests.

## B.     This Court rejects Credit Suisse's Swiss-law arguments

On October 16, 2012, this Court rejected Credit Suisse's Swiss-law arguments and explained that discovery would proceed pursuant to the Federal Rules of Civil Procedure:

> MS. CRAIGMILE: The production of documents related to accounts would be a violation of article 47 of the federal banking code. And so, Your Honor, Credit Suisse is put in a very difficult position by these discovery orders because the orders are asking Credit Suisse to violate these very specific Swiss laws.

> THE COURT: Well, maybe they are and maybe they aren't. Maybe your Swiss attorney is right and maybe he's not. All I can say is that I'm concerned about American law. I'm concerned about discovery, and those are my orders. The order is not intended in any way, shape, or form to require the identities of any banking clients or any other personal information of people not involved in this proceeding. That type of information can, of course, be redacted. But all I can deal with is the Federal Rules of Civil Procedure, including discovery rules, and a lawsuit that is sitting on my docket and those are my orders. And now you're going to either comply or not, and if you do not comply, then the consequences will be whatever they are.

(10/16/2012 H'ring Tr. at 7:22-8:16.)

## C.     Plaintiffs' Motion to Compel Credit Suisse to Participate in Discovery (Dkt. 175)

Plaintiffs began asking Credit Suisse to participate in a FED. R. CIV. P. 26(f) conference on November 29, 2012. (Dkt. 153-2.) Because Credit Suisse resisted

---

[2]     These documents included, *inter alia*, all documents (129 pages) that Plaintiffs received in connection with the Austrian criminal proceedings against Lasshofer, and communications between Plaintiffs' counsel and the U.S. Attorneys Office regarding the Burgess prosecution. To avoid inundating the Court with paper, Plaintiffs do not attach these documents, but they will provide the same upon request. Both categories of documents consist of substantively important material that is not publically available.

participating in even the most basic of discovery, Plaintiffs moved on March 20, 2013 for an order compelling Credit Suisse to participate in a FED. R. CIV. P. 26(f) conference and substantive discovery as required by the Federal Rules of Civil Procedure. (Dkt. 175.) Plaintiffs' motion was granted on March 26, 2013. (Dkt. 184.)

### D.   Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents to Credit Suisse

Plaintiffs served their Second Set of interrogatories and requests for production on Credit Suisse on April 4, 2013.

On April 21, Credit Suisse sent Plaintiffs a letter stating that Credit Suisse cannot answer "nearly all" of Plaintiffs' April 4 discovery requests. (*See* Dkt. 197-2 at 1.) Specifically, Credit Suisse stated that it has "thoroughly reviewed whether there are lawful means by which it could disclose all or some portions of the requested account information," but that "[i]n light of the explicit statutory prohibitions and attendant liability, it cannot." (*See id.* at 3.) Also in this letter, Credit Suisse, for the first time, suggested that Plaintiffs should attempt to follow Hague Convention procedures in seeking discovery from Credit Suisse. (*See id.*)

### E.   Credit Suisse's responses to Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents

Credit Suisse refused to substantively respond to most of Plaintiffs' Second Set. Credit Suisse refused to answer the following interrogatories and requests for production, citing Swiss statutory provisions, including Article 47 of the Swiss Federal Banking Act,

Articles 394 *et seq.* of the Swiss Code of Obligations, Articles 27 *et seq.* of the Swiss

Civil Code, and Article 271 of the Swiss Penal Code:

**INTERROGATORY NO. 3:** For each asset in the possession, custody, or control of Credit Suisse that is owned by, or held in the name of, any Lasshofer Defendant (including, but not limited to, any funds held by any Lasshofer Defendant in Account No. 0835-1128069-12) since June 23, 2010:

    a.    describe the asset (including its value in U.S. dollars);

    b.    if applicable, provide the date when the asset was removed from, or transferred out of, Credit Suisse, and identify each document relating to such removal or transfer.

