**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**
**Honorable R. Brooke Jackson**

Civil Action No.: 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH,
INNOVATIS ASSET MANAGEMENT, S.A.,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

Defendants.

---

# OBJECTIONS OF DEFENDANTS ERWIN LASSHOFER, INNOVATIS GMBH, INNOVATIS IMMOBILIEN GMBH, AND INNOVATIS ASSET MANAGEMENT, S.A. TO PLAINIFFS' DESIGNATION OF JOHN NIEMI AS AN EXPERT WITNESS AND TO NIEMI'S OPINIONS, AND MOTION TO EXCLUDE SAME

---

Defendants Erwin Lasshofer ("Mr. Lasshofer") and Innovatis GmbH, Innovatis Immobilien GmbH, and Innovatis Asset Management, S.A. (collectively the "Innovatis entities") object to Plaintiffs' proffer of Plaintiff John Niemi as an expert witness, object to

opinions Mr. Niemi offers in his so-called expert report and has said he intends to offer at the June 7 damages hearing, and move to exclude same.

## INTRODUCTION

Plaintiffs John Niemi, Robert Naegele, III, and Jesper Parnevik seek to substantiate their claim to $62,530,000 in damages (before trebling) through the "expert" testimony and opinions of Mr. Niemi. *See* Exhibit 1, Plaintiffs' Expert Disclosure Pursuant To Fed. R. Civ. P. 26(a)(2) ("Plaintiffs' Expert Disclosure"), at 2-3.[1] Attached to Plaintiffs' Expert Disclosures is a document titled "Expert report of John D. Niemi" ("Niemi's Report"), in which Mr. Niemi professes to evaluate and opine on Plaintiffs' alleged damages.

Mr. Lasshofer and the Innovatis entities object to the admissibility of Mr. Niemi's opinions because Mr. Niemi's proffered testimony does not meet the requirements for admissibility under FED. R. EVID. 702. Specifically, (1) Mr. Niemi lacks sufficient expertise to choose and apply a reasonable and reliable methodology, (2) Mr. Niemi did not apply a reliable methodology, (3) Mr. Niemi did not rely upon sufficient facts and data, and (4) the methodology Mr. Niemi used was not otherwise reliably applied.

Nowhere in Mr. Niemi's Report does Mr. Niemi explain directly his methodology for valuing the Breckenridge properties and assessing Plaintiffs' alleged damages. However, what Mr. Niemi has done is easily gleaned from his Report: he relies upon outdated hearsay appraisals from 2008 of the Breckenridge properties; he claims these appraisals are not only

[1] Plaintiffs seek to collect over $60 million (before trebling) as a result of the purported $2.18 million they claim they sent Burgess on behalf of the Azco entities, and in connection with properties they did not own.

valid measures, they are conservative measures of the damages Plaintiffs' suffered; and he sprinkles generalized facts which he claims support his conclusion. In reality, the purpose of the Niemi Report is not to value the Breckenridge properties. Rather, the Niemi Report is an attempt to legitimize the use of the outdated appraisals, which were conducted more than a year before the loan at the heart of Plaintiffs' claims was even supposed to be funded and before the market crashed, as a measure of damages. As explained below and in the Declaration Of John M. Wilhelms, MAI, attached hereto, no qualified and reasonable expert would seek to do what Mr. Niemi attempts.

Moreover, Mr. Niemi offers his opinion despite the fact that the United States, Colorado, and specifically the luxury real estate market went through the greatest economic downturn since the Great Depression at exactly the same time that Plaintiffs claim they were damaged. Mr. Niemi unconvincingly and bizarrely claims this was a non-issue. Mr. Wilhelms proves Mr. Niemi wrong.

Plaintiffs could have retained qualified experts to employ sound, reliable methodologies in order to evaluate whether Plaintiffs suffered damages and, if so, in what amount.[2] They chose instead to rely upon Mr. Niemi – an interested party – to ask this Court to award them more than $60 million (before trebling) in damages on their purported $2.18 million advance. Mr. Niemi's testimony and opinions do not qualify as expert evidence admissible under FED. R. CIV. P. 702. Therefore, the Court should exclude Mr.

