UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No.: 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

       Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH,
INNOVATIS ASSET MANAGEMENT, S.A.,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

       Defendants.

---

**SUBMISSION BY MR. LASSHOFER AND THE INNOVATIS ENTITIES
IN OPPOSITION TO PLAINTIFFS' REQUEST FOR RELIEF AND DAMAGES**

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00869-RBJ

JOHN NIEMI, ROBERT NAEGELE III, and JESPER PARNEVIK,

    Plaintiffs,

vs.

MICHAEL FRANK BURGESS, ERWIN LASSHOFER, INNOVATIS GMBH, INNOVATIS IMMOBILIEN GMBH, INNOVATIS ASSET MANAGEMENT SA, LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and BARRY FUNT,

    Defendants.

CREDIT SUISSE,

    Nominal Defendant.

---

REPORTER'S TRANSCRIPT
Hearing on Pending Motions

---

    Proceedings before the HONORABLE R. BROOKE JACKSON, Judge, United States District Court for the District of Colorado, commencing at 9 a.m., on the 26th day of March, 2013, in Courtroom A902, Alfred A. Arraj United States Courthouse, Denver, Colorado.

Proceeding Reported by Mechanical Stenography, Transcription Produced via Computer by Kara Spitler, RMR, CRR, 901 19th Street, Denver, CO, 80294, (303) 623-3080

1  Couple things I want to point out to that. First of
2  all, that's a central issue in the case that that brief
3  response to and our reply is not due yet, not due for sometime.
4  I think it's a critical, critical issue in the case.
5  But a couple of observations. Mr. Madel attaches to
6  that response information that under the United States is
7  clearly attorney/client communication. There are e-mails
8  attached to that between my client and Hogan Lovells. And,
9  Your Honor, I don't, I don't pretend to be --
10  THE COURT: You don't have to worry, because I didn't
11  read those.
12  MR. DOUGLASS: I just want to put on the record our
13  objection to, to those materials. And I'm trying to find out
14  under what processes those were obtained under Austrian law and
15  whether they comply; and we'll be very candid, if there's not
16  an attorney/client privilege, we'll let Your Honor know that.
17  THE COURT: What did those e-mails even have to do
18  with? 'Cause I did not read those e-mails.
19  MR. DOUGLASS: They have to do with communications
20  about events happening in the middle district of Florida.
21  THE COURT: Okay. You need not worry. I paid no
22  attention to that.
23  MR. DOUGLASS: Thank you, Your Honor.
24  THE COURT: I read the briefs. I didn't read those
25  e-mails. And your opportunity for reply is right now. That's

the Credit Suisse account.

We just needed to get this back to Your Honor so we could get this money as fast as we could. If I did something wrong, if I offended the Court, you have to hold that one on me; please don't hold that against my clients because that was essentially my call.

Thank you.

THE COURT: All right.

The Court is prepared to enter its rulings on the five pending motions.

Those rulings are based on the briefs, all of which I've read, the Court's experience with the case, and arguments of counsel.

I'll take them in the order in which they were filed.

First motion no. 83, the plaintiffs' motion for contempt and sanctions against the Lasshofer defendants. That motion is granted. The Court finds the Lasshofer defendants to be in contempt of this Court's order of June 1, 2012. In support of that order, the Court makes the following further findings:

First -- and I will get to this when I get to no. 171 -- the Court finds that it does have subject-matter jurisdiction of the case.

Second, and despite what the Lasshofer defendants say in their recent filings, the issue of standing and particularly

