UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No.: 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

   Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH,
INNOVATIS ASSET MANAGEMENT, S.A.,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

   Defendants.

---

**SUBMISSION BY MR. LASSHOFER AND THE INNOVATIS ENTITIES
IN OPPOSITION TO PLAINTIFFS' REQUEST FOR RELIEF AND DAMAGES**

**EXHIBIT 3**

# LOAN AGREEMENT

dated as of December 7, 2009

between

**AZCO LLC and AZCO II LLC**
as Borrower

and

**PROSPERITY INTERNATIONAL, LLC.**
as Lender

## LOAN AGREEMENT

LOAN AGREEMENT dated as of December 7, 2009 (as the same may be modified, supplemented, amended or otherwise changed, this "*Agreement*" or "*Loan Agreement*") between **AZCO LLC**, a Colorado limited liability company and **AZCO II LLC**, a Colorado limited liability company, (collectively, together with its permitted successors and assigns, "*Borrower*"), and **PROSPERITY INTERNATIONAL LLC**, a Florida limited liability company (together with its successors and assigns, "*Lender*").

1. **DEFINITIONS; PRINCIPLES OF CONSTRUCTION**

    1.1   Specific Definitions. The following terms have the meanings set forth below:

    1.1.1   **Key Terms and Definitions**.

    *Borrower Representative*: Mesalex, LLC, a Colorado limited liability company.

    *Correspondent Fee*: means the fee payable to Essex Investment Partners, LLC as set forth in Section 2.6.2 hereto.

    *Guarantor*: Mesalex, LLC, a Colorado limited liability company.

    *Interest Rate*: for any Interest Period and from the date of a partial Escrow Deposit pursuant to Section 2.1.2(a), eight percent (8.00%) per annum, fixed (or, when applicable pursuant to this Agreement or any other Loan Document, the Default Rate).

    *Manager*: Such Property Manager as Borrower may designate and approved by Lender.

    *Principal*: Maximum original principal amount of up to $220,000,000.00 or so much thereof as advanced and outstanding from time to time.

    *Property*: the parcel or parcels of real property and Improvements thereon owned by Borrower and encumbered, or to be encumbered, by the Mortgage; together with all rights pertaining to such real property and Improvements, and all other collateral for the Loan as more particularly described in the Granting Clauses of the Mortgage and referred to therein as the Mortgaged Property or Trust Property. The Property is located in Breckenridge, Colorado.

    *Stated Maturity Date*: December 10, 2014, as the same may be extended pursuant to Section 2.7.

    1.1.2   **Additional Terms and Definitions**.

    *Act:* The Colorado Common Interest Ownership Act, Colorado Revised Statutes §§38-33.3-101 through 38-33.3-319, as the same may be amended from time to time.

    *Administrative Agent*: Essex Investment Partners, LLC.

filing of any financing statement, and mechanic's, materialmen's and other similar liens and encumbrances.

*Line Item*: each category of Hard Costs and Soft Costs set forth in the Construction Budget.

*Loan Documents*: this Agreement and all other documents, agreements and instruments now or hereafter evidencing, securing or delivered to Lender in connection with the Loan, including, but not limited to, the following, each of which is dated as of the date hereof unless specified otherwise: (i) the Note or Notes in the form of Schedule 2 hereto made by Borrower to Lender in the aggregate principal amount equal to the Loan (the "*Note*"), (ii) the Mortgage, Assignment of Leases and Receipts and Security Agreement made by Borrower (or the Deed of Trust, Assignment of Leases and Receipts and Security Agreement made by Borrower to a trustee, as the case may be) to be given by Borrower in favor of Lender or Lender's nominee which covers the Property (the "*Mortgage*"), (iii) Assignment of Leases and Receipts to be given by Borrower to Lender or Lender's nominee, (iv) Assignment of Agreements, Licenses, Permits and Contracts to be given by Borrower to Lender, (v) the Deposit Account Agreement (the "*Deposit Account Agreement*") among Borrower, Lender, Manager and the Deposit Bank to be entered into on or about the time of Final Completion, (vi) the Guaranty of Recourse Obligations made by Guarantor (the "*Guaranty*"), (vii) the Construction Completion Guaranty to be made by Guarantor, (viii) the Escrow Account Agreement and (ix) the Post Closing Agreement from Borrower in favor of Lender (the "*Post Closing Agreement*"); as each of the foregoing may be (and each of the foregoing defined terms shall refer to such documents as they may be) amended, restated, replaced, supplemented or otherwise modified from time to time.

