**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

    Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

    Defendants,

CREDIT SUISSE A.G.,

    Nominal Defendant.

---

**CREDIT SUISSE AG'S HEARING MEMORANDUM RE: PLAINTIFFS'
REQUEST FOR ORDER COMPELLING TURNOVER OF ACCOUNT FUNDS**

---

Nominal Defendant Credit Suisse AG ("Credit Suisse"), by and through its undersigned counsel, submits this memorandum in connection with the June 7, 2013 hearing regarding Plaintiffs' asserted damages and request for an order requiring Credit Suisse to transfer funds of the Lasshofer Defendants to the Court's registry pursuant to Fed. R. Civ. P. and C.R.C.P. 69.

# I.
# SUMMARY

In April 2013, Plaintiffs moved for default judgment against the Lasshofer Defendants. Doc. 190 ("Motion") at 2. In the Motion, Plaintiffs limited their request for relief against Credit Suisse to an order requiring transfer of funds belonging to the Lasshofer Defendants held in Credit Suisse accounts located in Switzerland to the Court registry pursuant to Fed. R. Civ. P. 69(a) and C.R.C.P. 69(g). *Id.* at 13-14. Credit Suisse respectfully requests that this Court deny Plaintiffs' request for a turnover order.

Plaintiffs' request is premised entirely on the Tenth Circuit's opinion in *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1236 (10th Cir. 2000). *Id.* at 13. Plaintiffs' reliance on *Wharf Holdings* is misplaced. While affirming a turnover order in that case, the Tenth Circuit specifically recognized the violation of foreign law to be "a compelling reason" for a turnover request to be denied. 210 F.3d at 1236. Here, unlike the situation in *Wharf*, compliance by Credit Suisse with a transfer order would be a violation of Swiss law as reflected in the letter of Ambassador Manuel Sager dated May 21, 2013 (Doc. 216, copy attached as Exhibit 1). While Plaintiffs may be entitled to a monetary judgment in this action, to the extent Plaintiffs seek enforcement of that judgment against funds held by Credit Suisse, enforcement should occur pursuant to customary international law and Swiss enforcement procedures as reflected in Ambassador Sager's letter.

To the extent Plaintiffs assert avenues of relief against Credit Suisse beyond Rules 69, such relief is limited to that available pursuant to COCCA, the claim under which Plaintiffs sought default judgment and statutory damages. Motion at 10-11. As Credit Suisse has previously addressed in its Response to Plaintiffs' Motion for Summary Judgment (Doc. 161),

the injunctive relief authorized by COCCA in C.R.S. § 18-17-106 does not include mandatory injunctive relief to enforce a damages judgment for past violations. Moreover, even if COCCA could be construed to permit such relief, COCCA expressly requires any such relief to make "due provision for the rights of innocent persons." Because any transfer order would cause both Credit Suisse and its employees to violate Swiss law, it fails COCCA's explicit requirement for protection of innocent persons and should be denied.

Finally, in recent filings, Plaintiffs argue that Credit Suisse has inconsistently asserted the applicability of Swiss law in this action. To the contrary, Credit Suisse has raised the applicability of the same Swiss laws cited by Ambassador Sager from the very beginning of this case, and its assertions have been consistent with the position that has now been confirmed by the Swiss government. What Plaintiffs characterize as inconsistency (or even bad faith) has in fact been Credit Suisse's efforts to honor United States law and directions of this Court to the greatest extent possible while remaining in compliance with laws of its home country.

For these reasons, Credit Suisse respectfully asks this Court to once again recognize the important matters raised by Ambassador Sager, to deny Plaintiffs' request for a turnover order against Credit Suisse, and to direct Plaintiffs to seek satisfaction of any judgment through funds held by Credit Suisse pursuant to the Swiss judgment recognition and enforcement procedures outlined by Ambassador Sager.

## II.
## APPLICABLE SWISS LAWS

The Swiss laws implicated by Plaintiffs' turnover request include those addressed in Ambassador Sager's letters dated May 21, 2013 (Doc. 216, Exhibit 1) and May 1, 2013 (Doc. 204) and in the declarations of Credit Suisse's Swiss law experts (Docs. 124-2, 133, 166-1).

Copies of the official (German) and English translations of the Swiss laws principally implicated by the turnover request are attached hereto as Exhibits 2-5. Credit Suisse has previously provided copies of all of these laws to the parties. Credit Suisse will present evidence concerning these laws at the June 7 hearing.

## III.
## ARGUMENT AND AUTHORITY

**A.   PLAINTIFFS' REQUEST FOR A TURNOVER ORDER PURSUANT TO FED. R. CIV. P. 69(a) AND C.R.C.P. 69(g) SHOULD BE DENIED ON PRINCIPLES OF COMITY.**

As Plaintiffs have not yet obtained a final money judgment on the Lasshofer Defendants' default, Plaintiffs' requested relief against Credit Suisse pursuant to Fed. R. Civ. P. 69(a) and C.R.C.P. 69(g) is still premature. *See* C.R.C.P. 62 (execution on a judgment is automatically stayed until the expiration of 14 days after its entry).

