

Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

Embassy of Switzerland in the United States of America

The Honorable R. Brooke Jackson
United States District Court for
the District of Colorado
Alfred A. Arraj Courthouse
901 19th Street
Denver, CO 80294

Your reference:
Your message of:
Our reference: 432 0-HVO

Washington, D.C., May 21, 2013

Re: Case No. 1:12-cv-00869-RBJ: Niemi et al. v. Burgess et al.

Dear Judge Jackson:

The Government of Switzerland understands that the Court in the above-referenced case has previously asked Credit Suisse to freeze accounts of the defendants, and is now considering, at the request of the plaintiffs, to issue an order requiring the bank to transfer funds held in those accounts to the Court. I am writing to inform you of the views of the Government of Switzerland on this matter.

I emphasize, as I have previously, that the Government of Switzerland has no independent knowledge of, and takes no position on, the underlying merits of the case between the plaintiffs and defendants.

On May 1, 2013. I sent a letter to you explaining the requirements of Swiss law and the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters of March 18, 1970. As explained in that letter, to the extent that a U.S. court order would direct the disclosure of confidential information from Switzerland, the order would conflict with Swiss sovereignty, and persons attempting to carry out the order would risk prosecution under Articles 273 of the Swiss Penal Code of December 21, 1937 and Article 47 of the Federal Law on Banks and Savings Banks of November 8, 1934.

The proposed order that would require the transfer of funds from Switzerland to the Court raises additional concerns.

Under customary international law, jurisdiction to enforce judgments against assets held within a country is limited to that country. A foreign court may not directly compel enforcement of judgments or attach assets within another country. To the extent that the current freeze order or the requested order to transfer assets are directed at assets within Switzerland, they would be inconsistent with customary international law and conflict with Swiss sovereignty. Such orders, on their own, would not be recognized and could not be enforced under Swiss law. The acts of freezing or transferring the funds under these circumstances potentially would result in violations of Article 271 of the Swiss Criminal Code.

2900 Cathedral Ave. NW
Washington, D.C. 20008-3499
Phone: (202) 745 7900, Fax: (202) 387 2564
was.vertretung@eda.admin.ch, www.swissemb.org

Exhibit 1

Specifically, any person who attempts to enforce orders of a foreign country within Switzerland without the authorization of the Swiss authorities or outside the procedures of the Hague Convention risks violating Swiss criminal law. Even when compulsory measures are taken outside the territory of Switzerland, Swiss sovereignty is affected, due to the fact that a person is forced by foreign authorities to act within Switzerland.

Customary international law and national sovereignty of course do not preclude the enforcement of foreign judgments. Rather, they require that the domestic law of the country where the assets are located be followed in seeking enforcement and attachment.

In Switzerland, both the requirements for recognition of a foreign judgment and the procedure for enforcing money judgments are governed by federal law. The recognition requirements are set out in articles 25-27 of the Federal Act on Private International Law of December 18, 1987 (PIL Act). The procedure to enforce a foreign money judgment is set out in the Federal Act on Bankruptcy and Debt Collection of April 11, 1889 (Debt Collection Act). Articles 271-281 of the Debt Collection Act provide for the ex parte attachment and garnishment of a party's property particularly if "the debtor does not live in Switzerland, provided the claim has a sufficient connection with Switzerland or is based on a recognition of debt pursuant to article 82 paragraph 1." (Art. 271(1)(4)). A final judgment of a foreign court qualifies as a "recognition of debt pursuant to article 82 paragraph 1". In determining whether the debt is based on a final judgment, the competent Swiss judge would need to establish that the U.S. judgment is recognizable under articles 25-27 of the PIL Act. The assets in question could then be ordered frozen, after which the defendant would receive an opportunity to be heard. After the attachment, the creditor may proceed to the execution of the judgment by collecting any funds belonging to the debtor in Switzerland to the extent they are needed to satisfy the judgment. Accordingly, Swiss law allows for the recognition and enforcement of U.S. monetary judgments, provided that the applicable Swiss procedures are followed. This would not be the case if a foreign court were to order a bank to transfer funds from bank accounts in Switzerland. Such an order would represent an enforcement measure reserved to the competent Swiss courts.

On behalf of the Government of Switzerland, I respectfully urge you to avoid creating a conflict between the legal requirements of the United States and Switzerland by declining to enter the proposed order.

Sincerely,

THE AMBASSADOR OF SWITZERLAND

Manuel Sager

cc:

Christopher William Madel
Bruce D. Manning
Robins, Kaplan, Miller & Ciresi, LLP
800 LaSalle Avenue
LaSalle Plaza, #2800

Minneapolis, MN 55402-2015

Robert Nolen Miller
Stephanie Erin Dunn
Perkins Coie LLP
1900 16th Street, #1400
Denver, CO 80202-5255

Kevin D. Evans
Phillip L. Douglass
Steese, Evans & Frankel, PC-Denver
6400 South Fiddlers Green Circle, #1820
Denver, CO 80111

Kathleen Craigmile
Bennington Johnson Biermann & Craigmile, LLC
370 17th Street, #3500
Denver, CO 80202

Julie Anne North
Cravath, Swaine & Moore LLP
825 Eighth Avenue
39th Floor
New York, NY 10019-7475 Sincerely,

U.S. Department of State
Swiss Desk

U.S. Department of Justice
Office of Foreign Litigation, Civil Division