**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge R. Brooke Jackson**

Civil Action No. 12-cv-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

      Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

      Defendants,

CREDIT SUISSE A.G.,

      Nominal Defendant.

---

**PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE CREDIT SUISSE AG**
**FROM INTRODUCING ANY EXPERT TESTIMONY AT JUNE 7 HEARING**

---

Credit Suisse has not complied with the expert disclosure requirements of FED. R.

CIV. P. 26(a)(2). Credit Suisse's refusal to make these disclosures puts Plaintiffs at a

significant disadvantage in responding to whatever Swiss-law-based arguments Credit

Suisse intends to make against Plaintiffs' requested transfer order at the upcoming June 7

hearing. Because Credit Suisse has refused to make rule-required disclosures, in addition to refusing to participate substantively in discovery, Plaintiffs respectfully request that this Court preclude Credit Suisse from introducing any expert testimony at the June 7 hearing.

FACTS

**A.    Credit Suisse's refusal to participate in discovery in this case**

In the interests of judicial economy, Plaintiffs will not recount Credit Suisse's refusal to provide Plaintiffs with substantive discovery in this case. Plaintiffs respectfully refer to their Motion to Compel Credit Suisse AG to Respond to Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents (Dkt. 206) at 2-7 for a full description of how Credit Suisse has stonewalled Plaintiffs while at the same time demanding and receiving substantial discovery from them.

**B.    Credit Suisse's noncompliance with expert disclosure rules**

One aspect of Credit Suisse's noncompliance with discovery rules and Orders that is particularly prejudicial to Plaintiffs is Credit Suisse's refusal to produce any expert disclosures to Plaintiffs. Credit Suisse provides no justification or explanation for this failure, but has only contended that "Rules 26(e)(2), 26(a)(3) and/or 26(a)(2)(D) . . . relate to disclosure of expert testimony before a trial and don't relate to disclosure before

a hearing such as the hearing on damages and post-judgment turnover that is set for June

7." (June 4, 2013 Declaration of Aaron R. Thom ("Thom Decl.") Ex. 1.)[1]

### C. This Court's rejection of Swiss-law arguments set forth in Credit Suisse declarations

On October 19, 2012, this Court rejected the arguments made by Credit Suisse's

Swiss attorney-experts regarding Credit Suisse's asserted fear that compliance with a

U.S. District Court order might violate Swiss law:

> The contrary argument in the balance of the equities that's been expressed, not in court here today, but in the papers filed by Credit Suisse, is that they face penalties under Swiss law if they obey any order this Court might issue and freeze those funds. There has been all this discussion of Swiss privacy laws, Swiss secrecy laws, and the like.

> The Court is not impressed in the slightest by any of that. There isn't any court order over there. All I've received is some opinions from lawyers hired by Credit Suisse about the effect of Swiss secrecy laws. There is no indication that Credit Suisse would be penalized for complying with the United States court order. There's no indication that Credit Suisse has any intention whatsoever of using any of these funds for its own benefit. I think this argument turns the Swiss laws on their ear and do not persuade this Court any more than they persuaded the court in the <u>State of Ohio vs. Arthur Andersen</u> case many years ago.

(10/19/2012 Prelim. Inj. H'ring Tr. at 112:8-24.)

### D. Credit Suisse informs Plaintiffs that it will not make expert disclosures.

On May 9, counsel for Plaintiffs informed counsel for Credit Suisse that Plaintiffs

had received no expert disclosures from Credit Suisse, and Plaintiffs asked whether

Credit Suisse intended to call any expert witnesses at the June 7 hearing. (*See* Thom

---

[1]     Through this exchange, Plaintiffs satisfied their D.C.COLO.LCivR 7.1 duty to confer.

