**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge R. Brooke Jackson**

Civil Action No. 12-cv-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

      Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

      Defendants,

CREDIT SUISSE A.G.,

      Nominal Defendant.

---

## PLAINTIFFS' RESPONSE TO STEESE, EVANS & FRANKEL, P.C.'S MOTION TO QUASH SUBPOENA

After the Lasshofer Defendants, the clients of Steese, Evans & Frankel, P.C. ("SE&F"), defrauded Plaintiffs, conceded their liability for the fraud by default after refusing to participate in discovery, and sought throughout the litigation to prevent Plaintiffs from collecting the $185,077,476 judgment that this Court has entered against them, SE&F now attempts to deny Plaintiffs the basic discovery that collection of their

judgment requires. By its motion to quash the subpoena that Plaintiffs served on it in accordance with the Federal Rules of Civil Procedure, SE&F continues the obstruction that its clients have demonstrated throughout the litigation. But, as has consistently been the case with arguments advanced on behalf of its clients, SE&F's arguments are contrary to applicable rules and law, which provide that any funds held by SE&F for the benefit or on the behalf of the Lasshofer Defendants are subject to Plaintiffs' judgment and, perforce, subject to Plaintiffs' discovery. Discovery into these assets is particularly appropriate here, as the Lasshofer Defendants have time and again demonstrated the lengths they will go—including disobeying Court Orders—to avoid paying Plaintiffs' judgment. This Court should accordingly deny SE&F's motion to quash Plaintiffs' subpoena.[1]

**ARGUMENT**

**I.     SE&F's motion to quash should be denied as it seeks to shield SE&F from basic post-judgment discovery that the Federal Rules of Civil Procedure permit.**

In its motion to quash the subpoena served pursuant to FED. R. CIV. P. 69 & 45, SE&F argues that, even if it holds funds belonging to the Lasshofer Defendants, such funds are not subject to Plaintiffs' judgment. This argument is directly contrary to applicable Colorado law. Not only are these assets subject to Plaintiffs' judgment (and, therefore, discovery by Plaintiffs), but funds that SE&F has accepted as purported compensation for services rendered are subject to scrutiny (and are, therefore, discoverable by Plaintiffs) under the well-established doctrine that the attorney of a

---

[1]     Plaintiffs' subpoena is attached to SE&F's motion to quash as Exhibit 1.

fraudster cannot blindly accept monies paid as "fees" without investigating the funds' source, and under the equally well-recognized doctrine that an insolvent corporation may not favor its own interests over satisfying an outstanding judgment.

### A. The post-judgment discovery that Plaintiffs seek from SE&F is authorized by FED. R. CIV. P. 69.

SE&F presents no basis for seeking to quash the subpoena that Plaintiffs served on it pursuant to FED. R. CIV. P. 69 & 45. Federal Rule of Civil Procedure 69(a)(2) provides:

> In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

Plaintiffs have accordingly served a subpoena on SE&F, i.e., a "person," pursuant to this rule and FED. R. CIV. P. 45, in aid of the execution of the $185,077,476 judgment entered by this Court on August 23, 2013 (Dkt. 252), as Plaintiffs are entitled to do.[2]

Substantively, Plaintiffs' subpoena is similar to the subpoena served on the defendant's law firm in *FTC v. Trudeau*, No. 03 C 3904, 2013 U.S. Dist. LEXIS 30106, at *13 (N.D. Ill. Mar. 6, 2013) (attached) (granting motion to compel law firm to comply with subpoena). Contrary to SE&F's argument at page 4 of its motion, *Trudeau* involved an attempt by the plaintiff (FTC) to "conduct[] discovery in aid of the judgment" it had received against the defendant. 2013 U.S. Dist. LEXIS 30106, at *9. As in *Trudeau*,

---

[2]    SE&F does not argue that the information sought by Plaintiffs is privileged, as this argument would fail. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) ("The identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.") (internal quotation marks and citation omitted).

Plaintiffs' receipt of information about assets that SE&F holds for the Lasshofer

Defendants will aid Plaintiffs in executing their judgment, as this Court has the authority

to order "any party or other person over whom the court has jurisdiction," including

SE&F, "to apply any property other than real property, not exempt from execution,

whether in the possession of such party or other person, or owed the judgment debtor,

towards satisfaction of the judgment." COLO. R. CIV. P. 69(g).

Although, as SE&F emphasizes, one reason that the FTC sought to subpoena the

defendant's law firm in *Trudeau* was to demonstrate that the defendant had assets, and

thus the ability to comply with a contempt order, the subpoena was nevertheless issued,

and the plaintiff's motion to compel granted, pursuant to FED. R. CIV. P. 69(a). *See*

*Trudeau*, 2013 U.S. Dist. LEXIS 30106, at *4, *8-11. Whether the specific purpose of a

third-party subpoena is to establish inability to comply with an order requiring payment

of money by a defendant, or to obtain information to aid in execution of a judgment, the

general purpose is the same: to discover information about the defendant's assets, and the

court in *Trudeau* correctly reasoned that FED. R. CIV. P. 69(a) authorizes such discovery.

