**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Honorable R. Brooke Jackson

Civil Action No.: 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

       Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH,
INNOVATIS ASSET MANAGEMENT, S.A.,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

       Defendants.

## REPLY IN SUPPORT OF MOTION OF
## STEESE, EVANS & FRANKEL, P.C. TO QUASH SUBPOENA

Plaintiffs' Response To Steese, Evans & Frankel, P.C.'s ("SE&F") Motion To Quash Subpoena [Doc. No. 261; filed 10/24/13] ("Plaintiffs' Response") vainly attempts to justify Plaintiffs having sent a process server to the offices of SE&F to serve an utterly baseless subpoena on SE&F seeking records related to payment of SE&F's legal bills by Mr. Lasshofer and the Innovatis entities. According to Plaintiffs' twisted logic, they could object

to SE&F's attempt over one year ago to withdraw (as a result, the Court declined to permit SE&F to withdraw), and now seek to uncover information related to payment of SE&F's invoices for legal services rendered. Plaintiffs also go so far without a shred of evidence (for there is none) to accuse SE&F of having engaged in nefarious conduct (for which SE&F is considering all of its options).

Rather than focus on the merits of the present issue (or, more accurately, the meritless nature of their conduct), Plaintiffs attempt to shift attention from the subpoena on SE&F to the alleged conduct of Mr. Lasshofer and the Innovatis entities. Plaintiffs say that Mr. Lasshofer and the Innovatis entities defrauded Plaintiffs, refused to participate in discovery, took a default (the Court's judgment is now on appeal and the opening brief was filed on November 8), and sought "to prevent Plaintiffs from collecting the $185,077,476 judgment that this Court has entered." Plaintiffs' Response at 1.[1] None of this justifies Plaintiffs' subpoena on SE&F. The issue here is not Mr. Lasshofer and the Innovatis entities. The issue is whether the Court will protect SE&F from a baseless and improper subpoena (and a response brief by Plaintiffs that is littered with slanderous and utterly frivolous accusations and insinuations against SE&F). For the reasons set forth in SE&F's Motion To Quash [Doc. No. 257; filed 10/4/13] and below, the Court should quash Plaintiffs' subpoena.

---

[1] The judgment Plaintiffs reference was entered on August 23, 2013. While Mr. Lasshofer and the Innovatis entities have appealed that judgment, Plaintiffs point to no conduct taken by Mr. Lasshofer or any Innovatis entity to prevent collection on the judgment.

**INTRODUCTION**

In their Response, Plaintiffs falsely contend that they are entitled to discovery because they may reach SE&F's COLTAF account to satisfy their judgment against Mr. Lasshofer and the Innovatis entities. *See* Plaintiffs' Response at 4-6. Plaintiffs add: "Under the circumstances of this case . . . SE&F's acceptance of fees from the Lasshofer Defendants ***raises additional issues that independently warrant discovery.***" *Id.* at 7 (emphasis added). By "additional issues," Plaintiffs suggest that SE&F is "subject[ing] itself to conspiracy liability" (including punitive damages) by accepting payment from its clients for legal services, including the appeal of the default judgment. Plaintiffs' Response at 8-9. Plaintiffs' slanderous accusation is rendered all the more frivolous by the fact (which Plaintiffs conveniently ignore) that they objected over one year ago to SE&F's motion to withdraw.

Moreover, the underlying basis of Plaintiffs' theory is rotten at its core. Plaintiffs claim their discovery is warranted because Mr. Lasshofer and the Innovatis entities are "insolvent." Not only have Plaintiffs failed to corroborate this assertion, Plaintiffs previously argued that Mr. Lasshofer and the Innovatis entities are not insolvent. Plaintiffs' latest position is two-faced, and the discovery they seek is irrelevant; therefore, the Court should grant SE&F's Motion To Quash.

**ARGUMENT**

Plaintiffs ground their discovery requests and their accusations against SE&F on a straw man argument reminiscent of Oz. They claim (with no evidentiary basis) that Mr.

