# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Honorable R. Brooke Jackson

Civil Action No.: 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

        Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH,
INNOVATIS ASSET MANAGEMENT, S.A.,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

        Defendants.

## REPLY IN SUPPORT OF MOTION OF
## STEESE, EVANS & FRANKEL, P.C. TO QUASH SUBPOENA

## EXHIBIT 4

```
 1                IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLORADO
 2
    Civil Action No. 12-cv-00869-RBJ
 3
    JOHN NIEMI, ROBERT NAEGELE III, and JESPER PARNEVIK,
 4
        Plaintiffs,
 5
    vs.
 6
    MICHAEL FRANK BURGESS, ERWIN LASSHOFER, INNOVATIS GMBH,
 7  INNOVATIS IMMOBILIEN GMBH, INNOVATIS ASSET MANAGEMENT SA,
    LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and BARRY FUNT,
 8
        Defendants.
 9
10  CREDIT SUISSE,

11      Nominal Defendant.

12  _____

13                       REPORTER'S TRANSCRIPT
                       Hearing on Pending Motions
14
    _____
15

16            Proceedings before the HONORABLE R. BROOKE

17  JACKSON, Judge, United States District Court for the District

18  of Colorado, commencing at 9 a.m., on the 26th day of March,

19  2013, in Courtroom A902, Alfred A. Arraj United States

20  Courthouse, Denver, Colorado.

21

22

23

24  Proceeding Reported by Mechanical Stenography, Transcription
             Produced via Computer by Kara Spitler, RMR, CRR,
25        901 19th Street, Denver, CO, 80294, (303) 623-3080
```

| | |
|---|---|
| 1 | APPEARANCES |
| 2 | CHRISTOPHER MADEL and AARON THOM, Robins, Kaplan, |
| 3 | Miller & Ciresi, L.L.P., 2800 LaSalle Plaza, 800 LaSalle |
| 4 | Avenue, Minneapolis, MN 55402, for plaintiffs. |
| 5 | PHILLIP DOUGLASS, Steese, Evans & Frankel, P.C., 6400 |
| 6 | South Fiddlers Green Circle, Suite 1820, Denver, CO 80111, for |
| 7 | Lasshofer and Innovatis defendants. |
| 8 | KATHLEEN CRAIGMILE and JEFF McCLELLAND, Bennington, |
| 9 | Johnson, Biermann & Craigmile, LLC, 370 17th Street, Suite |
| 10 | 3500, Denver, CO 80202; for nominal defendant. |
| 11 | P R O C E E D I N G S |
| 12 | (In open court at 9 a.m.) |
| 13 | THE COURT: Good morning. |
| 14 | MR. MADEL: Good morning. |
| 15 | MS. CRAIGMILE: Good morning. |
| 16 | THE COURT: 12-cv-869, John Niemi, *et al.*, vs. still |
| 17 | on the caption, Michael Burgess *et al.* Set for another motions |
| 18 | hearing this morning. |
| 19 | Appearances, please. |
| 20 | MR. MADEL: Good morning, Your Honor. For the |
| 21 | plaintiffs, Chris Madel and Aaron Thom. Also with me is |
| 22 | Mr. Niemi, Mr. Naegele. Mr. Miller is in Costa Rica on |
| 23 | vacation. |
| 24 | MR. DOUGLASS: Phil Douglass for Erwin Lasshofer and |
| 25 | the Innovatis entities. Mr. Evans sends his apology. He had |

1   the issue of the nonassignability of this loan agreement to
2   plaintiffs' Niemi, Naegele, and Parnevik, did not come up when
3   this Court was going through all that it went through leading
4   up to and ultimately the issuance of the preliminary-injunction
5   order.  That, I presume, was because that technical argument
6   hadn't yet dawned on the Lasshofer defendants.  The light bulb,
7   apparently, finally went off because on June 5, 2012, the
8   Lasshofer defendants did bring the issue up, buried in their
9   so-called emergency motion for a stay on the very same day that
10  they filed a notice of appeal to the Tenth Circuit.  But the
11  Court never had any realistic opportunity to consider it before
12  issuing its preliminary injunction because it was never raised.
13  Whether or not the Tenth Circuit is going to address an issue
14  that was never raised in this court I leave to the circuit, but
15  that is how I see it.
16          So I have to consider it now, and I will, when I get
17  to 171.
18          The issue of the plaintiffs' informing the Tenth
19  Circuit that the June 1, 2012, preliminary-injunction order was
20  moot and essentially rendered unimportant, which is exactly how
21  I read the materials provided by the Lasshofer defendants, is
22  frustrating, as I have said.  However, it doesn't change the
23  fact that this Court issued an order it expected the plaintiff
24  to comply with it -- or the Lasshofer defendants to comply with
25  it.  They did not.  They still have not.  And that is contempt,

