# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Honorable R. Brooke Jackson

Civil Action No.: 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

       Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GmbH,
INNOVATIS IMMOBILIEN GmbH,
INNOVATIS ASSET MANAGEMENT, S.A.,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

       Defendants.

## REPLY IN SUPPORT OF MOTION OF
## STEESE, EVANS & FRANKEL, P.C. TO QUASH SUBPOENA

## EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| John Niemi, Robert Naegele, III, and Jesper Parnevik,<br><br>                Plaintiffs,<br>v.<br><br>Michael Frank Burgess, Erwin Lasshofer, Innovatis GMBH, Innovatis Immobilien GMBH, Innovatis Asset Management, SA, and Lexington Capital & Property Investments, LLC, and Barry Funt,<br><br>                Defendants,<br><br>Credit Suisse A.G.,<br><br>                Nominal Defendant. | Case No.: 13-mc-0081<br><br>*Pending in the United States District Court for the District of Colorado – Civil Action No. 1:12-00869 (RBJ)*<br><br><br>**Plaintiffs' Response to Greene Espel's Motion to Quash Subpoena** |

On August 23, 2013, Plaintiffs John Niemi, Robert Naegele, III, and Jesper Parnevik (collectively, "Plaintiffs"), obtained a $185,077,476 judgment in the Federal District Court for the District of Colorado against Erwin Lasshofer and Innovatis Asset Management SA (collectively, "Lasshofer Defendants"), as well as two other Lasshofer entities. The Lasshofer Defendants are clients of Greene Espel PLLP ("Green Espel"). On October 1, 2013, Plaintiffs served a subpoena on Greene Espel pursuant to FED. R. CIV. P. 45 & 69, as Plaintiffs are entitled to do, seeking post-judgment discovery regarding funds held by Greene Espel on behalf of the Lasshofer Defendants, and which are subject to the large judgment that Plaintiffs have received against Greene Espel's clients.

Plaintiffs respectfully request that this Court deny Greene Espel's motion to quash the subpoena.

## FACTS

**A.  Lasshofer Defendants perpetrate a devastating fraud on Plaintiffs**

In 2009 and 2010, the Lasshofer Defendants, acting in concert with their co-conspirator Michael Frank Burgess, defrauded Plaintiffs out of millions of dollars in "upfront collateral" fees by falsely promising to provide funding for Plaintiffs' large-scale luxury development project in Breckenridge, Colorado. Burgess, the Lasshofer Defendants' co-conspirator in the fraud scheme, is currently serving a 15-year sentence for his 2011 conviction for money laundering and conspiracy to commit wire fraud, based on, *inter alia*, the very conduct that harmed Plaintiffs and destroyed their Breckenridge project. (Judgment, *United States v. Burgess*, No. 6:10-cr-00161-ACC-GJK, ECF Dkt. No. 112 (M.D. Fla. Nov. 30, 2011).)

**B.  Lasshofer Defendants defy the District of Colorado's orders throughout the Colorado litigation**

On April 4, 2012, Plaintiffs filed a complaint in Federal District Court for the District of Colorado against the Lasshofer Defendants, alleging both common-law fraud and violations of the Colorado Organized Crime Control Act ("COCCA"), COLO. REV. STAT. § 18-17-104. (Complaint, *Niemi v. Burgess*, No. 1:12-cv-00869-RBJ, ECF Dkt. No. 1 (D. Colo. Apr. 4, 2012).) On June 1, 2012, the District of Colorado found that Plaintiffs were likely to prevail on the merits of their COCCA claim and issued a preliminary injunction freezing the Lasshofer Defendants' assets worldwide and requiring the

Lasshofer Defendants to transfer $2.18 million to the District of Colorado pending the final judgment. (Preliminary Injunction Order, *Niemi*, ECF Dkt. No. 50 (D. Colo. June 1, 2012).) The Lasshofer Defendants, however, refused to comply with this injunction for 494 days until it was vacated on September 6, 2013. (*See* Contempt Order, *Niemi*, ECF Dkt. No. 184 (D. Colo. Mar. 26, 2013).) By this time, the District of Colorado had entered a $185,077,476 final judgment against the Lasshofer Defendants. *See infra*.

