## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 12-CV-869-RBJ

JOHN NIEMI,
ROBERT NAEGELE, III, and
JESPER PARNEVIK,

      Plaintiffs,

v.

MICHAEL FRANK BURGESS,
ERWIN LASSHOFER,
INNOVATIS GMBH,
INNOVATIS IMMOBILIEN GMBH,
INNOVATIS ASSET MANAGEMENT SA,
LEXINGTON CAPITAL & PROPERTY INVESTMENTS, LLC, and
BARRY FUNT,

      Defendants,

CREDIT SUISSE A.G.,

      Nominal Defendant.


### DECLARATION OF DR. ANDREA MEIER

I, Dr. Andrea Meier, declare the following:

      1.      I am a member of the bar of the Canton of Zurich, Switzerland and attorney

at law with the Zurich law firm Wartmann & Merker.   I have previously submitted

declarations in this action dated August 31, 2012, September 26, 2012, October 5, 2012,

and February 27, 2013.

**Exhibit 1**

2.      I submit this declaration in connection with Credit Suisse AG's ("Credit Suisse's") Response to Plaintiffs' Motion for Order Requiring Turnover Pursuant to Fed. R. Civ. P. 69(a) and Colo. R. Civ. P. 69(g) or, in the Alternative, Payment Pursuant to Guarantee filed on September 28, 2015 ("Motion").  I have represented Credit Suisse in the Zurich proceedings referenced in the Motion together with Dr. Peter Reichart of my firm and have personal knowledge of those proceedings and the other matters set forth herein.

3.      The Plaintiffs have attached to their Motion a declaration of Plaintiffs' U.S. counsel, Aaron Thom.  Mr. Thom has attached as Exhibits 1, 2 and 4 to his declaration certain documents relating to asset arrest proceedings in Switzerland involving the Innovatis Asset Management S.A. Account at Credit Suisse that has been a subject of this action ("IAM Account").  While the Plaintiffs are not prohibited by Swiss law from disclosing these documents, Swiss law strictly forbids Credit Suisse as the banking institution from disclosing such documents or other information regarding the IAM Account (or any banking relationship) without order of a Swiss court or consent of the account holder.   These restrictions imposed on Credit Suisse are described in detail in our previous declarations as well as in the May 1, 2013 letter to the Court from Manuel Sager, the Swiss Ambassador to the United States (Doc. 204 in this action).

4.      Plaintiffs state in their Motion that they first learned of "purported debt acknowledgements" attached as Exhibits 1 and 2 to Mr.  Thom's declaration in early 2015. They also state that, in a letter dated March 31, 2015 from Plaintiffs' U.S. counsel, "Plaintiffs asked Credit Suisse to apprise the Court of this information, but Credit Suisse refused."   Motion, page 5. As the Plaintiffs had Swiss counsel (and also the letters of

Ambassador Sager), they were aware that Credit Suisse could not disclose this or any other account information absent an order from a Swiss court.  Plaintiffs' Swiss attorneys have never taken the position that Credit Suisse can disclose Swiss banking information or information regarding the proceedings absent a Swiss court order or consent of the account owner.

5.      Mr. Thom has attached to his declaration as Exhibit 6 an English translation of the August 19, 2015 Judgment issued in proceedings relating to the IAM Account by the District Court of Zurich, Court for Swiss Debt Enforcement and Bankruptcy Law Cases ("Zurich DE Court").  This is the court that is responsible for determining rights of creditors and making determinations of debt enforcement for assets located in Switzerland. The Judgment attached as Exhibit 6 to Mr. Thom's declaration was redacted by the Zurich DE Court to omit certain information, such as names of parties, other involved persons, and account data.  Even in the redacted form, the Judgment is not in the public record in the Zurich DE Court.  Again, while the Plaintiffs are not restricted from disclosing this Judgment to this Court or other third parties, Credit Suisse is forbidden under Swiss law from disclosing it for the same reasons as are addressed in the letter of the Swiss Ambassador and in our previous declarations.

6.      As set forth in the declaration of Mr. Niemi, the Plaintiffs, through their counsel of the law firm Pachmann Rechtsanwälte AG, participated in the Zurich DE Court proceeding and attended the hearing held in that proceeding on March 26, 2015.  As reflected in the Zurich DE Court Judgment, Plaintiffs' counsel requested at that hearing that the Court provide them with a copy of the Judgment at the time it was served on the

44444444

main parties.  See Judgment Sec. VII, no. 1 and no. 2. To the best of our knowledge, the Zurich DE Court served this redacted Judgment on the Plaintiffs' Swiss counsel on August 28, 2015, at the same time the Judgment was served on Credit Suisse.