**INTERROGATORY NO. 4:**    With respect to the funds held in Account No. 0835-1128069-12:

    a.    state the current amount of those funds that belong to any Plaintiff;

    b.    identify each document relating to the current amount of those funds that belong to any Plaintiff; and

    c.    if you contend that none of the funds belong to any Plaintiff, describe all facts in support of your contention, and identify each document relating to this contention.

**INTERROGATORY NO. 5:**    For each communication between Credit Suisse and any Principal Defendant, Prosperity International LLC, or the United States Government related to Account No. 0835-1128069-12, from June 23, 2010 to the present:

    a.    describe the communication (including its date); and

    b.    identify each document constituting or containing the communication.[3]

---

[3]    Credit Suisse also refused to provide a complete response to Plaintiffs' Interrogatory No. 1, which required Credit Suisse to identify each person with knowledge of any fact supporting any of Credit Suisse's admissions, denials, and other responses in Credit Suisse's Answer, and a description of any such person's knowledge. Credit Suisse stated that it "objects, and cannot respond," to Plaintiffs' Interrogatory No. 1 "to the

**REQUEST NO. 2:**    All documents that you provided to the United States Government in connection with *United States v. Burgess*, 6:10-cr-00161-ACC-GJK (M.D. Fla.), including "the Innovatis Credit Suisse Account records" referenced on Page 5 of Credit Suisse AG's Sur-Reply in Support of Response to Plaintiffs' Motion for Summary Judgment (Dkt. 177).

**REQUEST NO. 3:**    Since January 1, 2009, all documents constituting or containing account statements for Account No. 0835-1128069-12 (including all subaccounts) (NOTE: monthly account statements for each month since January 2009 to today will suffice to satisfy this document request).

**REQUEST NO. 4:**    All documents that you submitted to the Swiss Government between October 5, 2009 and today relating to Account No. 0835-1128069-12 (including all subaccounts).

**REQUEST NO. 5:**    All documents that you submitted to the United States Government between June 23, 2010 and today relating to Account No. 0835-1128069-12 (including all subaccounts).

Credit Suisse also provided an incomplete response to the following interrogatory,

despite not objecting that the information requested was protected by Swiss law:

**INTERROGATORY NO. 2**:    For each communication that constitutes or contains any assistance or aid that Credit Suisse provided to any Principal Defendant or Prosperity International LLC with respect to Plaintiffs' Colorado real estate project (including, but not limited to, any advice provided by Credit Suisse to any Principal Defendant or Prosperity International LLC to open any account relating to Plaintiffs' Colorado real estate project):

a.      describe the communication (including its date); and

b.      identify each document constituting or containing the communication.

Credit Suisse responded to this interrogatory by stating that "[v]erbal

communications regarding the Mesa Homes Safekeeping Account are described in the

---

extent it seeks information that Credit Suisse is prohibited from disclosing pursuant to Swiss law."

6

Trounce declaration." The Trounce declaration, however, does not state the number, nature, date, parties to, description of, or the existence of any memorializing documents regarding these communications. (*See* Dkt. 124-1 at ¶¶ 10, 15, 16.)

ARGUMENT

**I.      This Court should compel Credit Suisse to respond to Plaintiffs' April 4, 2013 interrogatories and document requests.**

Credit Suisse's attempt to invoke Swiss law to excuse its refusal to participate in reasonable discovery is groundless. This Court has already informed all parties that the Federal Rules of Civil Procedure govern discovery in the instant case, and Credit Suisse has received the benefits of discovery conducted pursuant to the Federal Rules. Even if Swiss law were relevant, moreover, Credit Suisse has failed to meet its burden of specifically stating why Swiss law bars its production of particular responses or documents. Credit Suisse has also discredited its Swiss-law objections by taking inconsistent positions regarding the applicability and effect of Swiss law.