---

[2] Assuming Plaintiffs could recover the value of property they did not own, which of course they cannot.

Niemi from testifying about the value of the Breckenridge properties at the hearing on June 7.

## ARGUMENT

The Supreme Court has held that district courts perform a "gate keeping role 'to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' " *United States v. Blake,* 284 Fed. Appx. 530, 540 (10th Cir. 2008) (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993)). Consistent with the terms of FED. R. EVID. 702, this function also applies to testimony based on "technical and other specialized knowledge." *Id.* (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999)).

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The Court's "gatekeeper" function is mandatory. *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1223 (10th Cir. 2003) (granting new trial as a result of the district court's failure "to perform its gatekeeper obligation"). Plaintiffs, as the proponents of Mr. Niemi's "expert" testimony, "bear[ ] the burden of proving the foundational requirements of Rule 702 by a

preponderance of the evidence." *United States v. Crabbe,* 556 F. Supp. 2d 1217, 1220-21 (D. Colo. 2008). To meet this burden, Plaintiffs must prove: "[1] that the witness has sufficient expertise to choose and apply a methodology, [2] that the methodology applied was reliable, [3] that sufficient facts and data as required by the methodology were used and [4] that the methodology was otherwise reliably applied." *Id.* at 1221 (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) and *Daubert*, 509 U.S. at 595). "The burden on the proponent of the witness is an exacting one, as any inadequacy in the proof on any of Rule 702's elements render the entire affected opinion inadmissible." *Id.* (citing *Mitchell,* 165 F.3d at 782).

## I. MR. NIEMI'S OPINIONS ARE INADMISSIBLE UNDER RULE 702

In evaluating the admissibility of Mr. Niemi's testimony as an expert witness, the Court must conduct a two-part test. First, the Court must determine "whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting FED. R. EVID. 702). Second, the Court "must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact . . . ." *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). Mr. Niemi's testimony fails both prongs of this evaluative process.

### A. Mr. Niemi Does Not Have Sufficient Expertise

"Under Federal Rule of Evidence 702, district courts must assess whether a witness is qualified 'by knowledge, skill, experience, training, or education' to offer expert testimony."

*Ho v. Michelin North America, Inc.*, No. 11–3334, 2013 WL 1277023, at *2 (10th Cir. Mar. 29, 2013) (quoting FED. R. EVID. 702). Case law suggests that typically a property "owner" may offer an opinion about the value of his property provided he uses sound and reliable methodologies, although the owner's "lack of appraisal education or training might affect the weight the fact finder should give his testimony . . . ." *James River Ins. Co. v. Rapid Funding, LLC*, No. 07-cv-01146-CMA-BNB, 2009 WL 481688, at *6 (D. Colo. Feb. 24, 2009), *rev'd on other grounds*, 658 F.3d 1207 (10th Cir. 2011). Mr. Niemi now acknowledges that he was not the owner of the properties which he refers to in his Report as "the Fairmont Breckenridge" (referred to herein as the "Breckenridge properties"). Niemi Report at 1. He states: "The legal entities that I established to purchase and own the properties were AZCO II . . . and AZCO I . . . which were rolled up to an operating company, Mesatex, LLC." *Id.* Still, Mr. Niemi dons the moniker of "owner," claiming "if there was one individual that most people would refer to as the 'owner' of the properties included in this report, it was me." *Id.*