1  the issue of the nonassignability of this loan agreement to
2  plaintiffs' Niemi, Naegele, and Parnevik, did not come up when
3  this Court was going through all that it went through leading
4  up to and ultimately the issuance of the preliminary-injunction
5  order.  That, I presume, was because that technical argument
6  hadn't yet dawned on the Lasshofer defendants.  The light bulb,
7  apparently, finally went off because on June 5, 2012, the
8  Lasshofer defendants did bring the issue up, buried in their
9  so-called emergency motion for a stay on the very same day that
10 they filed a notice of appeal to the Tenth Circuit.  But the
11 Court never had any realistic opportunity to consider it before
12 issuing its preliminary injunction because it was never raised.
13 Whether or not the Tenth Circuit is going to address an issue
14 that was never raised in this court I leave to the circuit, but
15 that is how I see it.
16         So I have to consider it now, and I will, when I get
17 to 171.
18         The issue of the plaintiffs' informing the Tenth
19 Circuit that the June 1, 2012, preliminary-injunction order was
20 moot and essentially rendered unimportant, which is exactly how
21 I read the materials provided by the Lasshofer defendants, is
22 frustrating, as I have said.  However, it doesn't change the
23 fact that this Court issued an order it expected the plaintiff
24 to comply with it -- or the Lasshofer defendants to comply with
25 it.  They did not.  They still have not.  And that is contempt,

1  studied the Tenth Circuit's decision in <u>Pinson vs. Pacheco</u>, 424
2  Fed.Appx 749 at 754, a 2011 decision by the Tenth Circuit.  And
3  <u>Fairchild Semiconductor Corp., vs. Third Dimension</u>
4  <u>Semiconductor</u>, reported at 2009 WL 790105 Fed Circuit,
5  March 25, March 23, 2009, all of those to try to figure out
6  what this Court can do and what the Court cannot do because of
7  the pending appeal.
8  　　　　　And I'm satisfied that the bridge of summary -- of
9  subject-matter jurisdiction has long since been crossed, for
10 better or for worse.  Again, because it was never raised but
11 here it is and the Court feels that it can and must act upon
12 it.
13 　　　　　That being said, the Court is unpersuaded that the
14 no-assignment clause in the loan agreement has much of anything
15 to do with the dispute in this case, for several reasons.
16 　　　　　First, in its June 1, 2012 preliminary-injunction
17 order, the Court found that Mr. Niemi and Mr. Parnevik
18 personally put up the $2 million up-front collateral deposit.
19 You can find that in the order, which is docket no. 50 at
20 page 7.
21 　　　　　Next, this is a lawsuit under COCCA and RICO, not a
22 breach-of-the-loan-agreement lawsuit.  That is the essence of
23 it.  The Lasshofer defendants themselves are not parties to the
24 loan agreement.  But the issue isn't the loan agreement.  The
25 issue is whether the Lasshofer defendants, in conspiracy with

Burgess and in violation of COCCA and RICO, bilked Niemi, Naegele, and Parnevik out of at least $2 million in up-front money, $2.18 million to be more exact, and that can be decided completely apart from the loan-agreement issues.

In addition, to the extent that the loan agreement is relevant, although I think it is not, but to the extent that it is relevant to standing, the Court finds that there is an inherent inconsistency in the loan agreement between the no-assignment clause on the one hand and the definition of the term "borrower" which is defined to include "successors and assigns" on the other hand.

That inconsistency creates an ambiguity. When there is an ambiguity in the document, the first -- the Court is first required to attempt to determine the intent of the parties. The Court finds that the intent of the parties here is clear. There is ample evidence that the Lasshofer defendants knew full well and intended that the money was coming from Niemi and from Niemi and his partners and was not the least bit concerned about the formality of the partnerships Azco and Azco.

But to the extent that the intent of the parties cannot be gleaned -- and it's somewhat difficult because the Lasshofer defendants have stonewalled discovery concerning that issue, among others -- to the extent that the actual intent of the parties cannot be determined on the record, then the Court

```
 1   conference two or three weeks before the trial date.
 2           THE COURTROOM DEPUTY:  March 14 at one o'clock.
 3           THE COURT:  Okay.
 4           Done.
 5           Thank you.
 6       (Recess at 9:51 a.m.)
 7                       REPORTER'S CERTIFICATE
 8           I certify that the foregoing is a correct transcript
 9   from the record of proceedings in the above-entitled matter.
10   Dated at Denver, Colorado, this 29th day of March, 2013.
11
12                               s/Kara Spitler_____
                                     Kara Spitler
13
```