*Major Contractor*: any contractor hired by Borrower, including, without limitation, the General Contractor, supplying labor or materials, or both, in connection with the Project which is for an aggregate contract price equal to or greater than $250,000.00, whether pursuant to one contract or agreement or multiple contracts or agreements, after taking into account all change orders, or which relates to major project elements such as steel, concrete, HVAC systems, windows, doors and other similar items.

*Major Contracts*: any contract with a Major Contractor or Major Subcontractor.

*Major Subcontractor*: any subcontractor supplying labor or materials, or both, in connection with the Project which is for an aggregate contract price equal to or greater than $100,000.00, whether pursuant to one contract or agreement or multiple contracts or agreements, after taking into account all change orders, or which relates to major project elements such as steel, concrete, HVAC systems, windows, doors and other similar items.

*Management Agreement*: the management agreement to be entered into between Borrower and Manager in such form as is approved by Lender, pursuant to which Manager is to manage the Property, as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time in accordance with Section 5.9.

*Material Agreements*: means each contract and agreement relating to the ownership, management, development, use, operation, leasing, maintenance, repair or

7

*Transfer*: any sale, conveyance, transfer, lease or assignment, or the entry into any agreement to sell, convey, transfer, lease or assign, whether by law or otherwise, of, on, in or affecting (i) all or part of the Property (including any legal or beneficial direct or indirect interest therein), or (ii) any direct or indirect interest in Borrower (including any profit interest) or (iii) any direct or indirect interest in Borrower Representative or Guarantor.

*UCC*: the Uniform Commercial Code as in effect in the State or the state in which any of the Cash Management Accounts are located, as the case may be.

*Welfare Plan*: an employee welfare benefit plan, as defined in Section 3(1) of ERISA.

1.2   **Index of Other Definitions.** An index of other terms which are defined in this Agreement or in other Loan Documents is set forth on Schedule 1.

1.3   **Principles of Construction.** Unless otherwise specified, (i) all references to sections and schedules are to those in this Agreement, (ii) the words "hereof," "herein" and "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular provision, (iii) all definitions are equally applicable to the singular and plural forms of the terms defined, (iv) the word "including" means "including but not limited to," and (v) accounting terms not specifically defined herein shall be construed in accordance with GAAP.

2.   **GENERAL LOAN TERMS**

   2.1   **The Loan.**

      2.1.1   **Loan Amount.**

         (a)   Subject to all of the terms, representations, warranties, covenants and conditions in this Agreement, Lender is making a loan (the "Loan") to Borrower on the date hereof, in the original principal amount of up to $220,000,000.00, which Loan shall mature on the Stated Maturity Date. The proceeds of the Loan shall be used to (i) repay and discharge existing loan(s) relating to the Property, (ii) pay (or reimburse Borrower for) transaction costs including the fees paid by Borrower to any party relating to the use of the Securities (including the Collateral Deposit and the Monthly Fee Payments, each as defined in subsection 2.1.1(b) below), (iii) pay for all or part of the Costs, (iv) pay interest on the unpaid outstanding Principal prior to the Substantial Completion of the Project, (v) to pay for the cost of purchasing or redeeming certain direct or indirect equity interests in Borrower and (vi) following Final Completion of the Project, fund a debt service reserve. No amount repaid in respect of the Loan may be reborrowed.