Setting aside issues of timeliness, Credit Suisse does not dispute that C.R.C.P. 69(g), via Fed. R. Civ. P. 69(a), permits a court to order a third party to turn over funds to satisfy a money judgment. As Plaintiffs recognize, however, an order pursuant to C.R.C.P. 69(g) is discretionary: "The court, master, or referee *may* order any party or other person over whom the court has jurisdiction, to apply any property other than real property, . . . towards satisfaction of the judgment." (emphasis added).

Plaintiffs cite *Wharf Holdings* for the argument that Rule 69 permits a court's foreign assets to be transferred to the U.S. after judgment enters. Motion at 13-14. Rather than supporting Plaintiffs' request for relief against Credit Suisse, the Tenth Circuit's opinion in *Wharf* demonstrates why the requested turnover order should be denied here.

In *Wharf,* following a lengthy trial finding violations of Colorado securities laws, the district court ordered the substantive defendant to turn over $150 million in assets located in Hong Kong and Singapore to the clerk of court under C.R.C.P. 69(g).  210 F.3d at 1234-36.  On appeal, the defendant argued that the turnover order violated principles of comity, but the Tenth Circuit rejected that argument, finding that compliance with the order would not result in a violation of foreign law.  In rejecting the comity argument under the facts of that case, the Tenth Circuit reasoned that "Wharf has not offered a compelling reason to justify overruling the turnover order on comity grounds.  Compliance with the turnover order did not require Wharf to violate Hong Kong law, nor did it preclude Wharf from satisfying its obligations elsewhere."  *Id.*  Notably, the Tenth Circuit specifically recognized that the principle of comity *would* justify a court's denial of relief pursuant to C.R.C.P. 69(g) with respect to assertions of sovereignty under international law: "Comity 'counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law.'"  *Id.* (quoting *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 8 (1st Cir. 1997)).

Here, as Credit Suisse has always stated, any turnover order, whether under C.R.C.P. 69(g) or otherwise, would require both Credit Suisse and its employees to violate Swiss law.  Through Ambassador Sager, the Government of Switzerland has submitted official statements confirming what Credit Suisse has previously asserted: (a) that under Article 271 of the Swiss Criminal Code, it is unlawful for any person in Switzerland to carry out "activities on behalf of a foreign state on Swiss territory without lawful authority, where such activities are the responsibility of a public authority or public official"; (b) that enforcement of judgments against

assets located in Switzerland is a matter that is the responsibility of Swiss public authorities; (c) that a turnover order directly against Credit Suisse "would not be recognized and could not be enforced under Swiss law"; (d) that a person who complies with a United States transfer order without Swiss authorization risks violating Swiss criminal law; and (e) that direct enforcement of a United States transfer order against a bank account in Switzerland would "conflict with Swiss sovereignty." Exhibit 1 at 1-2, Doc. 204, 5/1/2013 Letter at p. 2, n. 1. The facts in *Wharf* are nothing like the facts here. The plaintiff in *Wharf* sought a turnover order against a substantive defendant who had been found to violate U.S. securities laws and the turnover order would not have violated foreign law. The requested turnover order here is against a nominal defendant of a foreign nation whose government has made clear the order would violate the foreign nation's law. Under the reasoning of *Wharf,* the Plaintiffs' Rule 69 request, as directed to Credit Suisse, should be denied.[1]

---

[1] Courts have considered it not only relevant but highly significant that a foreign government has expressed a view on the effect under the foreign law at issue of a potential United States judicial order. *See, e.g.*, *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 525 (S.D.N.Y. 1987). The Tenth Circuit's analysis in *Wharf* and acknowledgement that principles of comity should be applied to avoid violation of foreign laws are consistent with similar reasoning in Supreme Court precedent. *See, e.g.*, *United States v. First National City Bank*, 379 U.S. 378, 384 (1965) (recognizing that "overseas transactions are often caught in a web of extraterritorial activities and foreign law beyond the ken of [the] federal courts" but rejecting the defendant's comity argument because there was no showing that requested relief "would violate foreign law" or put the defendant "under any risk of double liability." *Id.*, *citing Societe Internationale v. Rogers*, 357 U.S. 197, 211 (1958) and *Western Union Telegraph Co. v. Com. of Pennsylvania*, 368 U.S. 71 (1961); *Societe Nationale Industrielle Aerospatiale v. U.S. District Court,* 482 U.S. 522, 546 (1987) (directing that U.S. courts should "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of nationality or the location of its operations, and for any sovereign interest expressed by a foreign state.").