Decl. Ex. 1.) Credit Suisse responded that its "witnesses may testify to the matters set forth in the several previously served declarations regarding issues of Swiss law," yet Credit Suisse refused to provide expert disclosures, stating, "Rules 26(e)(2), 26(a)(3) and/or 26(a)(2)(D) . . . relate to disclosure of expert testimony before a trial and don't relate to disclosure before a hearing such as the hearing on damages and post-judgment turnover that is set for June 7." (*Id.*) Credit Suisse represented to Plaintiffs that "to the extent that any of Credit Suisse's witnesses would testify in the form of opinions on June 7, those opinions would be limited to opinions that were set forth in the declarations of Drs. Reichart and Meier that were provided to Plaintiffs in or before October 2012." (Thom Decl. Ex. 1.)

Because Credit Suisse has refused to make expert disclosures, it is unclear who Credit Suisse intends to call to testify regarding the "opinions that were set forth in the declarations of Drs. Reichart and Meier." In making its FED. R. CIV. P. 26(a)(1) disclosures, Credit Suisse did not name Dr. Reichart or Dr. Meier as individuals that may have discoverable information, though it stated that Dr. Ina E. Hasdenteufel "is expected to have information concerning the consequences to Credit Suisse and its employees of complying with the injunctive relief sought against Credit Suisse." (Thom Decl. Ex. 2.) As Drs. Reichart and Meier did earlier in this litigation, Dr. Hasdenteufel might speculate on potential consequences that could result from complying with a Court order. Plaintiffs

simply cannot know, nor can they begin to prepare for, whatever opinion testimony

Credit Suisse plans to offer.

In its June 4, 2013 Hearing Brief, Credit Suisse again referred only vaguely to the

expert testimony it expects to present at the June 7 hearing. (Dkt. 217 at 4 ("Credit Suisse

will present evidence concerning these laws at the June 7 hearing.").)

ARGUMENT

**Credit Suisse's undisclosed Swiss law experts should be precluded from testifying because Credit Suisse has failed to comply with expert disclosure rules.**

Credit Suisse is not exempt from making expert disclosures, just as it not exempt

from complying with discovery rules. Yet Credit Suisse has refused to make any of the

expert disclosures required by FED. R. CIV. P. 26(a)(2). Credit Suisse's failure prejudices

Plaintiffs, as it renders them wholly unable to research, examine documents relied upon

or provided to the experts, or prepare a refutation of whatever argument Credit Suisse

intends to make against the relief Plaintiffs seek. Consequently, this Court should

preclude Credit Suisse from introducing any expert testimony on June 7. *See* FED. R. CIV.

P. 37(c).

**A.     Credit Suisse has failed to make required expert disclosures.**

Any witness "retained or specially employed to provide expert testimony in the

case" must be disclosed to the other parties, and the disclosure must be accompanied by

an expert report. FED. R. CIV. P. 26(a)(2). Expert witnesses that are not properly

disclosed, or who provide no expert report, are precluded from testifying at hearings or

5

trial. FED. R. CIV. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *see also, e.g.*, *United States v. Gushlak*, No. 03-CV-833 (NGG), 2012 WL 1379627, at *8 n.12 (E.D.N.Y. April 20, 2012) (noting that "[b]ecause this expert . . . had not prepared a report in anticipation of the hearing as required by previous court order, the court excluded his testimony from the first day of the [restitution] hearing"); *Witt v. Chesapeake Exploration, L.L.C.*, No. 2:10-cv-22-TJW, 2011 WL 2790174, at *3 (E.D. Tex. July 14, 2011) (holding that "[b]ecause Professor Silver's testimony at the class certification hearing must be limited to what is contained in his expert report, and because Professor Silver's current expert report contains only impermissible legal conclusions, the Court excludes Professor Silver from testifying as an expert at the class certification hearing in this case"); *Indymac Bank, F.S.B. v. Geneva Mortg. Corp.*, No. CV 07-1914 R (MANx), 2008 U.S. Dist. LEXIS 111854, at *2 (C.D. Cal. Dec. 30, 2008) (Thom Decl. Ex. 3) (stating that "GENEVA failed to provide an expert witness report with its expert witness designation in violation of Federal Rule of Civil Procedure 26(a)(2); holding that, "[a]s a result, GENEVA's retained expert witness Richard Payne, III is precluded from offering any testimony or evidence at trial or otherwise in this matter"). Credit Suisse has refused even to disclose who it intends to call as a witness on June 7, much less provide Plaintiffs with any expert report(s).