**B.    Any funds that SE&F has received from the Lasshofer Defendants and now holds in a COLTAF account remain the property of the Lasshofer Defendants and are subject to Plaintiffs' judgment.**

SE&F's reliance at page 6 of its motion on COLO. REV. STAT. § 12-5-119,

Colorado's charging lien statute, is also misplaced. As the Colorado Supreme Court held

in *People v. Gray*, 35 P.3d 611, 620 (Colo. 2001), "[a]n attorney's lien, like other liens,

merely places others on notice that someone claims an interest in the funds subject to the

lien and must be reduced to judgment before title to the liened property is transferred."

Until whatever lien SE&F purportedly has is "reduced to judgment," therefore, "the funds remain[] *the property of the client* . . . subject to a lien, and [must] be maintained in an interest bearing account." *Id.* at 621 (emphasis added).

> Moreover, COLO. RULES OF PROF'L CONDUCT R. 1.15(c) provides:
>
> When in connection with a representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

This rule applies to funds of a client that are held in the client's attorney's COLTAF account. *See People v. Gifford*, 76 P.3d 519, 523, 536 (Colo. 2003) (disbarring attorney who failed to hold client's funds, in which client, attorney, and third party asserted interest, separate to permit accounting and severance of the disputed interest and instead "applied those disputed funds to her outstanding fee bills"). SE&F's argument at page 8 of its motion that Plaintiffs are not entitled to "information about present or historical balances in SE&F's COLTAF account" is, therefore, misguided.

Even if the bankruptcy law that SE&F cites in its motion were applicable to the instant dispute, and it is not, the case upon which SE&F relies at page 6 of its motion, *In re Printcrafters, Inc.*, 233 B.R. 113 (Bankr. D. Colo. 1999), does not support SE&F's argument. As this Court explained in *In re Cottrell Int'l, LLC*, No. 00-13592 CEM, 2000 Bankr. LEXIS 1093, at *5 (D. Colo. July 26, 2000) (attached), "[t]he whole focus of *Printcrafters* is on the question of the effect of the order approving the retainer." The instant case is not a bankruptcy matter, nor does it involve a retainer request or an order

approving a retainer. The *Printcrafters* rule to which SE&F clings in its motion, therefore, is not applicable here. Even if this were a bankruptcy matter and *Printcrafters* had bearing, moreover, the Lasshofer Defendants' argument would still fail because, as the Bankruptcy Court stated in *Cottrell*, "it is agreed that the funds held by the attorney *at the time the court enters an order approving employment and the retainer, are property of the estate*." 2000 Bankr. LEXIS 1093, at *4 (emphasis added). No order has been entered approving any retainer held by SE&F in the instant case. Any of the Lasshofer Defendants' funds that SE&F purportedly holds on retainer, therefore, remain the property of the Lasshofer Defendants, subject to both discovery under FED. R. CIV. P. 69(a) and Plaintiffs' judgment pursuant to COLO. R. CIV. P. 69(g).

Furthermore, if this were a bankruptcy proceeding and SE&F petitioned for approval of a retainer, it is by no means certain that its request would be granted. *See In re Parlex Assoc's, Inc.*, 435 B.R. 195, 214 (Bankr. S.D.N.Y. 2010) (denying fee application of debtors' attorney due to attorney's "failure to be forthcoming with respect to the source of the Retainer, his failure to obtain court approval prior to spending the Retainer, and his failure to properly investigate the source of the Retainer").

### C.   SE&F's acceptance of fees from the Lasshofer Defendants does not end the inquiry as to whether the fees were appropriately accepted.

It is generally recognized that:

Lawyers who receive a conveyance under circumstances that should cause them to inquire into the reasons behind the conveyance must diligently do so, lest they be charged with knowledge of any intent on the part of transferor to hinder, delay, or defraud. A lawyer who blindly accepts fees from a client under circumstances that would cause a reasonable lawyer to question the client's intent in paying the fees accepts the fees at his peril.

6

*Parlex Assoc's*, 435 B.R. at 211 (internal quotation marks and citation omitted). Even if

SE&F has accepted fees as purported compensation for services rendered, therefore, this

certainly would not end the analysis as to whether these funds were properly received,

and may be retained, by SE&F. *See HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633-34,

636, 640 (2d Cir. 1995) (reversing district court's dismissal of set-aside claims against

attorneys of judgment debtor in civil RICO action and holding that even if judgment

debtor received fair consideration in exchange for payments that it made to attorneys, "a

fact-finder might reasonably conclude that the purpose behind this arrangement was to

hinder, delay, or defraud [judgment debtors'] future judgment creditors"; further holding

that "[c]onstructive knowledge of fraudulent schemes will be attributed to transferees

who were aware of circumstances that should have led them to inquire further into the

circumstances of the transaction, but who failed to make such an inquiry"); *SEC v.

Current Fin. Servs.*, 62 F. Supp. 2d 66, 69 (D.D.C. 1999) (denying attorney's motion for

release of fraud-defendant's funds to pay attorney's fees; holding that "[a] defendant is

not entitled to foot his legal bill with funds that are tainted by his fraud") (internal

quotation marks and citation omitted).