Lasshofer and the Innovatis entities are insolvent. Therefore, Plaintiffs conclude, they are entitled to reach funds in SE&F's COLTAF account and SE&F is party to fraudulent conveyances (*see* Plaintiffs' Response at 7-8), even though Plaintiffs over one year ago successfully argued that SE&F should not be permitted to withdraw. Previously, however, Plaintiffs advanced the polar opposite position, arguing successfully that the Court must hold Mr. Lasshofer and the Innovatis entities in contempt for not transferring $2.18 million to Colorado under the now-vacated preliminary injunction because Mr. Lasshofer and the Innovatis entities had the financial resources to comply. *See* Plaintiffs' Reply To The Lasshofer Defendants' Response To Plaintiffs' Motion For Contempt And Sanctions ("Plaintiffs' Reply") [Doc. No. 115; filed 8/23/12]. Plaintiffs' say-one-thing-one-day-and-the-opposite-the-next litigation strategy shows no bounds.

As Plaintiffs asserted in their Reply on contempt: "Not only do the Lasshofer Defendants fail to meet their burden of demonstrating inability to pay even according to their erroneous 'fact question' standard, but **their brief actually establishes just the opposite: that the Lasshofer Defendants do have a present ability to pay.**" Plaintiffs' Reply at 7 (emphasis); *see also id.* at 15. This Court agreed, ruling: "[T]he Court is totally unpersuaded that there is a lack of ability to comply." Exhibit 4 hereto[2] (Excerpts from March 26, 2013 Hearing Transcript, at 23:18-19; *see also id.* at 21:3-23:17). This Court should not be fooled by Plaintiffs' lack of candor toward the tribunal. The Court should not allow Plaintiffs to argue that Mr. Lasshofer and the Innovatis entities "have a present ability to

---

[2] Exhibits 1 – 3 are attached to the Motion To Quash.

4

pay" when it is convenient to Plaintiffs, only to turn around and argue that Mr. Lasshofer and the Innovatis entities are "insolvent" when it seemingly fits Plaintiffs' purpose.[3]

Furthermore, Mr. Lasshofer and the Innovatis entities never claimed to be, and are not, insolvent.[4] In addition, the material Plaintiffs seek from SE&F is irrelevant and Plaintiffs' slanderous accusation against SE&F – that it is confederate in fraudulent transfers – crosses the bounds of ethical advocacy.

### I.  PLAINTIFFS FAIL TO DEMONSTRATE THAT THEIR DISCOVERY SEEKS RELEVANT INFORMATION

Plaintiffs' Response focuses on whether discovery against SE&F is permitted, but neglects to resolve a more fundamental failing in their subpoena: the discovery Plaintiffs seek is irrelevant. Plaintiffs argue that a "[s]ubstantively . . . similar" subpoena was enforced in *FTC v. Trudeau*, No. 03c3904, 2013 WL 842599 (N.D. Ill. Mar. 6, 2013). Plaintiffs' Response at 3. From there, Plaintiffs assert that they are entitled "to discover information about the defendant's assets." *Id.* at 4. But Plaintiffs are not seeking from SE&F

---

[3] Plaintiffs are deploying a similar deception in Minnesota. Having issued a nearly identical subpoena in Minnesota to another law firm, Plaintiffs falsely informed the United States District Court for the District of Minnesota that Mr. Lasshofer and the Innovatis entities are insolvent. *See* Exhibits 5 and 6 hereto. This Court must put an end to Plaintiffs' false arguments of convenience. (The Court will recall that Plaintiffs previously sought dismissal of Mr. Lasshofer's and the Innovatis entities' appeal of the preliminary injunction, misrepresenting to the Tenth Circuit that the appeal was moot because the Court had entered a preliminary injunction against Credit Suisse. Not only did the Tenth Circuit soundly reject Plaintiffs' argument (*see Niemi v. Lasshofer,* 728 F.3d 1252, 1254-55 (10th Cir. 2013)), but this Court, too, saw through Plaintiffs' duplicity. *See* Exhibit 4 hereto at 20:18-22.)

[4] Mr. Lasshofer and the Innovatis entities never said they did not possess assets. What they said (with respect to the now vacated preliminary injunction order) is that they did not have $2.18 million in liquid assets.