1  regardless of some tactical maneuver that the plaintiffs
2  attempted in the Tenth Circuit.
3  　　　　　The primary issue raised by the Lasshofer defendants
4  other than their subject-matter jurisdiction issue is that they
5  don't have the ability to comply.  The Court finds that to be
6  entirely incredible for several reasons.
7  　　　　　First, it's undisputed that the Lasshofer defendants
8  have $6.8 million in the Swiss Credit Suisse bank account.  The
9  Lasshofer defendants submit or submitted quite sometime ago the
10 declaration of Erwin Lasshofer, which I have read and reread
11 and find to be clever in its wording, parsing of words, and not
12 credible.  The declaration of Mr. Lasshofer states that those
13 are investment funds that belong to third parties who are
14 unrelated to me or any Innovatis entities.  I find that to be
15 at best dubious because the Lasshofer defendants, like the
16 Credit Suisse nominal defendant, had refused to provide full
17 and complete discovery as to the identity of those funds.
18 　　　　　In addition to that, it's contrary to the statement of
19 Michael Burgess who, although he's a prisoner in federal
20 custody, nevertheless has a great deal of knowledge about what
21 came of this grand scheme and where those proceeds went and Mr.
22 Burgess has said pointblank that the $6.8 million in that
23 account are the proceeds of the fraud.
24 　　　　　Another reason why the Court finds the Lasshofer
25 declaration to be lacking in credibility is the simple fact

 1  that Mr. Lasshofer has been unwilling and has refused to come
 2  to this Court and testify under oath in person.  I'm not nearly
 3  as impressed by some affidavit drafted by some lawyer as I
 4  would be by seeing Mr. Lasshofer and hearing what he has to say
 5  in court.  But he's been unwilling to show his face here.
 6         The declaration says Innovatis GmbH does not have
 7  2.18 million cash.  I emphasize the word "cash."  That's where
 8  we get into parsing words.  I venture to say that you could go
 9  to any bank in Denver, Colorado, today, and they don't have
10  $2.18 million in cash.  That isn't the way our economy works.
11  The entire United States economy has only a limited amount of
12  cash.  If everybody were to go to the bank today and ask to
13  withdraw their investments in cash, the banks couldn't possibly
14  do it.  There isn't enough cash around.
15          Next he says, Innovatis Asset Management SA does not
16  have 2.18 million, quote, cash that belongs to it, close quote.
17  Again, the reference to cash and the mystery, if not belonging
18  to that particular Innovatis entity, then to whom.  That wasn't
19  said.
20         Next, he says Innovatis GmbH, Innovatis Asset
21  Management, and I combined do not have the ability to transfer
22  2.18 million in cash to an escrow account in Colorado.  That
23  isn't the way it would be done.  It would be done by some sort
24  of a wire transfer.  Frankly, based on what I've seen in this
25  case, not much of anything Erwin Lasshofer has to say has much

1 credibility with this Court.

2 Another reason why I find the inability to pay
3 incredible is that the Lasshofer defendants are spending
4 hundreds of thousands, if not millions, of dollars litigating
5 in multiple jurisdictions. That's their choice. Every time we
6 turn around, there's a new filing in this case, a 240-page
7 filing in the Tenth Circuit, et cetera. I note Mr. Madel's
8 comment that on their web site, they're always talking about
9 this and that and how successful they are; and the Court is
10 fully satisfied that if they wanted to comply financially, they
11 could come up with the money to comply.

12 And finally, one must remember, the Court is not
13 ordering them to give up the $2.18 million. The Court is
14 ordering them to put the money in an escrow account. There it
15 can draw interest; and if they're successful on the merits,
16 they get their money back. It is simply a transfer of
17 location, not a giving up of the money.

18 For all those reasons, the Court is totally
19 unpersuaded that there is a lack of ability to comply. What's
20 lacking is a will to comply and instead an ongoing tactical
21 battle to try to figure out some way to, quote, get out of
22 this.

23 And the Court is not going to put up with it any
24 longer. The Court is going to give the Lasshofer defendants
25 two weeks; that is, through April 9, to put that money in an

1  conference two or three weeks before the trial date.
2          THE COURTROOM DEPUTY:  March 14 at one o'clock.
3          THE COURT:  Okay.
4          Done.
5          Thank you.
6      (Recess at 9:51 a.m.)
7                  REPORTER'S CERTIFICATE
8          I certify that the foregoing is a correct transcript
9  from the record of proceedings in the above-entitled matter.
10 Dated at Denver, Colorado, this 29th day of March, 2013.
11
12                          s/Kara Spitler_____
                                   Kara Spitler
13
14
15
16
17
18
19
20
21
22
23
24
25