### C. Lasshofer Defendants represent to the District of Colorado that they are insolvent

On August 13, 2012, Erwin Lasshofer represented to the District of Colorado, via a declaration, that the Lasshofer Defendants were financially unable to comply with the District Court's order requiring the Lasshofer Defendants to transfer $2.18 million to Colorado. (Declaration, *Niemi*, ECF Dkt. No. 110 (D. Colo. Aug. 13, 2012).) The Lasshofer Defendants, despite being put on notice that "[i]nability to pay" means "complete financial inability to comply with an Order," *Bayview Loan Servicing, LLC v. Boland*, No. 08-cv-00566-WDM-KLM, 2010 U.S. Dist. LEXIS 112142, at *11 (D. Colo. Aug. 26, 2010), *accepted by Bayview Loan Servicing, LLC v. Boland*, No. 08-cv-566-WDM-KLM, 2010 U.S. Dist. LEXIS 112093 (D. Colo. Oct. 18, 2010), thereafter continued to refuse to transfer so much as a penny to the District of Colorado. The Lasshofer Defendants' words and conduct in the Colorado litigation equate to an expression of insolvency.

### D. Lasshofer Defendants refuse to participate in discovery

3

The Lasshofer Defendants refused to participate in discovery in the Colorado fraud litigation, including discovery regarding their own assets and assets fraudulently obtained from the Plaintiffs held in the Lasshofer Defendants' off-shore bank accounts. (Notice, *Niemi*, ECF Dkt. No. 188 (D. Colo. Apr. 3, 2013).) By completely avoiding discovery, moreover, the Lasshofer Defendants violated numerous orders requiring them to participate in various aspects of the process. (Discovery Orders, *Niemi*, ECF Dkt. No. 169 (D. Colo. Mar. 8, 2013).)

### E. District of Colorado awards Plaintiffs a $185,077,476 judgment against Lasshofer Defendants

Rather than fighting the case on its merits, the Lasshofer Defendants conceded their liability for the fraud by default, and the District Court accordingly entered a final judgment against the Lasshofer Defendants in the amount of $185,077,476 on August 23, 2013. (*See* Zhao Aff. Ex. 1.)

Unsurprisingly, Plaintiffs have had no success in enforcing their judgment against the Lasshofer Defendants directly. Indeed, the Lasshofer Defendants have warned Plaintiffs against attempting to enforce their judgment abroad. (Declaration, *Niemi*, ECF Dkt. No. 230 (D. Colo. June 12, 2013).)

### F. Plaintiffs serve a subpoena on Greene Espel seeking information regarding funds subject to Plaintiffs' judgment

On October 1, 2013, Plaintiffs served a subpoena on Greene Espel that contained the following requests for production of documents:

> 1. [A]ll Retainer Agreements Referring or Relating To compensation for work or services performed for or provided to any Lasshofer-Affiliated Person [defined to include: Erwin Lasshofer, Jean-Pierre

4

       Sorichilli, Martina Gsöls, Michael Burgess, or any member of the immediate families of Erwin Lasshofer, Jean-Pierre Sorichilli, Martina Gsöls, or Michael Burgess] or any Lasshofer-Affiliated Entity [defined to include: Innovatis GmbH, Innovatis Immobilien GmbH, Innovatis Asset Management SA, any entity of any sort directly or indirectly owned or controlled (in whole or in part) at any time by any Lasshofer-Affiliated Person, and any other entity that has ever paid or promised to pay for any professional services provided or to be provided to Erwin Lasshofer, Innovatis GmbH, Innovatis Immobilien GmbH, or Innovatis Asset Management SA.]. You may redact from the documents produced pursuant to this specification all portions thereof that reveal the motive in seeking legal representation, litigation strategy, or the specific nature of the services provided or to be provided.

2. [A]ll documents including, but not limited to, all checks (copies of both front and back, or the original check), withdrawal slips, wire transfer records, receipts, bookkeeping documents, journals, ledgers, financial statements, and any other financial records, created on or after September 7, 2013 until the date of full and complete compliance with this subpoena, evidencing payment received or promised, or the source of payment received or promised, for work or services performed or to be performed for any Lasshofer-Affiliated Person or any Lasshofer-Affiliated Entity. You may redact from the documents produced pursuant to this specification all portions thereof that reveal the motive in seeking legal representation, litigation strategy, or the specific nature of the services provided or to be provided.