7.      Mr. Niemi indicates in para. 5 of his declaration that Plaintiffs could not commence collection efforts in Switzerland in connection with the IAM Account until December 2014 when their judgment was final and no longer subject to appeal in the United States.  This is not correct. While a party relying on a judgment as the basis for an attachment must wait until the judgment is no longer subject to appeal, Swiss debt enforcement law provided for the Plaintiffs to seek an attachment order much earlier when there were indications that the Lasshofer/Innovatis Defendants would dissipate their assets.

8.      According to Article 271, Sec. 1 of the Swiss Debt Enforcement and Bankrutpcy Law ("DEBA"), a creditor may apply for an order freezing the assets of a debtor located in Switzerland if the following requirements are fulfilled:

1.      the creditor has a matured and unsecured claim against the debtor;

2.      there is a sufficient reason for a freezing order; and

3.      there are assets at hand belonging to the debtor (Art. 272 Sec. 1 DEBA).

A judgment (including a final non-appealable judgment) is not required for a showing of a matured claim.  According to Art. 271 Sec. 1 No. 2 DEBA, a sufficient reason for a freezing order is the debtor concealing his assets, or absconding or making preparations to abscond, in order to evade the fulfillment of his obligations.

9.      The proposed Amended Complaint (Doc. 85-1) and other documents filed in this action state that the Plaintiffs had a restitution claim in 2012 exceeding $45,000,000

USD arising from the criminal enterprise of Mr. Burgess, Mr. Lasshofer, Innovatis Asset Management and the other named Defendants and that there was a threat that the Lasshofer / Innovatis Defendants would dissipate their assets, including IAM Account funds.  See also Plaintiff's Motion for Preliminary Injunction Order directed at Credit Suisse (Doc. 106 at page 33), in which Plaintiffs assert there was a serious risk that Lasshofer and his affiliates would dissipate their assets, including in the IAM Account.  The Plaintiffs could have applied in Switzerland for a freezing (attachment) order at that time as there was evidence that there may be dissipation of the account funds.

10.    Mr. Niemi states in para. 7 of his declaration that Mr. Pachmann obtained an attachment order for the IAM Account on March 4, 2015.  Under Swiss debt enforcement law this effected a freeze on the account.

11.    Mr. Niemi states in para. 8 of his declaration that Plaintiffs learned through the attachment process they initiated in Switzerland in February 2015 that "Robert de Lange and an entity called Innovatis PCC Ltd., which is part of the Innovatis Group that is managed by Lasshofer, had been working with IAM to remove the funds in the IAM Account since October 2012."  Credit Suisse has stated many times in this U.S. action that Credit Suisse is bound by Swiss banking secrecy laws, that breach of these laws is a criminal offense in Switzerland and that it could not disclose any information regarding the account absent permission of the account holder. Ambassador Sager stated these same things in his May 1, 2013 letter.

12.    However, in October 2012, the Defendants themselves disclosed in this action the existence of other creditors and at least one attachment proceeding in Zurich

with respect to the IAM Account.  In my declaration in support of Credit Suisse's Response to Plaintiffs' Motion for Summary Judgment dated February 27, 2013, I addressed this representation but explained that Credit Suisse was prohibited by Swiss law from confirming or denying the existence of such proceedings.  See February 27, 2013 Declaration, para. 13, and October 5, 2012 Declaration, para. 12.  At that time, Plaintiffs could have also taken steps in Switzerland to obtain an attachment order.  If the Plaintiffs had applied for a freezing order at the latest after they had learned of the existence of other creditors and at least one attachment proceeding in Zurich and *before* Robert de Lange and Innovatis PCC obtained a seizure on the account at Credit Suisse on 22 November 2012[1], they could have participated in the enforcement proceeding in the first group of creditors (see art. 281 sec. 1 DEBA).  The creditors in the first group will receive enforcement proceeds first. The creditors in the second group will only receive enforcement proceeds if all claims of the creditors of the first group have been fully satisfied.  However, creditors of the second group may bring an action against the creditors of the first group in circumstances such as those in the present case (see para. 20).