**A.      This Court has rejected Credit Suisse's Swiss-law objections to participating in reasonable discovery.**

It is well-established "that the operation of foreign law 'does not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that law.'" *Linde v. Arab Bank, PLC*, 706 F.3d 92, 109 (2d Cir. 2013) (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court Iowa*, 482 U.S. 522, 544 n.29 (1987) (citing *Société*

7

*Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204-06 (1958))) (brackets omitted); *see also id.* at 114 (holding that "[t]he District Court's decisions here to compel production and then to issue sanctions for the Bank's failure to comply find sufficient support in cases from this Court and other courts of appeals compelling discovery, notwithstanding competing foreign legal obligations").

Once a court rules that the Federal Rules of Civil Procedure govern a particular case, moreover, a party cannot continue to resist participating in discovery on the basis of foreign law. *See, e.g.*, *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 194 n.6 (E.D.N.Y. 2010) (rejecting defendant's foreign bank secrecy objections to production requests; noting that order overruling foreign bank secrecy objections "overruled *all* of the Bank's foreign bank secrecy objections," placing defendant "under a continuing obligation to produce documents that are responsive to plaintiffs' requests" and precluding defendant from "rely[ing] on foreign bank secrecy objections") (emphasis original), *appeal dismissed and petition for writ of mandamus denied*, 706 F.3d 92 (2d Cir. 2013).

This Court rejected Credit Suisse's Swiss-law objections during the October 16, 2012 hearing regarding Credit Suisse's "responses or nonresponses by Credit Suisse's lawyers to [Plaintiffs'] discovery requests." (10/16/2012 H'ring Tr. at 6:4-7.) At this hearing, the Court informed Credit Suisse that American law and the Federal Rules of Civil Procedure govern discovery in this case. *See* FACTS, *supra*. Despite this ruling, Credit Suisse has continued to assert Swiss-law objections.

**B.   Credit Suisse's asserted fears do not excuse it from participating in reasonable discovery.**

Even if Credit Suisse's asserted fear of violating foreign law were a relevant consideration, it would not excuse Credit Suisse from participating in discovery because "the mere threat of criminal prosecution abroad does not strip our courts of the authority to order production of relevant materials in private civil litigation." *Linde*, 706 F.3d at 114. Throughout this litigation, Credit Suisse has asserted fear of a Swiss prosecution as its basis for withholding information and documents from Plaintiffs. (*See, e.g.*, 10/16/2012 H'ring Tr. at 7:18-20; Dkt. 197-2 at 2.) Credit Suisse's stated fears notwithstanding, Credit Suisse must comply with discovery Orders. *See Linde*, 269 F.R.D. at 197 (holding that "[d]efendant's 'weighty excuse' of fear of criminal prosecution, *see Societe Internationale*, 357 U.S. at 211, is not, alone, sufficient justification for defendant's production failures").

Credit Suisse's foreign secrecy objections fail for the additional reason that Credit Suisse has not "specified with great particularity and specificity" the applicability of Swiss law to the information and documents Plaintiffs seek. *Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370, 1372, 1374 (10th Cir. 1978) (internal quotation marks omitted). The Tenth Circuit, in *Arthur Andersen*, stated that a party attempting to invoke Swiss secrecy laws could not do so without determining specifically "what documents and information could and could not be made available." *Id.* at 1374.

Credit Suisse has not even attempted to carry this heavy burden in the instant case. Instead, Credit Suisse has generally suggested that it is barred from responding to Plaintiffs' discovery, without undertaking the particularized analysis required to support such claims. (*See* 10/16/2012 H'ring Tr. at 6:4-7 (THE COURT: "[A]s I read these responses or nonresponses by Credit Suisse's lawyers to these discovery requests and their vague citations to Swiss secrecy laws, et cetera, what it makes me wonder is what are they trying to hide.").) Even assuming, *arguendo*, that the raft of Swiss law provisions cited by Credit Suisse were relevant, Credit Suisse fails to explain whether or how these provisions apply to bar production of the specific answers and documents that Plaintiffs seek. *See Coca-Cola Foods v. Empresa Comercial Internacional de Frutas S.A.*, No. 96-358-CIV-T-17C, 1997 WL 370121, at *9 (M.D. Fla. June 12, 1997) (stating that "a mere translation of [Swiss Penal Code] Article 271 was insufficient for the Magistrate Judge to determine the truth of the defendants' conclusory statements" regarding asserted Swiss law prohibitions on discovery).