The problem here, however, is that Mr. Niemi is not really testifying about the value of the Breckenridge properties: he seeks to testify as an expert about the appropriateness of relying upon appraisals conducted by others in 2008 as a measure of damages today. The distinction, though subtle, is substantive. "[M]erely possessing a [general qualification] is not sufficient to permit a[n] [expert witness] to testify concerning any . . . related issue." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (affirming exclusion of expert testimony by physician with expertise in orthopedics about the adequacy of medical warnings on orthopedic device). There is nothing in Mr. Niemi's background or education

that qualifies him to offer this opinion. Even if Mr. Niemi might be "qualified" as the "owner" of the Breckenridge properties to opine on their value (an opinion of suspect weight), he is not qualified to testify about the reliability of using five-year old appraisals as the basis for his opinion. The Niemi Report does not identify any educational background. *See* Niemi Report at 10-13. It does describe Mr. Niemi's background in commercial and residential real estate development, but reveals that he has no training or experience in conducting real estate appraisals. *Id.* Mr. Niemi simply does not have the knowledge, skill, experience, training, or education to perform an appraisal, much less opine on the validity of relying upon a historic appraisal in valuing property years later. Therefore, the Court should exclude any testimony by Mr. Niemi on this subject.

**B. The Methodology Mr. Niemi Applied Was Not Reliable**

Next, the Court cannot allow Mr. Niemi to testify because he failed to identify and apply a reliable methodology to value the Breckenridge properties. "[A] trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004). Plaintiffs must show that their "expert['s] testimony was based on a methodology that was 'scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements.' " *United States v. Orr*, 692 F.3d 1079, 1092 (10th Cir. 2012) (quoting *Nacchio*, 555 F.3d at 1241 ).

In evaluating whether a methodology satisfies Rule 702's requirement of reliability, courts have identified four non-exhaustive factors as useful in conducting this analysis:

> (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Dodge*, 328 F.3d at 1222 (10th Cir .2003) (citing *Daubert*, 509 U.S. at 593-94). Mr. Niemi's opinions carry none of these indices of reliability. To the contrary, as the Declaration Of John M. Wilhelms, MAI ("Wilhelms Dec.")[3] (attached hereto as Exhibit 2) attests, the methodology that Mr. Niemi used is fundamentally unreliable. Wilhelms Dec. at ¶¶ 7-8 & 12-13. Qualified real estate appraisers reject the idea that relying upon a historic appraisal of a real estate development is a reliable methodology for establishing the value of that real estate, particularly given what happened in the economy after 2008.

Indeed, as Mr. Wilhelms explains:

> As a licensed appraiser and an MAI, all appraisal and appraisal consulting work is required to be in compliance with the Uniform Standards of Professional Appraisal Practice ("USPAP") promulgated by the Appraisal Foundation. USPAP defines an appraisal as the act or process of developing an opinion of value and that all appraisals need to be prepared in compliance with the Standards. This would include estimates of value such as the "as is" values from the referenced appraisals. Of utmost importance is the effective date of value as the appraisal represents market conditions and expectations as of that date only.
>
> The Niemi Report provides estimates of value but has not been prepared in compliance with USPAP. . . . The Niemi Report does not comply with USPAP guidelines and, as will be discussed, does not correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal. In other words, the techniques and reporting

[3] Unlike Mr. Niemi, Mr. Wilhelms is an MAI and Colorado certified appraiser, with a wealth of relevant experience.

that are contained in the Niemi Report would not be acceptable to any licensed or designated appraiser as they would clearly violate USPAP.

* * *

. . . Mr. Niemi acknowledges the market decline after 2008 but does not make any adjustments to the value that had been estimated in 2008. He states that the decline slowed and eventually stabilized in the Summit County Area in or around 2011. He states for each of the three properties that, if completed as planned, they would have, at a minimum, generated the expected revenue and corresponding profit. Yet he acknowledges that: *Depending on the method of measurement, the high-end real estate market in Summit County, Colorado declined by approximately 10-15% during this time.* Mr. Niemi further states that even though *the United States experienced a decline in real estate values in 2009 through approximately 2011, this decline would not have significantly impacted the market values (and thus the damages) I have described in this report.*

There is no support for the above contention that a decline in the market would not have impacted the projects. While the Niemi Report discusses the strong market demand that the projects appeared to have prior to the downturn, the same could be said for numerous projects in other areas including those that were discussed earlier in this declaration. . . .