         (b)   **Securities.** In consideration of (i) an upfront payment of $750,000.00 (the "*Initial Deposit*") to be received by Lender on the date hereof, (ii) a subsequent payment of $1,250,000.00 (the "*Subsequent Deposit*" and, together with the Initial Deposit, the "*Collateral Deposit*") to be received by Lender within three (3) International Banking Days of the date hereof, and (iii) commencing on the date of the First Escrow Deposit, a monthly fee of $566,666.66 payable monthly for a period of twelve (12) consecutive months followed by a monthly fee of $458,333.33 payable monthly for a period of twelve (12) months (each, a "*Monthly Fee Payment*"), Lender hereby agrees that, upon receipt of the Collateral Deposit from Borrower,

all excess amounts theretofore collected by Lender shall be credited against the unpaid Principal and all other Debt (or, if the Debt has been or would thereby be paid in full, refunded to Borrower), and the provisions of the Loan Documents immediately be deemed reformed and the amounts thereafter collectible thereunder reduced, without the necessity of the execution of any new document, so as to comply with applicable law, but so as to permit the recovery of the fullest amount otherwise called for thereunder. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate from time to time in effect and applicable to the Debt for so long as the Debt is outstanding. Notwithstanding anything to the contrary contained in any Loan Document, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

**10.18  Conflict; Construction of Documents.** In the event of any conflict between the provisions of this Agreement and any of the other Loan Documents, the provisions of this Agreement shall control. The parties hereto acknowledge that each is represented by separate counsel in connection with the negotiation and drafting of the Loan Documents and that the Loan Documents shall not be subject to the principle of construing their meaning against the party that drafted them.

**10.19  No Third Party Beneficiaries.** The Loan Documents are solely for the benefit of Lender and Borrower and nothing contained in any Loan Document shall be deemed to confer upon anyone other than the Lender and Borrower any right to insist upon or to enforce the performance or observance of any of the obligations contained therein.

**10.20  Intentionally Deleted.**

**10.21  Assignment.** The Loan, the Note, the Loan Documents and/or Lender's rights, title, obligations and interests therein may be assigned by Lender and any of its successors and assigns to any Person at any time in its discretion, in whole or in part, whether by operation of law (pursuant to a merger or other successor in interest) or otherwise. Upon such assignment, all references to Lender in this Loan Agreement and in any Loan Document shall be deemed to refer to such assignee or successor in interest and such assignee or successor in interest shall thereafter stand in the place of Lender. Borrower may not assign its rights, title, interests or obligations under this Loan Agreement or under any of the Loan Documents.

**10.22  Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

**10.23  Failure to Satisfy Post Closing Requirements.** Borrower and Lender shall use good faith efforts to complete the remaining Loan Documents and finalize all other requirements contained in the Post Closing Agreement as soon as is reasonably practical. In the event such requirements are not met despite the good faith efforts of the parties, or otherwise waived by the parties, within one hundred twenty (120) days from the date of this Agreement, then (i) the Loan Documents shall terminate, (ii) the Debt, to the extent it has been registered, shall automatically be cancelled, (iii) NMRS (as defined in the Escrow Account Agreement), shall, if applicable,

immediately record the Satisfaction of Lien (form attached hereto and made a part hereof) and the UCC Terminations (as defined in the Escrow Account Agreement) and (iv) Escrow Agent shall release and pay to Borrower (to the extent any funds remain in the Escrow Account) from the Escrow Account an amount equal to fifty percent (50%) of the remaining balance in the Escrow Account.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Loan Agreement to be duly executed by their duly authorized representatives, all as of the day and year first above written.

        **AZCO LLC,**
        a Colorado limited liability company

        By: _____
        Name: John D. Niemi
        Title: Managing Member

        **AZCO II LLC,**
        a Colorado limited liability company

        By: _____
        Name: John D. Niemi
        Title: Managing Member

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

PROSPERITY **INTERNATIONAL LLC**
a Florida limited liability company,

By: _____
   Name:   Michael Burgess
   Title:   Managing Member