**B.     PLAINTIFFS' REQUEST FOR A TURNOVER ORDER AGAINST CREDIT SUISSE IS NOT AUTHORIZED BY COCCA.**

Plaintiffs previously have argued that "COCCA makes injunctive relief available to aggrieved persons who demonstrate threat of loss or damage," which may be invoked "to aid Plaintiffs in collecting their judgment." Doc. 151, Plaintiffs' Motion for Summary Judgment, at 25. As addressed in Credit Suisse's summary judgment filings, the language of COCCA permits entry of prohibitory injunctive relief only to restrain ongoing racketeering activities prohibited by COCCA section 18-17-104. Doc. 161 at 18 (citing C.R.S. § 18-17-106(1)). Nothing in COCCA's provisions authorizes a Court to order mandatory injunctive relief against a third party to transfer assets to enforce a judgment for wrongs that occurred in the past, such as the asserted racketeering activities in this case that occurred in 2009 and 2010. Moreover, even if COCCA could be construed to authorize permanent mandatory injunctive relief in the form of a turnover order, COCCA expressly mandates that any injunctive relief ordered by a court must "mak[e] due provision for the rights of innocent persons." C.R.S. § 18-17-106(1). As a nominal defendant, Credit Suisse is an innocent party which has been brought into this lawsuit simply by virtue of being the banking institution chosen by Defendant Innovatis. Any transfer/turnover order entered pursuant to COCCA would harm the rights of innocent parties Credit Suisse and its employees and is thus prohibited by section 18-17-106(1).[2]

---

[2]     To the extent Plaintiffs have asserted other grounds for a turnover order against Credit Suisse, those grounds are addressed in detail in Credit Suisse's summary judgment filings (Docs. 161 and 177).

### C.  CREDIT SUISSE'S SWISS LAW ASSERTIONS IN THIS ACTION HAVE BEEN CONSISTENT AND IN GOOD FAITH.

There is no dispute in this action that: (a) Credit Suisse is a banking institution that is based in and governed by the laws of Switzerland; or (b) the Innovatis Credit Suisse account at issue is held at Credit Suisse's banking headquarters in Zurich.  From the very beginning of this case, Credit Suisse has asserted that the turnover and other relief requested by Plaintiffs directly against Credit Suisse would implicate Swiss law and would cause not only Credit Suisse, but its employees, to violate specific Swiss laws carrying criminal penalties.  *See* Doc 100, 7/30/2012 TRO Hearing Transcript at 51:13-52:6; Doc. 124-2, Reichart/Meier Declaration filed 9/21/2012; Doc. 133, Reichart/Meier Declaration filed 10/12/2012; Doc. 134-1, Reichart/Meier Declaration filed October 15, 2012; and Doc. 166-1, Reichart/Meier Declaration filed 3/5/2013.  The statements of Drs. Reichart and Meier regarding the applicable Swiss laws are fully consistent with the position of the government of Switzerland as expressed by Ambassador Sager in his May 1, 2013 and May 21, 2013 letters to this Court (Docs. 204 and 216 (Exhibit 1)).

Plaintiffs have argued in recent filings that Credit Suisse's actions in this case have been inconsistent or contradictory and, therefore, this Court should disregard the comity principles and Swiss sovereignty concerns addressed above and by Ambassador Sager.  *See, e.g.,* Plaintiffs' Motion to Compel filed 5/14/2013 (Doc. 206).  Rather than acting nefariously as Plaintiffs suggest, Credit Suisse has simply been attempting to observe and respect the laws of the United States and authority of this Court in light of the fact that it is a Swiss entity whose ability to operate is governed by Swiss law.  At the end of the day, Credit Suisse requests no more than what the government of Switzerland has asked – that to the extent Plaintiffs seek to enforce their

judgment against assets held by Credit Suisse, they do so by the means recognized and permitted under Swiss law.

Dated: June 4, 2013            *s/ Kathleen E. Craigmile*

Kathleen E. Craigmile
Jeffrey H. McClelland
BENNINGTON JOHNSON
BIERMANN & CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202

Julie North
Justine Beyda
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  212-474-1752

*Attorneys for Nominal Defendant Credit Suisse A.G.*

## CERTIFICATE OF SERVICE

      I hereby certify that, on June 4, 2013, a copy of the foregoing **CREDIT SUISSE AG'S HEARING MEMORANDUM RE: PLAINTIFFS' REQUEST FOR ORDER COMPELLING TURNOVER OF ACCOUNT FUNDS** was served on the following parties via the CM/ECF filing system:

Christopher William Madel
Bruce D. Manning
Aaron R. Thom
Robins, Kaplan, Miller & Ciresi, LLP
800 LaSalle Avenue
LaSalle Plaza, #2800
Minneapolis, MN 55402-2015

Kevin D. Evans
Phillip L. Douglass
Steese, Evans & Frankel, PC-Denver
6400 South Fiddlers Green Circle, #1820
Denver, CO 80111

Robert Nolen Miller
Perkins Coie LLP
1900 16th Street, #1400
Denver, CO 80202-5255

                                  *s/ Sabrina D. Johnston*