Plaintiffs are aware that "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence" for the purpose of "determining foreign law." FED. R. CIV. P. 44.1. But, importantly, Credit Suisse is not offering testimony that will be useful to this Court for the purpose of determining foreign law. As Credit Suisse has suggested, albeit vaguely, it will be attempting to show, through undisclosed expert witnesses, "the consequences to Credit Suisse and its employees of complying with the injunctive relief sought against Credit Suisse." (Thom Decl. Ex. 2.) This involves a fact question, i.e., the likelihood, as opposed to the legal possibility, that a Credit Suisse employee would face consequences for complying with an order. As a result, the projected testimony would go beyond helping this Court determine Swiss law (FED. R. CIV. P. 44.1) and would address the fact question of the likelihood that any Credit Suisse employee might actually be punished for complying with an order issued under the facts of this particular case (FED. R. CIV. P. 702). *See Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 197 (E.D.N.Y. 2010) (holding that "Defendant's 'weighty excuse' of fear of criminal prosecution, *see Societe Internationale*, 357 U.S. at 211, is not, alone, sufficient justification for defendant's production failures. On the contrary, there is nothing in the record indicating that defendant faces a *real risk of prosecution*.") (emphasis added), *appeal dismissed and petition for writ of mandamus denied*, 706 F.3d 92 (2d Cir. 2013).

The letter submitted to this Court by Swiss Ambassador Manuel Sager (Dkt. 216), dated May 21, 2013, underscores the uncertainty that anyone in Switzerland would risk prosecution for complying with the order Plaintiffs request. Mr. Sager writes:

> The acts of freezing or transferring the funds under these circumstances[2] *potentially* would result in violations of Article 271 of the Swiss Criminal Code.

(Dkt. 216 at 1 (emphasis added).) Mr. Sager's letter only reiterates the uncertainty that anyone (Mr. Sager does not say who) might face any type of repercussion in Switzerland for complying with this Court's orders.

Moreover, according to Mr. Sager's letter, Swiss Penal Code Article 271 is the only provision of Swiss law that could potentially have bearing on the order Plaintiffs request. Even assuming, *arguendo*, that Article 271 stood as a bar, courts in the United States have consistently held that "statutes like the Swiss law in this action [Article 271], do not deprive American courts of their power over parties subject to their jurisdiction." *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV-ZLOCH, 2008 WL 4487679, at *4 (S.D. Fla. Sept. 29, 2008); *see also In re Sealed Case*, 832 F.2d 1268, 1283 (D.C. Cir. 1987) (stating, in deciding applicability of Article 271, among other Swiss law provisions, "[t]he Swiss government, as *amicus curiae*, has indeed argued that any

---

2    Note that, according to Mr. Sager, "the Government of Switzerland has no independent knowledge of, and takes no position on, the underlying merits of the case between the plaintiffs and defendants." (Dkt. 216 at 1.) Mr. Sager's opinion should be accorded little weight under the well-established United States precedent that applicability of Swiss Penal Code Article 271 depends "'upon the circumstances of a given case.'" *United States v. Vetco Inc.*, 691 F.2d 1281, 1287 (9th Cir. 1981) (quoting *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 206 (1958)).

attempt to secure documents located in Switzerland and protected by Swiss secrecy laws

would trammel Swiss sovereignty and offend common notions of international

comity. . . . But the Witness has not cited any American decision adopting the Swiss

government's view, and in fact almost all courts that have ruled on this issue or similar

matters, such as the exclusivity of the discovery mechanisms contained in the Hague

convention on evidence, have squarely rejected it."); *In re Aspartame Antitrust Litig.*, No.