    Under the circumstances of this case, moreover, SE&F's acceptance of fees from

the Lasshofer Defendants raises additional issues that independently warrant discovery. It

is well-recognized that when a corporation "is insolvent," as the Lasshofer Defendants

have represented by their words and conduct in this Court that they are, "its directors or

officers . . . will not be allowed to use the trust property for their own benefit to the

disadvantage of other creditors." *Crowley v. Green*, 365 P.2d 230, 232-33 (Colo. 1961)

(internal quotation marks and citation omitted). On August 8, 2012, and again on August

25, 2012, Erwin Lasshofer submitted a declaration wherein he represented to this Court

that the Lasshofer Defendants have a financial inability to comply with this Court's Order

that required them to transfer $2.18 million to this Court's registry. (Dkt. 110-1; Dkt.

117-1) Thereafter, despite having knowledge that "[i]nability to pay" means "complete

financial inability to comply with an Order," *Bayview Loan Servicing, LLC v. Boland*,

No. 08-cv-00566-WDM-KLM, 2010 WL 4237796, at *4 (D. Colo. Aug. 26, 2010),

*accepted by Bayview Loan Servicing, LLC v. Boland*, No. 08-cv-00566-WDM-KLM,

2010 WL 4226441 (D. Colo. Oct. 18, 2010), and despite being repeatedly ordered by this

Court to transfer funds, the Lasshofer Defendants refused to transfer so much as a penny

to the Court's registry. The Lasshofer Defendants' words and conduct equate to an

expression of insolvency, triggering their duty to avoid making preferential payments for

their own benefit to the detriment of their creditors, i.e., Plaintiffs. Therefore, if the

Lasshofer Defendants have provided payment to SE&F since Plaintiffs' judgment was

entered, or if they provide any payment to SE&F in the future, the Lasshofer Defendants

did or do so in violation of their duty not to favor their own interests over satisfying

Plaintiffs' judgment. Plaintiffs are entitled to discovery as to whether the Lasshofer

Defendants have violated this duty.

Moreover, if SE&F participates in a fraudulent conveyance, having been put on

actual notice of Plaintiffs' judgment, it subjects itself to conspiracy liability. *See Double

Oak Contr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 147, 149 (Colo. App.

2003) (holding that "a fraudulent transfer is an unlawful act that supports a creditor's claim for conspiracy"; affirming award of exemplary damages on civil conspiracy claim).

CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny SE&F's motion to quash Plaintiffs' subpoena.

DATED this 24th day of October, 2013.

Respectfully submitted,

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

*/s/Christopher W. Madel*
Christopher W. Madel
Bruce D. Manning
Aaron R. Thom
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com
arthom@rkmc.com

And

Robert N. Miller
**PERKINS COIE LLP**
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303-291-2300
Facsimile: 303-291-2400
rmiller@perkinscoie.com

ATTORNEYS FOR PLAINTIFFS

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 24, 2013, I electronically filed the foregoing PLAINTIFFS' RESPONSE TO STEESE, EVANS & FRANKEL, P.C.'S MOTION TO QUASH SUBPOENA with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Justine Victoria Beyda**
  jbeyda@cravath.com,mao@cravath.com
- **Kathleen E. Craigmile**
  kec@benningtonjohnson.com,dtb@benningtonjohnson.com,
  man@benningtonjohnson.com,tlp@benningtonjohnson.com,
  afa@benningtonjohnson.com
- **Kevin D. Evans**
  kdevans@s-elaw.com,pdouglass@s-elaw.com,sjoshi@s-elaw.com,
  tbaksay@s-elaw.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com
- **Julie Anne North**
  jnorth@cravath.com,mao@cravath.com

*/s/Christopher W. Madel*
Christopher W. Madel
Bruce D. Manning
Aaron R. Thom
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
bdmanning@rkmc.com
arthom@rkmc.com

ATTORNEYS FOR PLAINTIFFS

84271442.1



4 of 18 DOCUMENTS

**FEDERAL TRADE COMMISSION, Plaintiff, v. KEVIN TRUDEAU, Defendant.**

**No. 03 C 3904**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2013 U.S. Dist. LEXIS 30106; 2013-1 Trade Cas. (CCH) P78,291**

**March 6, 2013, Decided**
**March 6, 2013, Filed**

**PRIOR HISTORY:** FTC v. Trudeau, 2012 U.S. Dist. LEXIS 116347 (N.D. Ill., Aug. 17, 2012)

**COUNSEL:** [*1] For Federal Trade Commission, Plaintiff: David A. O'Toole, Federal Trade Commission, Senior Staff Attorney, Chicago, IL; Elizabeth Tucci, Laureen Kapin, Sandhya Prabhu Brown, Federal Trade Commission, Bureau of Consumer Protection, Div. of Enforcement, Washington, DC; Jonathan Cohen, PRO HAC VICE, Federal Trade Commission, Bureau, Washington, DC; Michael Mora, PRO HAC VICE, Federal Trade Commission, Bureau of Consumer Protection, Washington, DC; Stephen Christpher Dowdell, PRO HAC VICE, Federal Trade Commission, Washington, DC.