"information about the defendant's assets." They are seeking information related to payment by Mr. Lasshofer and the Innovatis entities of SE&F's invoices for legal services rendered. *See* Exhibit 1 to Motion To Quash. Such information is irrelevant, and Plaintiffs' continued reliance on *Trudeau* is misplaced.

Discussing *Trudeau*, Plaintiffs concede that "one reason that the FTC sought to subpoena the defendant's law firm in *Trudeau* was to demonstrate that the defendant had assets, and thus the ability to comply with a contempt order." Plaintiffs' Response at 4. However, Plaintiffs **falsely** inform the Court that "*Trudeau* [also] involved an attempt by the plaintiff (FTC) to 'conduct[ ] discovery in aid of the judgment' it had received against the defendant." Plaintiffs' Response at 3 (quoting *Trudeau*, 2013 WL 842599, at *3). Not so.

The discovery in *Trudeau* was relevant only to prove the defendant could comply with a contempt order. *See* Motion To Quash at 4. The language Plaintiffs quote was not an explanation of the purpose or relevance of the FTC's subpoena. It comes from a discussion about the scope of federal discovery rules in answer to Trudeau's argument that *any* discovery was improper. *Trudeau*, 2013 WL 842599, at *3.

Significantly, in *Trudeau*, immediately following the language Plaintiffs wrongly rely upon, the court set forth the salient point relating to the FTC's subpoena: the Seventh Circuit "certainly never held that a judgment creditor specifically ordered by the court to use the federal discovery rules **to monitor a contemnor's compliance with a sanction order must [comply with Illinois execution proceedings]**." *Trudeau*, 2013 WL 842599, at *3 (emphasis added). It was in this context, and this context alone, that the court in *Trudeau*

6

enforced the FTC's subpoena. Unlike the defendant in *Trudeau*, SE&F does not argue that any discovery is improper; however, SE&F rightly argues that the discovery Plaintiffs seek through their subpoena is irrelevant. *See* Motion To Quash at 7-9.

Thus, neither Plaintiffs' disingenuous claim that they seek discovery in aid of judgment nor *Trudeau* explains the purported relevance of Plaintiffs' subpoena. SE&F's Motion To Quash establishes beyond peradventure SE&F's right to protection against a subpoena to a law firm that requires production of irrelevant information, and SE&F's Motion To Quash also demonstrates that the subpoena seeks irrelevant information. *See* Motion To Quash at 7-9. The subpoena demands documents, including (1) "all Retainer Agreements Referring or Relating To [sic] compensation for work or services performed for or provided to any Lasshofer-Affiliated Person or any Lasshofer-Affiliated Entity" and (2) "documents sufficient to establish the balance of funds at all times . . . in any account controlled directly or indirectly by Steese Evans Frankel for the benefit of or on behalf of any Lasshofer-Affiliated Entity or Lasshofer-Affiliated Person." Exhibit 1 to Motion To Quash at 6. Particularly in light of the fact that Plaintiffs long ago objected to SE&F's motion to withdraw, and SE&F as a result has continued to provide legal services to Mr. Lasshofer and the Innovatis entities, such information is irrelevant to Plaintiffs' attempt to collect on their judgment while the Tenth Circuit appeal is pending. Therefore, the Court must quash Plaintiffs' subpoena. *See* Motion To Quash at 7-9.

## II. PLAINTIFFS' RELY UPON INAPPOSITE ARGUMENT AND AUTHORITY TO CLAIM A RIGHT TO DISCOVER INFORMATION ABOUT SE&F'S FINANCIAL RELATIONSHIP WITH ITS CLIENTS

Having failed to establish the relevance of the information subpoenaed, Plaintiffs go on the attack, hoping to distract the Court by lobbing slanderous accusations of fraud and misconduct against SE&F. Plaintiffs' spurious attack extends to attempting (ineffectively) to excuse their subpoena based upon case law involving disbarment. Plaintiffs' Response at 5. Plaintiffs state that in *People v. Gifford*, 76 P.3d 519 (Colo. 2003), the attorney was disbarred for "fail[ing] to hold client's funds, in which [the] client, [the] attorney, and [a] third party asserted [an] interest, separate to permit accounting and severance of the disputed interests and instead 'applied those disputed funds to her outstanding fee bills.' " Plaintiffs' Response at 5 (quoting *Gifford*, 76 P.3d at 523 & 536). Plaintiffs' veiled threat carries no sway. *Gifford* involved facts far different than those here.