3. [A]ll documents sufficient to establish the balance of funds at all times until the date of full and complete compliance with this subpoena in any account controlled directly or indirectly by Greene Espel for the benefit of or on behalf of any Lasshofer-Affiliated Entity or Lasshofer-Affiliated Person. You may redact from the documents produced pursuant to this specification all portions thereof that reveal the motive in seeking legal representation, litigation strategy, or the specific nature of the services provided or to be provided.

4. To the extent not covered by the requests above, documents sufficient to show any unused portion(s) of any retainer you have held, or are holding, for the benefit of or on behalf of any Lasshofer-Affiliated Entity or Lasshofer-Affiliated Person.

## ARGUMENT

### I. Plaintiffs are entitled to information from Greene Espel regarding funds that Greene Espel holds, or has held, on behalf of the Lasshofer Defendants.

Greene Espel presents no basis for seeking to quash the subpoena that Plaintiffs served on it pursuant to FED. R. CIV. P. 69 & 45. Federal Rule of Civil Procedure 69(a)(2) provides:

> In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

Plaintiffs have accordingly served a subpoena on Greene Espel, i.e., a "person," pursuant to this rule and FED. R. CIV. P. 45, "[i]n aid of the judgment" entered by the District of Colorado on August 23, 2013, as Plaintiffs are entitled to do.[1]

Federal Rule of Civil Procedure 26, moreover, authorizes "parties" to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Contrary to Greene Espel's argument, this rule applies to discovery both pre- and post-judgment:

> The rules for depositions and discovery "are to be accorded a broad and liberal treatment". . . . The right to conduct discovery applies both before and after judgment. . . . Rule 69(a) of the Federal Rules of Civil Procedure specifically provides the right to post-judgment discovery "in aid of the judgment." The rule further provides that the judgment creditor "may

---

[1] Greene Espel does not argue that the information sought by Plaintiffs is privileged, as this argument would fail. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) ("The identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.") (internal quotation marks and citation omitted).

>   obtain discovery from any person . . . in the manner provided in these rules or . . . by the practice of the state in which the district court is held."

*Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998) (citations omitted). Moreover, the Eighth Circuit has "stress[ed] that the presumption should be in favor of full discovery of any matters arguably related to [a judgment creditor's] efforts to trace [the judgment debtor's] assets and otherwise to enforce its judgment." *Id.* at 431. The post-judgment discovery requests that Plaintiffs served on Greene Espel, therefore, are reasonably aimed at obtaining precisely what the Federal Rules of Civil Procedure permit Plaintiffs to acquire.

The information that Plaintiffs request from Greene Espel, moreover, will permit Plaintiffs to seek garnishment of funds held by Greene Espel on behalf of the Lasshofer Defendants, as Plaintiffs are also permitted to do. *See In re Brick Hearth Pizza, Inc.*, 302 B.R. 877, 882 (Bankr. D. Minn. 2003) (holding that "a levy in favor of a third-party judgment creditor of a client could attach to a retainer deposited with counsel, because the unapplied balance remained the property of the client") (citing *In re Mahendra*, 131 F.3d 750, 756 (8th Cir. 1997); *St. Cloud Nat'l Bank & Trust Co. v. Brutger*, 488 N.W.2d 852, 855 (Minn. Ct. App. 1992)); *In re Rubio*, No. 10CA0912, 2011 Colo. App. LEXIS 1400, at *4 (Colo. App. Aug. 18, 2011) (concluding, "[w]e see nothing in the governing statutes or rule that would prevent a judgment creditor from garnishing funds held in a lawyer's trust account"). To the extent Greene Espel holds funds on behalf of the

7

Lasshofer Defendants, Plaintiffs are entitled to garnish the same, and, perforce, Plaintiffs are authorized by FED. R. CIV. P. 69(a) to obtain discovery regarding such assets.[2]

Plaintiffs' garnishment of any retainer that Greene Espel holds on behalf of the Lasshofer Defendants may be effectuated pursuant to Colorado law.[3] Because the District of Colorado entered the judgment against the Lasshofer Defendants, Plaintiffs may avail themselves of Colorado's judgment-enforcement rules in attempting to collect their judgment. *See* FED. R. CIV. P. 69(a). Colorado Rule of Civil Procedure 69(g) provides:

> The court, master, or referee may order any party or other person over whom the court has jurisdiction, to apply any property other than real property, not exempt from execution, whether in the possession of such party or other person, or owed the judgment debtor, towards satisfaction of the judgment. Any party or person who disobeys an order made under the provisions of this Rule may be punished for contempt. . . .