13.    In para. 11 of his declaration, Mr. Niemi refers to a hearing on March 26, 2015 in the Zurich DE Court action that involved the attachment proceedings of Mr. de Lange and Innovatis PCC Ltd. and in which Credit Suisse asserted a right to a lien on the funds in the IAM Account by virtue of its involvement in this U.S. action.  Mr. Niemi also

---

[1]    Pursuant to Article 279 DEBA, a creditor must prosecute an attachment order within 10 days after notification of the execution of the attachment, and may request the seizure of the assets after having obtained a payment order ("Zahlungsbefehl") from the Debt Enforcement Office if such payment order remains uncontested by the debtor.

confirms that Plaintiffs' Swiss counsel from the Pachmann firm attended that hearing on

Plaintiffs' behalf.  Pursuant to Article 74 et. seq. of the Swiss Code of Civil Procedure, at

or before that hearing (or after the hearing), Plaintiffs, through Mr. Pachmann's firm or

other counsel, could have submitted a request to intervene in that action as an auxiliary

party.[2]  They made no such effort to intervene in an effort to protect their rights as

creditors.

14.      The Plaintiffs have also submitted a declaration of Mr. Michele Caratsch,

who states that he was hired by Plaintiffs to replace Mr. Pachmann's firm as their Swiss

counsel on September 4, 2015.

15.      In para. 2 of his declaration, Mr. Caratsch states that his statements are

based on the files of legal proceedings and information learned from Credit Suisse or its

counsel.  Peter Reichart and I have never had any communication with Mr. Caratsch or his

office about this matter.  We are not aware of Credit Suisse or anyone acting on Credit

Suisse's behalf having communications with Mr. Caratsch, and did not learn that

Mr. Caratsch is representing Plaintiffs until we received a copy of the Motion and his

declaration. Only by his letter of 9 October 2015, received by us on 12 October 2015

(some two weeks after the filing of the Motion), did Mr Caratsch inform us that his firm

was representing Plaintiffs "as of now" in Switzerland.

---

[2]      Article 74 of the Swiss Code of Civil Procedure provides that any person who
shows a credible legal interest in having a pending dispute decided in favor of one
of the parties may intervene at any time as an accessory party and for this purpose
submit to the court an intervention application. (See the Swiss Government's site
found at https://www.admin.ch/ch/e/rs/2/272.en.pdf for an unofficial English
translation).

16.     Mr. Caratsch refers in his declaration to various filings or actions taken in the Zurich DE Court relating to the IAM Account.  These filings and actions are not public information and Credit Suisse is prohibited by Swiss banking secrecy from disclosing them, confirming them or denying them without the permission of the account holder.  As Plaintiffs obtained the freezing (attachment) order relating to the account, they were able to access this information.  Had they obtained an earlier attachment order (such as described in paras. 9 and 12 above), they would have had access to this information earlier.  They also may have requested information relating to the IAM Account via discovery requests to Innovatis or to Credit Suisse under the Hague Convention.  They have never issued information requests to Credit Suisse under the Hague Convention.

17.     In para.16 of his declaration, Mr. Caratsch states that Plaintiffs commenced enforcement and collection procedures in Switzerland immediately after their United States judgment was final and no longer appealable.  As stated above, the Plaintiffs could have applied for an asset freeze much earlier, including at the time they commenced the United States action when they had reason to believe that Mr. Lasshofer and the other Defendants were making attempts to dissipate their assets, or in October 2012 when Defendants advised them of attachment proceedings involving the IAM account and the existence of other creditors.

18.     Our last communication with any counsel for Plaintiffs before Mr Caratsch's letter of 9 October 2015 was a letter that we sent to Mr. Wehrli and Ms Lotter of the Pachmann firm on September 17, 2015, a copy of which is attached as Exhibit A.  The only response we received was an email from Mr. Wehrli (Exhibit B)

informing us that there had been a change in counsel for Plaintiffs and that he would

forward our letter to the new counsel.  He did not inform us who the new counsel was.  As

stated above, we did not learn that Mr. Caratsch was representing Plaintiffs until we

received the Motion and Mr. Caratsch's declaration.  Translated to English, our letter to

Mr. Wehrli attached as Exhibit A states:

> As you know, the District Court of Zurich, Court for Swiss Debt
> Enforcement and Bankruptcy Law Cases, with judgment of 19 August 2015
> received by the Defendant on 28 August 2015, has affirmed the claim in
> said proceedings. MLaw Th. Werhli received the operative part of the
> judgment in an anonymized copy, Ms Lotter, attorney at law, received an
> anonymized copy of the judgment.
>
> We would like to inform you that Credit Suisse will most likely not appeal
> the judgment of 19 August 2015. Counsel for Credit Suisse in Colorado
> informed US Plaintiffs accordingly upon enquiry by their US Counsel. As
> confirmed by the judgment (p. 26, consid. 3.5.3.3 e), Credit Suisse has
> fulfilled its obligations to keep the status quo until US Plaintiffs obtain an
> attachment order on the assets in Switzerland. US Plaintiffs could obtain
> such an asset freeze from the competent court. It is now up to US Plaintiffs
> to ensure that the funds remain blocked through prosecuting the asset freeze
> and taking all further necessary enforcement measures.
>
> We ask you to please keep us informed about the further enforcement
> measures taken by US Plaintiffs.

19.     In para. 18 of his declaration, Mr. Caratsch states that Plaintiffs are doing

all that they can to continue their collection efforts but that there is a risk that Credit Suisse

will need to disburse the funds in the IAM account to Robert de Lange and Innovatis PCC.

20.     Swiss debt enforcement law provides creditors with the possibility of

contesting the validity of other creditors' claims or their priority.  According to art. 148

sec. 1 of the Swiss Debt Enforcement and Bankruptcy Act ("DEBA"), a creditor may bring

an action against another creditor if he wishes to contest the claim of the latter against the

debtor. In general, a creditor can only bring an action against another creditor of the same group (BSK SchKG I-Schöniger, Art. 148 N 19). However, in specific circumstances, it is submitted that creditors of the second group are allowed to bring an action against the creditors of the first group, namely if the debtor is conspiring with the creditors of the first group in order to grant them advantages (BSK SchKG I-Schöniger, Art. 148 N 19). As this is exactly what Plaintiffs claim has happened in the case at hand, I am of the view that Plaintiffs should be entitled to bring a claim against Robert de Lange and Innovatis PCC Ltd. and contest their claims for collusion with the debtor. Thus, in order to prevent the disbursement of the funds to Robert de Lange and Innovatis PCC, Plaintiffs could file proceedings in the Zurich DE Court asserting collusion between Defendants and Mr. de Lange and Innovatis PCC.

21.        Also, as stated above, Plaintiffs could have intervened in the Zurich DE Court proceedings as soon as they had learned about their existence, before the March 26, 2015 hearing.  Pursuant to Article 74 et seq. of the Swiss Code of Civil Procedure (see note 1, above), Plaintiffs could have become an auxiliary party and availed themselves of all means necessary to support the position that funds should not be disbursed to Mr. de Lange or Innovatis PCC.  As an auxiliary party, they could have appealed the Zurich DE Court Judgment in their own names whether or not Credit Suisse filed any appeal[3].

---

[3]        Article 76 para. 1 of the Swiss Code of Civil Procedure provides that the intervenor may carry out any procedural acts in support of the principal party, provided they are permitted at the relevant stage of the proceedings; he or she may in particular make use of any offensive or defensive measures and also seek appellate remedies (see  the Swiss Government's site found at https://www.admin.ch/ch/e/rs/2/272.en.pdf for an unofficial English translation).

22.     To the best of my knowledge, Plaintiffs have not taken any of the steps described in paras. 9 or 12 to obtain an earlier attachment of the IAM account or in paras. 20 or 21 to challenge the claims of Mr. de Lange or Innovatis PCC.

23.     Plaintiffs have stated in previous filings in the United States action and in the present Motion that they have filed or participated in various criminal proceedings in Austria, Liechtenstein and other countries regarding Mr. Lasshofer and Innovatis.  In addition to not explaining why they did not seek an attachment order on the IAM Account much earlier or seek to intervene in the Zurich DE Court proceeding relating to the Innovatis Account, Plaintiffs have not explained why they have not or could not have obtained a criminal freeze of the IAM Account in Switzerland, either by initiating criminal proceedings in Switzerland or by seeking for a criminal freeze by means of international criminal legal assistance.  Under Swiss debt enforcement laws, a criminal freeze order has priority over a civil freeze order. (Art. 44 DEBA; Decision of the Swiss Federal Supreme Court of 25 October 1967, DSC 93 III 89, 93, consid. 3; BSK SchKG I-Acocella, Art. 44 N 2).