Credit Suisse's blanket refusal to produce documents for fear of violating Swiss law is overbroad. For example, Credit Suisse refuses to respond to four interrogatories and four document requests on the basis, *inter alia*, of Swiss Penal Code Article 271. Article 271 prohibits the carrying out of activities on behalf of a foreign state *on Swiss territory* without lawful authority (emphasis added). This would not prohibit a Credit Suisse employee not located in Switzerland, e.g., Jonathan Trounce, from providing information

in response to these interrogatories. Nor would this provision prohibit production of documents not located in Switzerland. Credit Suisse's Swiss-law objections, therefore, appear overbroad.

### C. Credit Suisse has taken inconsistent positions regarding the applicability and effect of Swiss law, undermining its Swiss-law objections.

Credit Suisse's Swiss-law arguments are further weakened by Credit Suisse's recent production of material it earlier argued was not producible under Swiss law. Credit Suisse's "selective compliance with foreign bank secrecy laws . . . highlights the limits of its supposed good faith and casts doubt on its claims of hardship." *Linde*, 269 F.R.D. at 200. The Tenth Circuit considered a similar situation in *Arthur Andersen*. There, the defendant ultimately produced documents which it had earlier "represented to the court . . . were not producible because of Swiss law." 570 F.2d at 1373. The Tenth Circuit upheld the district court's sanctions order against the defendant who "refused willfully to obey [a discovery order] for an unreasonable time on the contrived excuse, eventually abandoned, of the Swiss secrecy laws." *Id.* at 1374.

Like the defendant in *Arthur Andersen*, Credit Suisse has produced information it initially asserted could not be disclosed under Swiss law. For example, in its April 12, 2013 Supplemental Response to Plaintiffs' September 5, 2012 Interrogatory No. 7, Credit Suisse stated the "Maximum Assets Held" for each account "Credit Suisse Switzerland" has held since January 1, 2008 for individuals or entities domiciled in Colorado. On September 26, 2012, Credit Suisse's counsel Drs. Peter Reichart and Andrea Meier

declared under penalty of perjury that "[r]esponding to this Interrogatory [No. 7] would require CS AG and its employees to violate the following Swiss laws, which carry criminal penalties": Article 271 PC, Article 47 BA, and Article 273 PC. (Dkt. 134-1 at ¶¶ 21-24.) These Swiss-law experts specifically noted that "banking secrecy . . . prevents CS AG from providing *any information on the maximum amount of money for credit accounts*," and that disclosure of such information constituted "a criminal offense due to a breach of Article 47 BA." (*Id.* at ¶ 23 (emphasis added).) Credit Suisse's inconsistent application of Swiss law proves its objections to be "no more than diversionary tactics." *Arthur Andersen*, 570 F.3d at 1374.

Credit Suisse also produced to Plaintiffs a letter from Innovatis to Credit Suisse regarding the effect that this Court's June 1, 2012 Preliminary Injunction Order, and potential future orders, might have on "funds held on bank accounts with Credit Suisse AG."[4] (May 14, 2013 Declaration of Aaron R. Thom ("Thom Decl.") Ex. 1.) In its letter, Innovatis unsurprisingly seeks to protect "*its* interests" in its Credit Suisse "account*s*." (*Id.* (emphasis added).) As this letter constitutes "information a bank receives from its customers regarding a Swiss bank account," and, according to Credit Suisse's counsel Drs. Peter Reichart and Andrea Meier, "all information a bank receives from its customers regarding a Swiss bank account qualifies as a business secret within the scope

---

[4]     This is one of only four communications between Credit Suisse and the Lasshofer Defendants that Credit Suisse has produced. The other three involve Credit Suisse's requests for authority to disclose information or documents relating to the Lasshofer Defendants and their accounts at Credit Suisse.

of Article 273 PC" (Dkt. 134-1 at ¶ 33), either Credit Suisse's unauthorized disclosure of this letter violated Article 273 PC or Credit Suisse's analysis of (and stated fear of violating) Swiss law is inconsistent.[5] Credit Suisse does not claim to have incurred criminal liability for making these or other disclosures. *See Linde*, 269 F.R.D. at 199 (rejecting defendant's argument that it withheld documents in good faith on the basis of bank secrecy because defendant had previously disclosed the same documents and "ha[d] not faced any repercussions as a result of its prior disclosures").