* * *

Mr. Niemi did not rely on sufficient data, research or analysis to arrive at his opinion. His opinion of value is solely dependent on the 2008 appraisals. Those appraisals were based on an approach that there was a market expectation that the property could be developed **at that time** and yield an acceptable profit from the revenues that were then being projected. While he acknowledges the significant market downturn, he does nothing to adjust the land values that had been based on a much stronger market period. His report ignores that impact of the negative market changes in absorption and price levels, the lack of availability of both construction and end loan financing, supply and demand for development land and other critical factors that would have significantly influenced a land value estimate at any time after 2008. . . .

The methodology employed in the Niemi Report is flawed and totally unacceptable as a credible valuation. In general, the report and the methodology are not at all compliant with the Uniform Standards of

> Professional Appraisal Practice. . . . Any subsequent valuations of the properties addressed in those [2008] appraisals would (under USPAP) need to be new assignments and all of the relevant components would need to be reanalyzed and new data researched.
>
> * * *
>
> . . . The Niemi Report fails to address virtually all of these important requirements of USPAP as well numerous other requirements. These substantial flaws in the methodology negate any usefulness of the Niemi Report as an opinion of value.

Wilhelms Dec. at ¶¶ 7, 11, 12 & 13.

Mr. Niemi's methodology is manifestly unreasonable and unreliable. His testimony should, therefore, be excluded.

### C. Mr. Niemi Did Not Use Sufficient Facts And Data And His Methodology Was Not Reliably Applied

"Even if an expert presents impeccable credentials, he or she cannot speculate or jump to an opinion without factual support." *James River,* 2009 WL 481688, at *7 (citing *Goebel v. Denver & Rio Grande W. R.R. Co.,* 215 F.3d 1083, 1088 (10th Cir. 2000)). In his Report, Mr. Niemi principally replies upon third-party appraisals of the Breckenridge properties conducted in 2008. Without those appraisals, the basis for Mr. Niemi's opinions disintegrates. Those appraisals, however, are inadmissible hearsay. "When an expert relies on inadmissible information, Rule 703 requires the trial court to determine whether that information is of a type reasonably relied on by other experts in the field." FED. R. EVID. 702 Advisory Committee Note to the 2000 Amendment.

As shown above, Mr. Niemi is not qualified to opine on whether experts in the field of real estate appraisal would reasonably rely on historic appraisals in the manner Mr. Niemi has done. *See supra* at 5 – 7. The Declaration Of John M. Wilhelms, MAI, however, answers that question definitively: they would not. Wilhelms Dec. at ¶¶ 7-8. These appraisals are the lynch pin of Mr. Niemi's testimony. They are not, however, valid data on which an expert in the field of real estate appraisal would base opinion. Accordingly, Mr. Niemi's opinion lacks sufficient facts and data to be admissible under Rule 702, and must be excluded for this reason too.

## II. MR. NIEMI CANNOT TESTIFY ABOUT THE CRIMINAL PROCEEDING AGAINST BURGESS

Attempting to prop up his unreliable opinions, Mr. Niemi goes even further afield, relying upon proceedings before the United States District Court for the Middle District of Florida, proceedings to which Mr. Lasshofer and the Innovatis entities were not a party. *See* Niemi Report at 8-9. Mr. Niemi states: "I have used the U.S. District Court for the Central (sic) District of Florida's restitution amount as a 'check' to ensure that my damages analysis here is accurate. Based upon my review and understanding of that court-ordered amount, my estimation of the Total Losses above is accurate." *Id.* This effort is fundamentally flawed.

First, Mr. Niemi is not qualified to evaluate the processes used to calculate the amount Burgess was ordered to pay in restitution. Mr. Niemi has no skill, knowledge,

education, experience, or training that qualify him to testify or opine on those processes, much less draw conclusions from them.