2:06-CV-1732-LDD, 2008 WL 2275531, at *4 (E.D. Pa. May 13, 2008) (granting motion

requiring Swiss defendant "to comply with Plaintiff's discovery requests as set forth in

the Federal Rules"; stating that "though Switzerland has an interest in managing

discovery within its borders, as expressed through Article 271, paragraph 1 of the Swiss

Penal Code, this 'blocking statute' is not dispositive of whether the Hague Convention

should be utilized") (footnote omitted); *Coca-Cola Foods v. Empresa Comercial*

*Internacional de Frutas S.A.*, No. 96-358-CIV-T-17C, 1997 WL 370121, at *7 (M.D. Fla.

June 12, 1997) (conclusively presuming personal jurisdiction over defendants who

refused to participate in discovery on basis of Article 271; holding that "[w]hile Swiss

case law can assist a U.S. court in understanding how Swiss courts interpret and apply

Swiss law, the fact remains that the submitted Swiss case is not controlling on this

Court's decision"); *Laitram Corp. v. Hale*, 438 So. 2d 269, 274 (La. Ct. App. 1983)

(rejecting Swiss defendant's argument that Articles 271 and 273 prohibited its

compliance with discovery orders; concluding, "It is obvious that defendants have not

made a good-faith attempt, or any attempt, to comply with the discovery requests. We are satisfied the district court had authority to order the defendants to comply, even if defendants were in good faith (they appear not to be) and a real danger of prosecution by the Swiss government were present (which is not apparent).").

What is more, Mr. Sager suggests that "freezing . . . funds" alone might generate criminal liability in Switzerland. (*Id.*) This further reveals the unlikelihood that anyone will be prosecuted for complying with a transfer order issued by this Court. Credit Suisse froze the funds in Innovatis' account in compliance with this Court's October 19 Order (*see* Dkt. 139), and it has since kept these funds frozen. (*See* Dkt. 140.) Yet Credit Suisse has not complained of any adverse consequences for doing precisely what Mr. Sager suggested could "potentially" violate Article 271. *Cf. Linde*, 269 F.R.D. at 199 (holding that Bank's asserted foreign-law objections to complying with order were not made in good faith, in part because, "[a]s far as this court knows, the Bank has not faced any repercussions as a result of its prior disclosures"). Nor has the Swiss Government, which has long been on notice of Credit Suisse's purported violation, taken any action. *Cf. Vetco*, 691 F.2d at 1287 (refusing to credit argument that Swiss law prohibited compliance with summons because the Swiss government did not take any action "even though the letters and affidavits filed reveal that the Swiss are not unaware of these proceedings"). Therefore, as Swiss law is vague, at best, on the point most crucial to Credit Suisse's argument, the testimony it intends to elicit at the June 7 hearing will

necessarily be in the form of hypothetical opinions, i.e., expert testimony, which Credit

Suisse, by its noncompliance with the Federal Rules of Civil Procedure, has rendered

untestable.

Moreover, FED. R. CIV. P. 44.1 does not permit a party to surprise an adversary with

undisclosed foreign law arguments, even if these arguments bear only upon determination

of foreign law. Indeed, it is well-established that "a party is entitled to discovery

regarding its adversary's foreign law expert, just as it is entitled to discovery regarding

any other kind of expert." *Silberman v. Innovation Luggage, Inc.*, No. 01 Civ. 7109

GELDF, 2002 WL 31175226, at *2 (S.D.N.Y. Sept. 30, 2002); *see also Bakalar v. Vavra*,

851 F. Supp. 2d 489, 494 (S.D.N.Y. 2011) (denying Defendants' request to reopen expert

discovery after court excluded foreign-law expert's report from the record in bench trial;

concluding that Defendants' foreign-law expert's reports were not timely disclosed

because although "Defendants had ample opportunity to support their claims with expert

testimony, they failed to exercise diligence in obtaining discovery within the parameters

established by this Court"); *Schablonentechnik v. MacDermid Graphic Arts, Inc.*, No.