For Kevin Trudeau, Defendant: Kimball Richard Anderson, LEAD ATTORNEY, Katherine E Croswell, Thomas Lee Kirsch, II, Winston & Strawn, LLP, Chicago, IL; Steffen Nathanael Johnson, Winston & Strawn LLP (DC), Washington, DC.

For Shop America (USA), LLC, Defendant: Kimball Richard Anderson, LEAD ATTORNEY, Winston & Strawn, LLP, Chicago, IL.

For Robert Barefoot, Deonna Enterprises, Inc., Defendants: David L. Schiavone, LEAD ATTORNEY, Sonnenschein, Nath & Rosenthal, LLP, Chicago, IL;

Lewis Rose, Collier, Shannon, Rill & Scott, Washington, DC.

For The Law Offices of Marc J. Lane PC, Winston & Strawn LLP, Marc J. Lane, Respondents: Kimball Richard Anderson, LEAD ATTORNEY, [*2] Katherine E Croswell, Thomas Lee Kirsch, II, Winston & Strawn, LLP, Chicago, IL.

For Nataliya Babenko, Movant: Douglas Russell Cole, PRO HAC VICE, Organ Cole + Stock, Columbus, OH.

For GIN USA, Inc., KT Radio Network, Inc., WebSite Solutions USA, Inc., Movants: Daniel J. Donnellon, PRO HAC VICE, Kenjiro D. Lecroix, PRO HAC VICE, Faruki Ireland & Cox P.l.l., Cincinnati, OH.

**JUDGES:** Robert W. Gettleman, United States District Judge.

**OPINION BY:** Robert W. Gettleman

**OPINION**

**MEMORANDUM OPINION AND ORDER**

On June 2, 2010, this court ordered Kevin Trudeau to pay a sanction of $37,616,161 to the Federal Trade

Case 1:12-cv-00869-RBJ   Document 261   Filed 10/24/13   USDC Colorado   Page 12 of 19

Page 2
2013 U.S. Dist. LEXIS 30106, *2; 2013-1 Trade Cas. (CCH) P78,291

Commission ("FTC") as a result of Trudeau's contemptuous failure to comply with this court's September 2004 Consent Order that settled a prior finding of contempt. See FTC v. Trudeau, 708 F. Supp.2d 711 (N.D. Ill. 2010). That order has been affirmed by the court of appeals. FTC v. Trudeau, 662 F.3d 947 (7th Cir. 2011). Trudeau has failed to comply with ignored the order, much like he has treated all of this court's orders, leading the FTC to move to hold him in contempt yet again (Doc. 481).

Because Trudeau had paid nothing toward the sanction, on December 6, 2012, this court held (Doc. 535) that the FTC has carried its [*3] initial burden to establish by clear and convincing evidence that Trudeau has violated the court's order, shifting the burden to Trudeau to produce evidence of poverty or insolvency that prevents compliance. SEC v. Custable, 1999 U.S. Dist. LEXIS 1776, 1999 WL 92260 at *2 (N.D. Ill. 1999) (citing Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995). Such evidence must show categorically and in detail why the alleged contemnor was unable to comply with the court's previous order. Id. Self-serving statements of financial hardship or indigence, absent corroboration by third parties or financial records including tax returns, bank statements and cancelled checks, do not satisfy this burden of production. Id.

To carry his burden, and on order of the court, Trudeau has filed a "Sworn Financial Statement" with supporting documents that suggests that he lacks the ability to pay anything toward the $37 million sanction. The FTC has rightfully challenged the bona fides of Trudeau's statement, presenting evidence that Trudeau is living much more like a prince than the pauper he professes to be. For example, the FTC has presented evidence that until recently Trudeau lived in an expensive suburban home with two personal [*4] chefs and a butler. Between August and November 2012 he purchased over $100,000 in home furnishings, over $16,000 in clothes and close to $1,000 worth of cigars. All of these purchases were made with a credit card issued to Trudeau. The credit card bills have been paid, but it is unclear by whom.

To bolster their argument, the FTC has served subpoenas seeking testimony and/or documents from third parties it suspects to be related to Trudeau and/or might have information relating to Trudeau's ability to pay the sanction. Not surprisingly, these efforts have been met with stiff resistance, forcing the FTC to litigate the enforcement of its subpoenas in the issuing courts. Despite defeating all efforts to quash its subpoenas, little information has been forthcoming. See e.g., Global Information Network, U.S. v. FTC, 2012 WL 6100472 (N.D. Ohio Dec. 7, 2012); FTC v. Trudeau, 2012 U.S. Dist. LEXIS 160545, 2012 WL 5463829 (N.D. Ohio Nov. 8, 2012); Babenko v. FTC, No. 1:12-MC-00006, 2012 U.S. Dist. LEXIS 38774 (S.D. Ohio March 22, 2012).

As part of its efforts to challenge Trudeau's claim of inability to pay, the FTC has also issued a number of subpoenas from this court. First, it has subpoenaed Trudeau's current attorneys, Winston & Strawn ("Winston"), [*5] seeking information regarding Trudeau's payments for legal services. Second, the FTC has subpoenaed the Law Offices of Mark Lane ("Lane"), a self-professed specialist in protecting his "client's assets from creditors and lawsuits while, at the same time allowing them to retain control over the assets and the income they produce." [1] The Lane subpoena, like the Winston subpoena, seeks only documents relating to payments made to Lane or Winston by or on behalf of Trudeau. Finally, the FTC has issued a subpoena to Website Solutions U.S.A. Inc.("WSU").