> Gifford misappropriated funds held in escrow for a parenting evaluation and applied them to an outstanding attorney's fee bill. Gifford took such funds knowing that **ownership of said funds was in dispute between the parenting evaluator and the client**. Gifford knew that **neither the parenting evaluator nor the client had authorized her to take such funds, and knew that her client was in bankruptcy proceedings** (which listed Gifford as a creditor) at the time she withdrew the funds. Through her unauthorized exercise of dominion or ownership over the entrusted funds, **Gifford knowingly converted or misappropriated funds belonging to others.**

*Gifford*, 76 P.3d at 522 (emphasis added).

The passage above demonstrates that in *Gifford* the funds were not on deposit to pay the attorney's fees, but were "held in escrow for a parenting evaluation" and were "in

dispute between the parenting evaluator and the client." *Id.* While the attorney may have claimed an interest, she had none. In contrast, pursuant to statute, SE&F has an interest in the funds deposited in its COLTAF account as security for the payment of legal fees. *See* Motion To Quash at 6. Moreover, the client in *Gifford* was in bankruptcy. Plaintiffs do not (and cannot) claim that Mr. Lasshofer or any of the Innovatis entities is in bankruptcy, and the assertion that they are insolvent is discredited and untrue. *See supra* at 3-5

Likewise, in *People v. Gray*, 35 P.3d 611, 618 (Colo. 2001), another attorney discipline case that Plaintiffs menacingly cite, the attorney possessed garnished funds collected on behalf of her client and used those to pay disputed fees. These were client funds entrusted to the attorney's care, not funds representing "advance payment of fees that has not been earned or advance payment of expenses that have not been incurred." COLO. R. PROF. COND., Rule 1.15(d)(1). A court in this District has held that "[*Gray*] indicates that improper misappropriation of funds occurs when a lawyer takes 'a *client's money* entrusted to him, knowing that it is the *client's money* and knowing that *the client* has not authorized the taking.' " *Lariviere, Grubman & Payne, LLP v. Phillips*, Civil Action No. 07-cv-09723-MSK-CBS, 2008 WL 4097466, at *5 (D. Colo. Sep. 4, 2008) (citation omitted). Distinguishing *Gray*, the court in *Phillips* observed that the client consented to the disbursement, and the court refused to allow a third-party to "fit itself into the shoes" of the client. *Id.* Plainly, *Gifford* and *Gray* are inapposite and have no bearing on the issue before this Court.

Moreover, Plaintiffs attempt to distinguish *In re Printcrafters, Inc.*, 233 B.R. 113 (Bankr. D. Colo. 1999), merely by observing that the instant case is not a bankruptcy case and does

9

not involve approving a retainer. *See* Plaintiffs' Response at 5. Here, again, Plaintiffs show their duplicity: according to Plaintiffs, bankruptcy case law does not apply because it is bankruptcy case law; however, Plaintiffs may broadly discover information about SE&F's financial relationship with its clients because Mr. Lasshofer and the Innovatis entities are, Plaintiffs falsely assert, insolvent.[5]

More fundamentally, Plaintiffs ignore the salient holding of *In re Printcrafters* that clearly applies and is determinative. As in *In re Printcrafters*, "[a]t issue in this case is the possessory lien as it is explained in section 119: '[a]ll attorneys and counselors-at-law shall have a lien on any money . . . in their hands . . . for any fees or balance of fees due or to become due from any client.' " 233 B.R. at 117 (quoting COLO. REV. STAT. § 12–5–119). As set forth in the Motion To Quash: " 'If an attorney who possessed funds of a client had a present interest only in fees already earned, this statutory language would be utterly superfluous.' " Motion To Quash at 6 (quoting *In re Printcrafters*, 233 B.R. at 117-18).