The Lasshofer Defendants' argument that any funds it holds for the Lasshofer Defendants are unrelated to Plaintiffs' underlying claims (*see* Mot. to Quash at 6) is contrary to this rule. Rule 69(g) authorizes the Court to order *any* party holding *any* property other than real property on behalf of the judgment debtor to apply such property toward the judgment.

Furthermore, even assuming, *arguendo*, that Greene Espel does not currently hold funds of the Lasshofer Defendants as a retainer, Plaintiffs' subpoena requests information

---

[2] Greene Espel suggested to Plaintiffs' counsel during a telephone conversation, that, at the time of their conversation, Greene Espel did not hold the Lasshofer Defendants' funds as a retainer. This argument, however, appears nowhere in Greene Espel's brief in support of its motion to quash. Should the argument appear in Greene Espel's reply, Plaintiffs will seek discovery regarding the changed circumstances that have revived the argument.

[3] Alternatively, Plaintiffs could seek to execute their judgment in Minnesota pursuant to 28 U.S.C. § 1963.

about any funds that the Lasshofer Defendants have transferred to Greene Espel at all—regardless of whether these funds were transferred pursuant to a retainer agreement.

It is well-recognized that when a corporation "is insolvent," as the Lasshofer Defendants have represented by their words and conduct in the District of Colorado that they are, *see supra*, "its officers and directors . . . will not be allowed to use the trust property for their own benefit to the disadvantage of other creditors." *Crowley v. Green*, 365 P.2d 230, 147-48 (Colo. 1961). If the Lasshofer Defendants have provided payment to Greene Espel since Plaintiffs' judgment was entered, or if they provide any payment to Greene Espel in the future, the Lasshofer Defendants did or do so in violation of their duty not to favor their own interests over satisfying Plaintiffs' judgment.

Moreover, if Greene Espel participates in a fraudulent conveyance, having been put on actual notice of Plaintiffs' judgment, it subjects itself to conspiracy liability. *See Double Oak Contr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 147, 149 (Colo. App. 2003) (holding that "a fraudulent transfer is an unlawful act that supports a creditor's claim for conspiracy"; affirming award of treble damages on civil conspiracy claim).

**II.     Plaintiffs' subpoena does not excessively burden Greene Espel.**

At the conclusion of its brief in support of its motion to quash, Greene Espel claims that "the subpoena imposes an excessive burden on a non-party to the litigation. Rather than burden a non-party with responding to a subpoena, Plaintiffs can seek the same discovery directly from a party." (Mot. to Quash, at 7.) As a preliminary note, Greene Espel here concedes that it *is* in possession of substantial—indeed, copious—

9

information relevant to Plaintiffs' judgment-collection efforts. Also, as noted *supra*, the Lasshofer Defendants have completely refused to participate in any aspect of the discovery process in the Colorado litigation, despite being compelled by the District of Colorado to do so. Moreover, the movant, here Greene Espel, has the burden of establishing undue burden in attempting to quash a subpoena. *See Schedin v. Johnson & Johnson (In re Levaquin Prods. Liab. Litig.)*, No. 08-5743, 2010 U.S. Dist. LEXIS 140977, at *6 (D. Minn. Nov. 9, 2010). Greene Espel has provided no evidence to support its claim that the subpoena imposes an excessive burden on it. Greene Espel has, therefore, failed to satisfy its burden, and its "undue burden" argument should accordingly be rejected.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny Greene Espel's motion to quash Plaintiffs' subpoena.

Dated this 22nd day of October, 2013.

                                              Respectfully submitted,

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

*/s/Aaron R. Thom*
Christopher W. Madel
Aaron R. Thom
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
cwmadel@rkmc.com
arthom@rkmc.com