24.     In the Motion, Plaintiffs address that Credit Suisse filed its own claim relating to the IAM Account in the Zurich DE Court proceeding in connection with its assurance in this action and that by the August 19, 2015 Judgment, the Zurich DE Court rejected Credit Suisse's claim.  Plaintiffs further state:

> *Taking Credit Suisse's arguments in the Zurich court at face value, Credit Suisse is capable of complying with a U.S. turnover order, and Credit Suisse has even sought relief in advance for its future compliance with such an order. Swiss law, therefore, does not stand in the way of a turnover order issued pursuant to Fed. R. Civ. P. 69(a) and Colo. R. Civ. P. 69(g).*

> *Moreover, such an order would presumably permit Credit Suisse to argue*
> *to the Swiss courts that this likelihood is now a reality.*

Motion at 14.  These further statements by Plaintiffs are wrong and find no basis in the

Zurich DE Court Judgment.

25.     Before both this Court and the Zurich DE Court, Credit Suisse has always

adhered to the position that obedience with a United States turnover order would require a

violation of Swiss law (for the same reasons addressed by Ambassasor Sager in his letter to

the Court dated May 21, 2013).[4]

26.     As set forth in the Judgment attached by Plaintiffs, the Zurich DE Court

found that a predominant part of the funds in the IAM Account were not owned by the

account holder (i.e Innovatis Asset Management) and thus denied the existence of any right

of lien by Credit Suisse in principle.  More specifically, it held that $4,348,842 USD of the

funds belong to the "ABC Fund," that those funds are "outside the discretionary power" of

----

[4]     Credit Suisse argued to the Zurich DE Court that Swiss criminal law prevented it
from complying with a US turnover order and that the only way to prevent the
issuance of a turnover order was the assurance given to this Court on October 22,
2012 in response to the Court's October 19, 2012 orders.  It further argued that
given the assurance, there was a continued risk that it would have to pay in the
Unites States an amount equal to the IAM Account funds although it would
continue to oppose this with all appropriate means.  Credit Suisse argued that as
long as this risk was not fully eliminated, Credit Suisse had a right of lien to the
monies in the account. Credit Suisse's argument was based on Art. 402 para. 1
Swiss Code of Obligations, which provides that the agent (i.e., Credit Suisse) has a
right to be reimbursed by the principal (i.e., Innovatis Asset Management) for
expenses incurred in the proper performance of the agency contract. In the
alternative, Credit Suisse argued that, based on Art. 402 para. 2 Swiss Code of
Obligations, Credit Suisse, as the agent, has a right to be compensated by the
principal for any loss or damage incurred in the performance of the agency contract.

the formal account holder (Innovatis), and are therefore separate from the Innovatis assets and not subject to any right of lien by Credit Suisse.  See Judgment at Sec. 2.[5]

27.     For the remainder of the funds, the Zurich DE Court rejected Credit Suisse's arguments and found that, by giving the assurance, Credit Suisse had acted in its own interest as it had based the assurance on its assessment of the risk and chosen what in its estimation was the best way out of the conflict between the different legal regimes. It concluded that, inasmuch as Credit Suisse was acting in its own interest, its acts were not covered by the "General Deed of Pledge" (i.e. the right of lien agreed between Credit Suisse and its account holder).  See Judgment Sec. 3.5.3.3.e.   With respect to Credit Suisse's argument that it had a right to be compensated by the account holder (i.e., principal) for any loss or damage incurred in the performance of the agency contract, the Zurich DE Court simply stated that it was unknown, and not even proximately certain, that Credit Suisse could be ordered by this Court to transfer the funds to the United States (see Sec. 3.5.3.4 d). The Zurich DE Court stopped its analysis there, as it found that the prerequisites for claiming future damages were already not met on this ground.

28.     There is nothing from the Judgment that would suggest that the Zurich DE Court would affirm a right of lien in Credit Suisse's favor if such an order was issued. The opposite would be the case. As pointed out repeatedly by Credit Suisse (and confirmed by Ambassador Sager), complying with a turnover order would violate Swiss law and the order itself would not be enforceable in Switzerland.

---

[5]     The redacted version of the Zurich DE Court Judgment refers to the separate assets belonging to the "ABC Fund."

- 14 -

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 23rd day of October, 2015.

Dr. Andrea Meier, Attorney-at-law