In addition to disregarding its asserted fear of criminal liability, Credit Suisse has also changed its interpretation of Swiss law over the course of the litigation. For example, on October 5, 2012, Credit Suisse stated that even "where a third party has full or certain knowledge of facts protected by banking secrecy[,] [t]he bank is prohibited from confirming such facts." (Dkt. 128-1 at ¶ 12.) On April 21, 2013, however, Credit Suisse made the contradictory statement that disclosure of information protected by banking secrecy "is permitted . . . where the information has been previously disclosed in the public domain by the account holder or party other than the bank." (Dkt. 197-2 at 2.) Inconsistencies such as this discredit Credit Suisse's objections to discovery.

Furthermore, at the same time it refused to provide substantive discovery responses, Credit Suisse propounded numerous discovery requests to Plaintiffs on both September 5,

---

[5]     By selectively complying with this Court's discovery Orders, moreover, Credit Suisse "has decided when it will be cooperative, and when it will not be cooperative, which it has no right to do." *Linde*, 269 F.R.D. at 200 (internal quotation marks and citation omitted).

2012 and April 4, 2013. Credit Suisse has received over 600 pages of material pursuant to these requests, taking full advantage of Plaintiffs' information and documents. *See* FACTS, *supra*.

> **D.   Credit Suisse's general refusal to provide information and documents is unfair.**

Credit Suisse also refuses to provide information that it does not argue is protected by Swiss law. Credit Suisse answered Interrogatory No. 2 by stating that "[v]erbal communications regarding the Mesa Homes Safekeeping Account are described in the Trounce declaration." The Trounce declaration, however, makes only vague reference to Credit Suisse-Innovatis communications (*see* Dkt. 124-1 at ¶ 10); it fails to provide the number, nature, date, parties to, description of, or the existence of any memorializing documents regarding these communications, as Plaintiffs requested. What is more, Trounce acknowledges in his declaration that he "mentioned the full name and ownership of the Safekeeping Account" to Niemi (*id.* at ¶ 16), yet Trounce fails to mention the Trounce-Innovatis communication that authorized him to make this disclosure. If such a communication exists, Credit Suisse should have disclosed, or at least alluded to, the communication. If no such communication exists, Trounce's disclosure of information in arguable violation of the myriad Swiss laws cited by Credit Suisse (apparently without facing consequences for doing so) further undermines Credit Suisse's asserted reliance on these provisions.

**II.     This Court should not require Plaintiffs to seek discovery from Credit Suisse via the Hague Convention.**

Plaintiffs should not be prejudiced by Credit Suisse's delay in invoking the procedures of the Hague Convention ("Convention"). Indeed, Credit Suisse's long delay in invoking Convention procedures, coupled with its participation in discovery and receipt of substantial information and documents from Plaintiffs in the interim, results in waiver of its argument that the Convention governs. The Convention is not mandatory and should not be applied here. Indeed, as explained *infra*, application of the Convention at this late juncture would likely cause undue delay and expense, and deny Plaintiffs critical documents that they have been properly seeking pursuant to the Federal Rules of Civil Procedure throughout this litigation regarding, *inter alia*, funds held by Credit Suisse that the Lasshofer Defendants fraudulently obtained from Plaintiffs.