Second, while Mr. Niemi explains what an AUSA allegedly told him about the restitution proceedings, there is no evidence about the methodology actually used there, whether it was reliable and whether it was reliably applied. Nor is there any evidence about the facts and data utilized in the restitution process, or whether the court there even fulfilled the "gatekeeper" role as required in the Tenth Circuit. In fact, it appears that the Florida court did not.

## III. MR. NIEMI'S OPINIONS ARE INADMISSIBLE AS THE OPINIONS OF A LAY WITNESS PURSUANT TO RULE 701

Lastly, Plaintiffs cannot subvert the requirements of Rule 702 by tendering Mr. Niemi as a lay witness under Rule 701. Any opinion that a lay witness may offer that requires "technical or other specialized knowledge" is subject to the Rule 702 requirement explained in *Daubert*. The Commentary to the Federal Rules of Evidence is clear on this point:

> The amendment [to Rule 701] does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony* . . . . The amendment makes clear that ***any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge is within the scope of Rule 702.***

FED. R. EVID. 701 Advisory Committee Note to the 2000 Amendment (italics in original; bold italics added).

The Tenth Circuit has declared that " '[t]he testimony of an owner as to the value of his property is [subject to] the Federal Rules of Evidence under [Rule 702].' " *James River Ins.*

*Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 (10th Cir. 2011) (quoting *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 434 n.4 (5th Cir. 1982)). In *James River*, the district court, having determined that the property owner's testimony about the value of his lost property was inadmissible under Rule 702, allowed the owner to testify pursuant to Rule 701. 658 F.3d at 1213. The Tenth Circuit reversed. *Id.* at 1221-22. As the Tenth Circuit observed, "[t]he Rule 702 advisory committee's note states that landowners testifying to land value are 'skilled witnesses' under Rule 702." *Id.* at 1214. Thus, the district court, having found the landowner's testimony inadmissible under Rule 702, "erroneously admitted [the testimony] under Rule 701." *Id.* at 1222.

Mr. Niemi's testimony is not admissible under Rule 701. Because, as shown above, Mr. Niemi's testimony also is inadmissible under Rule 702, he cannot be allowed to testify regarding valuation of the Breckenridge properties.

## CONCLUSION

For the foregoing reasons, Mr. Lasshofer and the Innovatis entities respectfully request that the Court grant their objections, order that Mr. Niemi cannot testify as an expert or lay witness regarding valuation, and rule that the valuation opinions Mr. Niemi seeks to offer are inadmissible.

Dated: May 30, 2013.

Respectfully submitted,

By: *s/Kevin D. Evans*

Kevin D. Evans
Phillip L. Douglass
STEESE, EVANS & FRANKEL, P.C.
6400 S. Fiddlers Green Circle
Suite 1820
Denver, Colorado 80111
Telephone: 720.200.0676
Facsimile: 720.200.0679
Email: kdevans@s-elaw.com
pdouglass@s-elaw.com

Attorneys for Defendants
ERWIN LASSHOFER, INNOVATIS GmbH, INNOVATIS IMMOBILIEN GmbH, and INNOVATIS ASSET MANAGEMENT, S.A.

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May, 2013, I caused the foregoing **OBJECTIONS OF DEFENDANTS ERWIN LASSHOFER, INNOVATIS GMBH, INNOVATIS IMMOBILIEN GMBH, AND INNOVATIS ASSET MANAGEMENT, S.A. TO PLAINIFFS' DESIGNATION OF JOHN NIEMI AS AN EXPERT WITNESS AND TO NIEMI'S OPINIONS, AND MOTION TO EXCLUDE SAME** to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following attorneys of record:

Robert N. Miller
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303.291.2300
Facsimile: 303.291.2400
Email: rmiller@perkinscoie.com

Christopher W. Madel
Bruce D. Manning
Aaron R. Thom
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612.349.8500
Facsimile: 612.339.4181
Email: cwmadel@rkmc.com
bdmanning@rkmc.com
arthom@rkmc.com

*s/Theresa Baksay*

Theresa Baksay