1:02-CV-2585-ODE, 2005 WL 5974438, at *4 (N.D. Ga. June 21, 2005) (granting

motion to preclude Austrian- and Swiss-law experts and their reports; stating that

"Plaintiff offers no case law or other logical support for the proposition that Rule 44.1

permits the disclosure of experts on foreign law with complete disregard for the

scheduling order or expert disclosure rules").

**B.    Credit Suisse's failure to comply with expert disclosure rules has prejudiced Plaintiffs.**

In determining whether a failure to disclose an expert witness, or to produce an expert report, warrants preclusion of the expert witness' testimony, courts may consider such factors as the prejudice or surprise to the party against whom the testimony is offered, the possibility that the prejudice may be cured, the likelihood that permitting the testimony will result in trial disruption, and the violating party's bad faith or willfulness. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

Here, Credit Suisse's refusal to make any expert disclosures prejudices Plaintiffs. Plaintiffs do not see how any Swiss law provision would criminalize compliance with an order granting the relief that Plaintiffs have requested. Without any expert report, documents provided to or reviewed by the expert, or even the name or description of the witness(es) that Credit Suisse will call to testify, Plaintiffs cannot prepare a cross-examination, or even an argument, against whatever claims or assertions Credit Suisse intends to make. Furthermore, the foreign nature of the subject-matter makes Credit Suisse's refusal to produce expert disclosures particularly harmful and unfair to Plaintiffs.[3]

---

[3]    Unlike both the Lasshofer Defendants and Credit Suisse, Plaintiffs have complied with this Court's Orders and the Federal Rules of Civil Procedure throughout this litigation, including Rule 26(a)(2). Plaintiffs disclosed Plaintiff Niemi as their expert witness and produced to all parties Plaintiff Niemi's expert report within the time required by FED. R. CIV. P. 26(a)(2)(D). This permitted the Lasshofer Defendants to

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion in limine, precluding Credit Suisse from introducing any expert testimony at the June 7 hearing.

DATED this 4th day of June, 2013.

Respectfully submitted,

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

*/s/Christopher W. Madel*
Christopher W. Madel
Bruce D. Manning
Aaron R. Thom
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com
arthom@rkmc.com

And

---

thoroughly analyze and attempt to attack Plaintiff Niemi's report. Indeed, the Lasshofer Defendants even produced an expert declaration of their own in an effort to challenge Plaintiff Niemi's conclusions. (*See* Dkt. 215-4.) The FED. R. CIV. P.-mandated opportunity to prepare for testimony and arguments, an opportunity which Plaintiffs have given both of their adversaries, has been consistently denied to Plaintiffs by both the Lasshofer Defendants and Credit Suisse throughout this litigation. Neither the Lasshofer Defendants nor Credit Suisse will so much as comply with a simple discovery request.

Robert N. Miller
**PERKINS COIE LLP**
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303-291-2300
Facsimile: 303-291-2400
rmiller@perkinscoie.com

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2013, I electronically filed the foregoing PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE CREDIT SUISSE AG FROM INTRODUCING ANY EXPERT TESTIMONY AT JUNE 7 HEARING with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Justine Victoria Beyda**
  jbeyda@cravath.com,mao@cravath.com
- **Kathleen E. Craigmile**
  kec@benningtonjohnson.com,dtb@benningtonjohnson.com,
  man@benningtonjohnson.com,tlp@benningtonjohnson.com,
  afa@benningtonjohnson.com
- **Kevin D. Evans**
  kdevans@s-elaw.com,pdouglass@s-elaw.com,sjoshi@s-elaw.com,
  tbaksay@s-elaw.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com
- **Julie Anne North**
  jnorth@cravath.com,mao@cravath.com

/s/Christopher W. Madel
Christopher W. Madel
Bruce D. Manning
Aaron R. Thom
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com
arthom@rkmc.com

ATTORNEYS FOR PLAINTIFFS