    1    These are Lane's own description of his
         services as an "asset protector."

Because all of the subpoenaed parties have raised objections and none have produced any information or otherwise complied with the subpoenas, the FTC has, pursuant to Fed. R. Civ. P. 45(c)(2)(B)(I), moved to compel their compliance. Winston and Lane have raised objections and arguments that are about as valid as the misrepresentations on Trudeau's contemptuous infomercials. Therefore, for the reasons set forth below, the motion is granted as to all three subpoenaed parties.

## BACKGROUND

The Winston and Lane subpoenas seek three categories of documents:

        (1) All retainer agreements [*6] referring or relating to compensation for work or service performed for or provided to any Trudeau-Affiliated Person or any Trudeau-Affiliated Entity [Trudeau-Affiliated Person and

Case 1:12-cv-00869-RBJ   Document 261   Filed 10/24/13   USDC Colorado   Page 13 of 19

Page 3
2013 U.S. Dist. LEXIS 30106, *6; 2013-1 Trade Cas. (CCH) P78,291

Trudeau-Affiliated Entities are broadly defined in the subpoena];

(2) All documents created on or after June 2, 2010, evidencing payment received or promised, or the source of payment received or promised, for work or services performed or to be performed for any Trudeau-Affiliated Person or any Trudeau-Affiliated Entity; and

(3) Documents sufficient to establish the balance of funds at all times in any account controlled directly or indirectly for the benefit of or on behalf of any Trudeau-Affiliated Entity or Trudeau-Affiliated Person.

The subpoenas have a specific limitation indicating that the FTC is not seeking confidential information relating to Trudeau's motive for seeking legal representation, litigation strategy or the specific nature of any legal services provided, or the substance of any attorney/client communication other than the limited financial portions of any retainer agreement that do not reveal such information. The subpoenas specifically invited Winston and Lane to redact from the documents [*7] produced "all portions thereof that reveal the motive in seeking legal representation, litigation strategy or the specific natures of services provided or to be provided."

Winston responded to the subpoena by letter from Trudeau's primary counsel, Kimball Anderson, to FTC attorneys Mora and Cohen. Anderson's letter indicated that Winston had no documents responsive to categories (1) or (3). With respect to category (2), the letter indicated that Winston represents Kevin Trudeau and no other Trudeau affiliated entity as defined in the subpoena. With respect to Trudeau personally, Winston objected to producing any category (2) documents based on: (1) Rule 1.6(a) of the Illinois Rules of Professional Conduct; (2) the request was overly broad, unduly burdensome, ambiguous, vague, and not calculated to lead to the discovery of admissible evidence; (3) the request was cumulative to information the FTC had obtained by subpoenaing Trudeau's banks; and (4) it was inappropriate to subpoena opposing counsel.

Lane initially responded by objecting to the subpoena because it was: (1) unduly burdensome, vague,

ambiguous, not reasonably calculated to lead to admissible evidence and cumulative to previous [*8] subpoenas issued by the FTC; and (2) it sought production of confidential client information. Lane did indicate that it "holds no cash or other assets owed to, or belonging to the judgment debtor." [2]

[2] Lane initially responded by letter from Marc Lane. During the course of briefing the instant motion, Lane has been represented by Winston.

## DISCUSSION

As an initial matter, all subpoenaed parties have argued that the subpoenas are invalid because the FTC has not complied with Fed. R. Civ. P. 69(a). As the FTC points out, because none of the subpoenaed parties raised this argument in their responses or objections, the argument is technically waived. See Ott v. City of Milwaukee, 682 F.3d 552, 558 (7th Cir. 2012) (Rule 45 requires the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a game.). Objections must be raised before the earlier of the time specified for compliance or 14 days after the subpoena is served. Id.; Fed. R. Civ. P. 45(c)(2)(B).

Even if not waived, the argument has no merit. Rule 69(a)(1) provides that "a money judgment is enforced by a writ of execution, unless the court directs otherwise. (Emphasis [*9] added). In the original September 2004 Sanction Order, the terms of which were incorporated into the court's June 2, 2010 Order, the court specifically directed (and authorized) the FTC to monitor compliance using "procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36 and 45." Thus, the court has "ordered otherwise."

Moreover, even if the court had not authorized the FTC to follow federal discovery rules, Rule 69(a)(2) provides that "in aid of the judgment . . . the judgment creditor may obtain discovery from any person . . . as provided in these rules or by the procedure of the state where the court is located." (Emphasis added). As noted by then District Judge Rovner in Evans v. Chicago Football Franchise Limited Partnership, 127 FRD 492, 493 (N.D. Ill. 1989), "this language clearly contemplates that plaintiff has a choice between using the federal discovery rules and using the practice of the state."