Furthermore, in Colorado, an attorney earns a fee upon conferring a benefit to the client. *See In re Sather*, 3 P.3d 403, 412 (Colo. 2000). An attorney may withdraw an earned fee from trust upon " 'giving the client notice in writing of the time, amount, and purpose of

---

[5] The false distinction Plaintiffs attempt to draw becomes grosser as Plaintiffs themselves attempt to equate the instant case with bankruptcy cases that have no application. For instance, Plaintiffs assert that "[n]o order has been entered approving any retainer held by SE&F in the instant case" and "if this were a bankruptcy proceeding and SE&F petitioned for approval of a retainer, it is by no means certain that its request would be granted." Plaintiffs' Response at 6. But Mr. Lasshofer and the Innovatis entities are not in bankruptcy and were not and are not required to obtain this Court's approval before retaining and paying SE&F, particularly since Plaintiffs months ago objected to SE&F's withdrawal, and the Court declined to permit SE&F to withdraw.

the withdrawal, together with a complete accounting thereof.'" *Id.* at 412 n.10 (quoting *In re Lochow*, 469 N.W.2d 91, 98 (Minn. 1991)). Failing to withdraw timely an earned fee, itself, may constitute an ethics violation. *See People v. Greene,* 276 P.3d 94, 102 (Colo. 2011) (describing "requirement under Colo. RPC 1.15(a) that lawyers transfer earned fees out of their trust accounts"); *People v. Shidler*, 901 P.2d 477, 478 n.1 (Colo. 1995) ("Permitting earned fees (which are the property of the lawyer)[ ] to accumulate in an account containing unearned or advance fees (which remain client property until earned), as well as other client funds, constitutes commingling.").

Plaintiffs have no claim to money held to pay SE&F's legal fees, particularly under the facts of this case. Therefore, Plaintiffs' subpoena does not seek information that will assist Plaintiffs in collecting their judgment and should be quashed.

### III. PLAINTIFFS' ACCUSATION THAT SE&F IS CONFEDERATE TO FRAUDULENT TRANSFERS IS UTTERLY BASELESS AND CROSSES THE LINE OF ETHICAL ADVOCACY

Finally, on the basis of their duplicitous premise that Mr. Lasshofer and the Innovatis entities are insolvent, Plaintiffs accuse SE&F of participating in fraudulent transfers. Plaintiffs' Response at 7-9. They threaten that "SE&F's acceptance of fees from the Lasshofer Defendants raises additional issues that independently warrant discovery" and that "if SE&F participates in a fraudulent conveyance, having been put on actual notice of Plaintiffs' judgment, it subjects itself to conspiracy liability," including for punitive damages. Plaintiffs Response at 7-8. Nothing Plaintiffs say or could say substantiates their slanderous and outrageous claims.

Plaintiffs know they lack basis to declare Mr. Lasshofer and the Innovatis entities insolvent. They argued just the opposite when it was convenient for them to do so earlier in this case. *See supra* at 3-5. Further, the authorities upon which Plaintiffs rely to accuse SE&F of engaging in and conspiring to engage in fraudulent transfers are misstated and inapposite. Thus, by making these accusations, Plaintiffs have crossed the line of ethical advocacy.[6]

*Crowley v. Green*, 365 P.2d 230, 231-32 (Colo. 1961), cited in Plaintiffs' Response at 7-8, did not involve the payment of attorney's fees for legal services rendered. Rather, in *Crowley*, the defendant, a corporate officer, director and shareholder, used the company to buy equipment for another business he owned. *Crowley*, 365 P.2d at 231-32. The defendant took ownership of the equipment, but the defunct purchasing company failed to pay the plaintiff-supplier. *Id.* Finding that the transaction was fraudulent because the purchase of the equipment provided no benefit to the defunct purchasing company, the court concluded that the defendant had preferred himself over other creditors and that the plaintiff could recover the purchase price of the equipment from the defendant. *Id.* at 232-33. Nothing like this has happened here.