**A.     Because Credit Suisse has accepted the benefits of discovery without arguing for application of the Convention, Credit Suisse should be deemed to have forfeited its argument that the Convention should govern discovery in the instant case.**

Credit Suisse has waived any right to invoke the procedures of the Convention. A long delay in raising an argument based on the Convention results in waiver. *See Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919 (S.D.N.Y. 1984) (holding that defendant "waived any right to assert the Hague Convention"; noting that "[a]t this stage, near the end of discovery, it is not the time, as a matter of efficient judicial administration, to engender further delays by proceeding under the Hague Convention;

defendant should have raised these concerns earlier"). Not only has Credit Suisse raised its Convention argument late in the instant proceedings, but it has also already participated in discovery for over eight months, propounded numerous requests to Plaintiffs, and obtained hundreds of pages of written interrogatory answers and documents from Plaintiffs without invoking the Convention. Credit Suisse cannot, after receiving the benefits of discovery, use the Convention to deny the same to Plaintiffs.

> **B.     The Convention should not govern discovery in the instant case.**

Even if Credit Suisse had not waived its Convention argument, the Convention should not govern discovery in the instant dispute. Application of Convention procedures is not mandatory, even where a foreign litigant's participation in discovery could violate foreign law. *See Aérospatiale*, 482 U.S. at 543 (holding that district court was not required to employ Convention procedures even if "evidence-gathering might violate the 'judicial sovereignty' of the host nation"); *Wultz v. Bank of China Ltd.*, No. 11 Civ. 1266 (SAS), 2013 WL 1832186, at *1, *12 (S.D.N.Y. May 1, 2013) (declining to employ Convention procedures and compelling Bank of China "to produce documents that BOC argues it is prohibited from producing under the banking laws of the People's Republic of China"); *AccessData Corp. v. Alste Techs. GmbH*, No. 2:08cv569, 2010 WL 318477, at *2-3 (D. Utah Jan. 21, 2010) (declining to employ Convention procedures and granting motion to compel disclosure of personal customer information in arguable violation of German law); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 431 (E.D.N.Y. 2008)

(declining to employ Convention procedures and compelling Credit Lyonnais to produce documents despite letter from French Ministry of Justice stating France's position "that discovery conducted outside the formal procedures of the Hague Convention would 'clearly constitute a violation of the sovereignty of the French State'").

District courts generally consider three factors when determining whether to require parties to seek discovery via the Convention. *Aérospatiale*, 482 U.S. at 544; *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, No. 05-6042 (JBS), 2008 WL 4126602, at *7 (D.N.J. Aug. 27, 2008) (describing and applying three-part *Aérospatiale* test). Credit Suisse "bear[s] the burden of persuading this Court that this balancing test favors use of the Hague Convention procedures rather than the Federal Rules of Civil Procedure." *Emerson*, 2008 WL 4126602, at *7.

*First*, courts consider "the particular facts." *Id.* Plaintiffs drafted pointed requests aimed at obtaining key information and documents without being excessive. Plaintiffs, moreover, have conferred on multiple occasions with Credit Suisse, explaining that Plaintiffs are amenable to narrowing their discovery requests to ease Credit Suisse's discovery burden where appropriate. The first prong of the *Aérospatiale* test, therefore, weighs against application of the Convention.

*Second*, courts consider "sovereign interests." *Id.* In analyzing this factor, courts recognize that a statute "which is solely designed to protect [a nation's] businesses from foreign discovery, is both overly broad and vague and need not be given the same

deference as a substantive rule of law." *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 258 (M.D.N.C. 1988). The Swiss law provisions invoked by Credit Suisse in the instant case are of this nature. Indeed, in responding to a May 2008 questionnaire issued by the Permanent Bureau, Switzerland admitted that it had adopted blocking statutes (or the equivalent), and it identified, *inter alia*, Swiss Penal Code Article 271, Swiss Penal Code Article 273, and Swiss bank secrecy laws (including Article 47) in describing Swiss laws that limit Switzerland's participation in legal assistance procedures for obtaining evidence. (Switzerland's Response to Questionnaire of May 2008 relating to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, at 19, available at http://www.hcch.net/index_en.php?act=publications.details&pid=4457&dtid=33.) These blocking statutes should be given little deference.