Any argument that the FTC must first commence

Case 1:12-cv-00869-RBJ  Document 261  Filed 10/24/13  USDC Colorado  Page 14 of 19

Page 4

2013 U.S. Dist. LEXIS 30106, *9; 2013-1 Trade Cas. (CCH) P78,291

execution proceedings under Illinois law by serving Trudeau with a citation to discover assets before conducting discovery in aid of the judgment is unavailing and unsupported by Dexia Credit Local v. Rogan, 629 F.3d 612 (7th Cir. 2011), [*10] the case on which the subpoenaed parties rely. Dexia did state that under Illinois law a citation to discover assets initiates supplemental proceedings, but it was not faced with the instant question, nor did it hold that a citation to discover assets must be served before a judgment creditor could seek discovery in aid of a judgment (as opposed to execution), and it certainly never held that a judgment creditor specifically ordered by the court to use the federal discovery rules to monitor a contemnor's compliance with a sanction order must do so. Blaw Knox Corp. v. AMR Indus., Inc., 130 FRD 400 (E.D. Wis. 1990), the other case on which the subpoenaed parties rely, dooms their argument. In reviewing Rule 69(a), the Blaw Knox court determined that the Rule contained a distinction between execution and discovery, and held that "a judgment creditor is limited to the collection options provided by the state," but may obtain discovery under either federal or state law. Id. at 402. Thus, the court rejected the argument that discovery under the federal rules had to be preceded by an attempt at execution under state law. Id. Under Blaw Knox, a judgment creditor may seek discovery under the [*11] federal rules at any time post-judgment. Any assets of the judgment debtor found during such discovery are not, however, subject to a lien that would be created if execution proceedings had begun under state law. See e.g., Peterson v. Farrakhan, 2008 U.S. Dist. LEXIS 18048, 2008 WL 656267 at *3 (N.D. Ind. March 5, 2008).

Winston and Lane next argue that compliance with the FTC's subpoenas would compel them to violate their ethical obligations under Illinois Rule of Professional Responsibility 1.6(a), which provides in part that a lawyer "shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b) or required by paragraph (c)." Even if Winston and Lane are correct that the source of payments made to them by or on behalf of Trudeau or any Trudeau-affiliated person or entity constitutes "information relating to the representation of a client," 3 paragraph 1.6(b)(6) specifically permits disclosure of such information "to comply with other law or a court

order." Fed. R. Civ. P. 45 constitutes a "law" that requires Winston and Lane to reveal [*12] otherwise confidential, non-privileged client information, and a subpoena issued under Rule 45 is a court order that compels compliance absent some other valid objection. See SEC v. Sassano, 274 F.R.D 495, 497 (S.D. N.Y. 2011). "Rule 1.6 is not intended to, and does not apply to judicial proceedings in which a lawyer may be required to produce evidence concerning a client." Avoletta v. Danforth, 2012 U.S. Dist. LEXIS 106722, 2012 WL 3113151 at *1 (D. Conn. 2012) (applying Connecticut rule virtually identical to Illinois rule). Thus, Winston and Lane have fulfilled their ethical obligation under Rule 1.6(a) by bringing the matter to this court's attention and must, if ordered, reveal the information.

> 3    For an thorough discussion of the breath of Rule 1.6 see Edward W. Feldman, Be Careful What You Reveal: Model Rule of Professional Conduct 1.6, ABA Litigation Magazine, Vol. 38 No. 4 Summer/Fall 2012.

Finally, Winston and Lane have raised a number of the usual boilerplate objections, none of which carry any merit. The subpoenas are not overbroad, but actually are limited in nature. Compliance would not be unduly burdensome, particularly since the information sought is most likely available within the firms' computer systems. [*13] The subpoenas specifically disclaim any attempt to discover confidential information, and even if such information was called for, neither Winston nor Lane has identified such privileged information in a log as required by Fed. R. Civ. P. 45(d)(2)(A). As for Winston's argument that taking discovery of opposing counsel is rarely appropriate, the court finds that it is appropriate in the instant case, given Trudeau's efforts to avoid paying the sanction and his apparent ability to retain prestigious counsel and live a life of luxury.

Accordingly, for the reasons set forth above, the motion to compel Winston and Lane to comply is granted. Winston and Lane are ordered to produce forthwith all records showing payments and source of payments received for its legal services on behalf of Kevin Trudeau or any Trudeau-affiliated entity or Trudeau-affiliated person as defined in the subpoenas. WSU is ordered to comply forthwith with the subpoena and provide all responsive financial information and bank statements.

## CONCLUSION

2013 U.S. Dist. LEXIS 30106, *13; 2013-1 Trade Cas. (CCH) P78,291

For the reasons set forth above, the motion to compel Winston & Strawn, the Law Offices of Marc Lane, and Website Solutions USA to comply with subpoenas is granted.

**ENTER: March** [*14] **6, 2013**

/s/ Robert W. Gettleman

**Robert W. Gettleman**

**United States District Judge**



**In re: COTTRELL INTERNATIONAL, LLC, EIN: 84-1459735, Debtor.**

**Case No. 00-13592 CEM, Chapter 11**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO**

**2000 Bankr. LEXIS 1093**

**July 26, 2000, Decided**

**COUNSEL:** [*1] Steven E. Abelman, Berryhill, Cage & North, P.C., D. Bruce Coles, Charles Greenhouse, Michael Hoog, Eugene J. Kottenstette, James T. Marcus, Patrick S. McBride, William T. Slamkowski, Robert O. Stapel, Denver, CO, for creditor.