Likewise, *Double Oak Constr., L.L.C. v. Conerstone Dev. Int'l, L.C.C.*, 97 P.3d 140 (Colo. App. 2003), cited in Plaintiffs' Response at 8-9, did not involve payment of attorney's fees. It involved an elaborate scheme whereby the conspirators duped the plaintiff into constructing a shopping center without being paid. The elaborate scheme was intended to transfer ownership of the shopping center to an entity plaintiff could not reach, and involved

---

[6] As mentioned above, SE&F presently is considering all of its options to protect its good name and reputation from Plaintiffs' slanderous attacks.

an alter ego, closely-related entities and persons, nominal transfer prices, and a covenant not to sue on debt used to finance the ultimate sale of the shopping center. *Double Oak*, 97 P.3d at 145. Under these facts, the court affirmed the existence of a civil conspiracy awarding punitive damages. *Id.* at 148-49. Here, Mr. Lasshofer and the Innovatis entities are simply paying SE&F's legal bills as they come due: after Plaintiffs objected to SE&F's withdrawal and the Court as a result declined to permit SE&F to withdraw.

Even those cases relied upon by Plaintiffs that involve the payment of attorney's fees are inapposite. In *In re Parklex Assocs., Inc.*, 435 B.R.195 (Bankr. S.D.N.Y. 2010), the court denied the attorney's application for fees as bankruptcy counsel because the attorney failed to follow applicable bankruptcy rules. *Id.* at 208-09 ("The delay and blatant misuse of the Bankruptcy Code and clear violation of Sections 327 and 330 is unacceptable, and is sufficient standing alone to deny [the attorney's] Application in its entirety. Furthermore, [the attorney] never sought to have his retention approved on a final basis, and thus was not properly retained under section 327 such that he would be entitled to recover any fees now or even in July 2009."). Mr. Lasshofer and the Innovatis entities are not in bankruptcy, and Plaintiffs' two-faced accusation of insolvency is discredited. *See supra* at 3-5. Mr. Lasshofer and the Innovatis entities are not required to apply to the Court to pay their attorneys.

Plaintiffs cite *HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2nd Cir. 1995), to argue that "even if [a] judgment debtor received fair consideration in exchange for payments that it made to attorneys, 'a fact-finder might reasonably conclude that the purpose behind this arrangement was to hinder, delay, or defraud [the] [judgment debtors'] future judgment

13

creditors.' " Plaintiffs' Response at 7 (quoting *HBE Leasing Corp.*, 48 F.3d at 640). The district court's factual discussion in *HBE Leasing Corp.*, had Plaintiffs bothered to review it or been honest with the Court, exposes the fallaciousness of Plaintiffs' argument:

> [T]here were seven attorneys who represented the various individual defendants. Shortly prior to trial, they reshuffled themselves which, in some instances, changed the defendants whom they represented. All of the attorneys for all of the parties were paid by Frank family funds either through Enterprises or the Pension Plan. Along with the fees paid to the attorneys representing Enterprises itself and the Pension Plan, the total of attorneys' fees paid out in this action to defense counsel is in the vicinity of $2 million dollars. **Of this, $775,722 was paid by Enterprises to attorneys for other parties.**

*HBE Leasing Corp. v. Frank*, 837 F. Supp. 57, 62 (S.D.N.Y. 1993) (emphasis added), *rev'd on other grounds*, 48 F.3d 623 (2nd Cir. 1995). Thus, the issue the Second Circuit addressed was not the payment of Enterprises' legal fees, but "that Enterprises fraudulently conveyed $775,722 in legal fees to the Attorneys . . . [for] payment for legal services that the Attorneys rendered as counsel for Enterprises' co-defendants in the RICO action." *HBE Leasing Corp.*, 48 F.3d at 637-38. As to payments a judgment debtor made for its own legal fees, the Second Circuit was clear: "individual defendants may choose to pay as much to their attorneys for their defense as they consider worthwhile, as long as the payments fall within a fair range of reasonable compensation for *bona fide* legal services or are reimbursement for legitimate expenses incurred during the defense." *Id.* at 639. That is the relevant holding.

Mr. Lasshofer and the Innovatis entities are paying their lawyers. *HBE Leasing Corp.*, properly and honestly construed, completely discredits Plaintiffs' argument. In fact, Plaintiffs' disingenuous reliance on *HBE Leasing Corp.* further demonstrates Plaintiffs' utter

lack of candor to this Court. And it establishes that by even suggesting that they may undo payments SE&F received for its fees, Plaintiffs are baselessly accusing SE&F of complicity in a conspiracy to commit fraud – a nonexistent conspiracy for which Plaintiffs have failed to present any evidence against SE&F or its clients. *See HBE Leasing Corp.*, 48 F.3d at 39 ("a transfer [payment of legal fees] motivated by actual fraudulent intent may not be voided if a transferee [law firm] who paid fair consideration [provided *bona fide* legal services] did not have actual or constructive knowledge of such intent").