Moreover, "written answers to interrogatories and production of certain documents" intrude less on foreign sovereignty than, for example, "on-site inspections, photography, depositions, [and] informal interviews," none of which Plaintiffs seek in the instant case. *Murphy v. Reifenhauser KG Maschinenfabrik*, 101 F.R.D. 360, 363 (D. Vt. 1984). The second *Aérospatiale* prong thus also weighs against the Convention's application.

*Third*, courts consider the "likelihood that resort to [Hague Convention] procedures will prove effective." *Emerson*, 2008 WL 4126602, at *7. This avenue for obtaining requested information is not viable if "the outcome of a request pursuant to the Convention is by no means certain, and making the request will undeniably result in

delays of unknown, and perhaps considerable, duration." *In re Air Cargo Shipping Servs.*

*Antitrust Litig.*, 278 F.R.D. 51, 57-58 (E.D.N.Y. 2010); *see also Murphy*, 101 F.R.D. at

363 (holding that "comity in this sense does not require plaintiff to proceed first under the

Convention in this case, particularly at this relatively late stage of discovery, and

particularly where it appears that a request for production of documents under the

Convention would be futile"). Switzerland regards the provisions invoked by Credit

Suisse as the functional equivalent of blocking statutes. (*See* Switzerland's Response to

May 2008 Questionnaire, at 19.) Switzerland has further demonstrated its hostility to

pretrial discovery by the reservations it has made under Article 23 of the Convention. *In*

*re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 54-55 (D.D.C. 2000) (adopting Special

Master's report and recommendation, including finding that Switzerland's Article 23

reservations reveal Switzerland's "hostility to pretrial discovery"; concluding "that

Hague would be extremely unlikely to provide efficient and effective discovery in this

case"). As Plaintiffs are unlikely to obtain the discovery they seek through the

Convention, the third *Aérospatiale* prong also weighs against its application.[6]

---

[6]    If, however, this Court requires Plaintiffs to obtain discovery via the Convention,
Plaintiffs respectfully request that the Court impose a discovery deadline on Credit
Suisse. Such a deadline is appropriate for two reasons. *First*, as explained *supra*,
Plaintiffs have reason to believe that Credit Suisse is withholding information and
documents that are not even arguably subject to the Swiss law provisions cited by Credit
Suisse. Credit Suisse has provided no explanation or excuse for withholding this material.
*Second*, imposition of a deadline will avoid the undue delay that could result from
application of Convention procedures and ensure that Plaintiffs receive discovery
responses in an expeditious manner, one way or another.

CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion to compel Credit Suisse to respond to Interrogatories No. 2, 3, 4, and 5, and Requests for Production No. 2, 3, 4, and 5.

DATED this 14th day of May, 2013.

Respectfully submitted,

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

*/s/Christopher W. Madel*
Christopher W. Madel
Bruce D. Manning
Aaron R. Thom
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com
arthom@rkmc.com

And

Robert N. Miller
**PERKINS COIE LLP**
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303-291-2300
Facsimile: 303-291-2400
rmiller@perkinscoie.com

ATTORNEYS FOR PLAINTIFFS

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 14, 2013, I electronically filed the foregoing PLAINTIFFS' MOTION TO COMPEL CREDIT SUISSE AG TO RESPOND TO PLAINTIFFS' SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Justine Victoria Beyda**
  jbeyda@cravath.com,mao@cravath.com
- **Kathleen E. Craigmile**
  kec@benningtonjohnson.com,dtb@benningtonjohnson.com, man@benningtonjohnson.com,tlp@benningtonjohnson.com, afa@benningtonjohnson.com
- **Kevin D. Evans**
  kdevans@s-elaw.com,pdouglass@s-elaw.com,sjoshi@s-elaw.com, tbaksay@s-elaw.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com
- **Julie Anne North**
  jnorth@cravath.com,mao@cravath.com

<u>*/s/Christopher W. Madel*</u>
Christopher W. Madel
Bruce D. Manning
Aaron R. Thom
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com
arthom@rkmc.com

ATTORNEYS FOR PLAINTIFFS

83911980.1