Dayle L. Anderson, Lakewood, CO, for creditor.

Howard J. Beck, Aurora, CO, for creditor.

William R. Benvenuto, New York, NY, for creditor.

Dennis E. Quaid, Chicago, IL, for creditor.

Lee M. Kutner, Denver, CO, for debtor.

David E. Sipiora, Denver, CO, for special counsel.

**JUDGES:** Charles E. Matheson, Judge.

**OPINION BY:** Charles E. Matheson

**OPINION**

**ORDER ON MOTION TO PAY POSTPETITION RETAINER**

The Debtor in this Chapter 11 case has filed an application to employ legal counsel and to pay the law firm a retainer of $ 40,000. The retainer is to be paid

postpetition at the rate of $ 10,000 a month. Counsel will be allowed to draw on the retainer to pay interim fees and expenses, as allowed by the Court after notice and a hearing. Notice of the proposed arrangement was given to all interested parties, and no one filed an objection except the office of the United States Trustee. That objection has been resolved by stipulation. [1]

> 1   The stipulation with the Trustee also provides that the installment payments on the retainer are not to be made if the Debtor is not current in the payment of its other postpetition expense obligations.

The Court set the matter for hearing. The question posed was whether the payment of a postpetition retainer could properly be allowed. In particular, concern was expressed [*2] whether the payment of such a retainer would elevate the attorneys to an administrative priority that is not otherwise accorded under section 503(b)(3) and 507(a)(1) of the Code. This concern has arisen because of the holding of the court in *In re Printcrafters, Inc.,* 233 B.R. 113 (D. Colo. 1999). In *Printcrafters* the court held that an attorney who had been employed pursuant to an order issued under section 327 of the Code and who, as a condition of employment, had been paid prepetition a retainer, could draw against the retainer for the payment of fees allowed for services during the debtor's Chapter 11 case, even though the case had been converted to Chapter 7 and there were not sufficient funds in the estate to pay all Chapter 7 administrative

claims. The Chapter 7 trustee had sought to surcharge counsel and to have the retainer disgorged in order to provide funds to pay the Chapter 7 expenses. The district court held that the bankruptcy court's order of disgorgement was improper, that the attorney (because of the order authorizing the retainer in the first instance) held a valid and perfected lien on the retainer to secure the payment of allowed [*3] fees, and that he was entitled to retain the funds notwithstanding the fact that other administrative claims would go unpaid.

Prior to **Printcrafters**, the use of prepetition retainers for counsel in Chapter 11 cases was, if not common, at least not unusual and was usually approved, as it had been by the bankruptcy court in **Printcrafters**. However, it was the general belief of the judges of this Court that the retainer did not serve to elevate the administrative priority of the claims of an attorney for allowed fees and that, if it happened that ultimately the estate proved to be administratively insolvent, the attorney might be required to disgorge some or all of the retainer or the funds withdrawn by counsel from the retainer for the payment of allowed fees. **Printcrafters** established that this general belief was in error.

So long as the retainers paid to attorneys were considered to be subject to disgorgement, the concern over the practice of taking retainers was minimized. There were, to be sure, instances of apparent overreaching by an attorney. And, it must be observed, there were times when it appeared that the taking of the retainer by an aggressive [*4] attorney served to strip the prospective debtor of the very cash funds that were essential to the success of the Chapter 11 case. But these were the exception. Potential disgorgement also acted as a buffer for other administrative claimants, such as counsel for the creditors' committee, who arrive later in the case and after debtor's counsel has already extracted the cash available. **Printcrafters** has served to upset this balance.

What is now before the Court is the question of whether the attorneys should be permitted to receive from the debtor, postpetition, a retainer to be held by the attorneys to secure the payment of fees for services to be provided during the pendency of this Chapter 11 case. Counsel argues that the case should be guided by **Printcrafters** because there is no apparent reason why postpetition retainers should be treated any differently that prepetition retainers.

The Court agrees that the analysis should be the same for both pre- and postpetition retainers. In both instances it is agreed that the funds held by the attorney at the time the court enters an order approving employment and the retainer, are property of the estate. **In re Printcrafters,** 233 B.R. at 119. [*5] Indeed, if there was ever any question in this regard it has since been settled by the Colorado Supreme Court which has explicitly held that an attorney has an ethical obligation to hold any retainer in the attorney's trust account and that the attorney is obligated to repay to the client any unearned portion of the retainer upon demand by the client. **In the Matter of Larry D. Sather,** 3 P.3d 403, 2000 WL 655914 (Colo. 2000). In the bankruptcy context this means that if the court declines to approve the employment of an attorney who has received a prepetition retainer, the balance of the retainer must be turned over to the bankruptcy trustee for administration as an asset of the estate. But the Court does not agree that **Princrafters** is dispositive of the issues now before the Court because **Printcrafters** does not deal with the question of whether the retainer arrangement should have been approved in the first instance. The whole focus of **Printcrafters** is on the question of the effect of the order approving the retainer.