Finally, Plaintiffs cite *SEC v. Current Fin. Servs.*, 62 F. Supp. 2d 66 (D.D.C. 1999), for a proposition at odds with the factual record in this case: " '[a] defendant is not entitled to foot his legal bill with funds that are tainted by his fraud.' " Plaintiffs' Response at 7 quoting *Current Fin. Servs.*, 62 F. Supp. 2d at 69). In *Current Fin. Servs.*, the funds the defendant sought to use for legal fees were derived from securities fraud and were frozen by a TRO. 62 F. Supp. 2d at 67. Here, no funds are frozen, and even the now-vacated preliminary injunction order allowed Mr. Lasshofer and the Innovatis entities to pay their attorneys. Moreover, in *Current Fin. Servs.*, the court found that the likely disgorgement would exceed the funds available. 62 F. Supp. 2d at 68. Here, the most Plaintiffs claim they sent to Burgess was $2.18 million, and the record is undisputed that, at the very most, only $250,000 reached and was retained by Mr. Lasshofer or any of the Innovatis entities. There is simply no basis to accuse Mr. Lasshofer and the Innovatis entities of footing their legal bills with Plaintiffs' money; and even less basis to unethically accuse SE&F of receiving tainted funds for *bona fide* legal services.

Plaintiffs' attempt to make clearly irrelevant discovery relevant by falsely accusing SE&F of participating in fraudulent transfers and accepting tainted money should not be countenanced by the Court. *See Christou v. Beatport, LLC,* No. 10–cv–02912–RBJ–KMT, 2013 WL 248058, at *15 (D. Colo. Jan. 23, 2013) (cautioning against "accusing reputable counsel of incompetent and even unethical conduct").

## CONCLUSION

For the foregoing reasons, as well as those set forth in SE&F's Motion To Quash, SE&F respectfully requests that the Court quash Plaintiffs' subpoena, order Plaintiffs to pay the attorneys' fees and costs in bringing this Motion, and grant SE&F such other and further relief to which it is entitled.

Dated: November 11, 2013.	Respectfully submitted,

*s/Kevin D. Evans*
By:	_____
Kevin D. Evans
Phillip L. Douglass
STEESE, EVANS & FRANKEL, P.C.
6400 S. Fiddlers Green Circle
Suite 1820
Denver, Colorado 80111
Telephone:	720.200.0676
Facsimile:	720.200.0679
Email: kdevans@s-elaw.com
		pdouglass@s-elaw.com

Attorneys for Defendants
ERWIN LASSHOFER, INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH, INNOVATIS
ASSET MANAGEMENT, S.A.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of November, 2013, I caused the foregoing **REPLY IN SUPPORT OF MOTION OF STEESE, EVANS & FRANKEL, P.C. TO QUASH SUBPOENA** to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following attorneys of record:

Robert N. Miller
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone:    303.291.2300
Facsimile:    303.291.2400
Email: rmiller@perkinscoie.com

Christopher W. Madel
Bruce D. Manning
Aaron R. Thom
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone:    612.349.8500
Facsimile:    612.339.4181
Email: cwmadel@rkmc.com
         bdmanning@rkmc.com
         arthom@rkmc.com

Jeffrey H. McClelland
Kathleen E. Craigmile
Bennington Johnson Biermann & Craigmile, LLC
370 17th Street
#3500
Denver, CO 80202
303-629-5200
Email: jmc@benningtonjohnson.com
Email: kec@benningtonjohnson.com

Julie Anne North
Justine Victoria Beyda
Cravath, Swaine & Moore LLP
825 Eighth Avenue
39th Floor
New York, NY 10019-7475
212-474-1000
Email: jnorth@cravath.com
Email: jbeyda@cravath.com

*s/Theresa Davidson*

_____

Theresa Davidson