Counsel acknowledges that, if the retainer arrangement is approved by the Court, the attorney will have [*6] a lien on property of the estate to be held by the attorney as security for the payment of fees. In **Princrafters** the court quotes with approval the decision of the First Circuit to the effect that an attorney who is retained to render professional services to a debtor-in-possession "becomes a creditor of the estate just as soon as any compensable time is spent on account." **In re Printcrafters,** 233 B.R. at 117, citing **In re Martin,** 817 F.2d 175, 180 (1st Cir. 1987). In other words, by providing services the professional extends credit to the debtor, the repayment of which is to be secured by a lien on the funds advanced as a retainer.

The Code has explicit provisions dealing with how, and under what circumstances, a debtor-in-possession, acting as the "trustee" in a Chapter 11 case, can obtain credit. Section 364 of the Code allows the "trustee" to obtain credit on an unsecured basis or, in appropriate cases, on a secured basis, or on a super-priority basis. However, those provisions only pertain to credit that will constitute an administrative expense pursuant to 11 U.S.C. § 503(b)(1). Administrative expenses [*7] for the

fees of a professional are allowed under section 330 of the Code, and have an administrative priority provided for under section 503(b)(3).

Counsel for a debtor-in-possession in Chapter 11 must be approved by the Court pursuant to 11 U.S.C § 327. Such employment may be approved "on any reasonable terms and conditions of employment, including on a retainer . . . ." 11 U.S.C. § 328(a). This can include the payment of a postpetition retainer. *In re Jefferson Business Center Associates,* 135 B.R. 676, 680 (Bankr. D.Colo. 1992). Because section 328 explicitly provides for a retainer, and because section 364 is not applicable to extensions of credit for the payment of administrative expenses provided for under section 503(b)(3) of the Code, the Court concludes that the authority to allow the payment of retainers, both pre- and postpetition, and to set the terms therefor, must be inferred from and under section 328.

In acting on a request for the approval of a retainer, particularly one that is to have the effect realized in *Printcrafters*, the Court must be mindful of the fact that the Code, in sections [*8] 503, 507 and 726, establishes an elaborate system of priorities for the payment of administrative expenses and claims. The establishment of a retainer on the terms recognized and enforced in *Printcrafters* has the effect of reordering that statutory priority and must, therefor, be approached with caution.

In the *Jefferson Business* case the court identified several factors that could properly be considered in evaluating the propriety of a postpetition retainer. The court recognized that having competent counsel is imperative to the success of a Chapter 11 case. The court could also consider (1) the economic impact the payment of the retainer might have on the debtor's business; (2) the retainer's impact on the prospects for reorganization (which, of necessity, must include an evaluation of whether the debtor will, at confirmation, have funds available to pay all administrative expenses as required by 1129(a)(9) of the Code); (3) the amount and the reasonableness of the retainer; (4) the reputation of counsel; and (5) the ability of counsel to be able to disgorge the retainer if, at the conclusion of the case, the court should determine that the fees paid during the [*9] case were not justified. In addition, it appears to this Court that it is appropriate to consider whether the retainer arrangement will have a chilling effect on the adversary system by unduly restricting the availability of

funds to pay other professionals in the case, including counsel for the creditors' committee, if any (*see, In re Ames Department Stores, Inc.,* 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990)), and whether it is likely that there will be assets available to pay the Chapter 7 priority administration expenses, mandated by section 726(b) of the Code, in the event the Chapter 11 fails.

In the matter before the Court, the attorneys seek employment under section 327(e) of the Code. Their role will be to continue litigation instituted by them prepetition on behalf of the Debtor. The lawsuit involves claims against a former customer of the Debtor whose alleged wrongful conduct appears to have been a substantial contributing factor to the necessity for this Chapter 11 case. The stipulation with the U.S. Trustee goes far in reducing concerns that the retainer will be an undue burden on the Debtor's operations or will impose risks that other administrative claims [*10] may not be paid. Further, early hearings in this case indicate that there is a significant probability that this Debtor will be able to effectuate a successful plan of reorganization, that the likelihood of conversion to Chapter 7 is slight, and that there will in any event probably be adequate assets available to pay the expenses of the administration of the estate, both for the Chapter 11 and any ensuing Chapter 7. Given the size of the retainer, and the significant size of the estate, there is no apparent chilling effect on the adversary system.

Having considered the application and the factors enumerated, the Court concludes that it is appropriate to authorize the payment of the retainer as requested, and a separate order doing so, incorporating the terms of the stipulation with the Trustee, will enter. The retainer will stand as security for the payment of fees as allowed by the Court in this case, all as within the meaning and intent of the order in *Printcrafters*. There is this admonition, however. Section 328 makes clear that an order allowing employment on terms, such as the payment of a retainer, remains reviewable by the Court and may be modified (with the result [*11] of possible disgorgement) if the "terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).

It is so ordered.

DATED: 7/26/00

2000 Bankr. LEXIS 1093, *11

BY THE COURT:                                    Charles E. Matheson, Judge

      /s/